1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
LILACH HALPERIN (SBN 323202)
*lilach@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
***Attorneys for Plaintiffs and the Proposed Class***

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK CAPACI and CYNTHIA FORD on behalf of themselves, all others similarly situated, and the general public,<br><br>                    Plaintiffs,<br><br>        v.<br><br>SPORTS RESEARCH, INC., a California Corporation.<br><br>                    Defendant. | Case No.: 2:19-cv-03440-FMO-FFM<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Date:   August 8, 2019<br>Time:  10:00a.m.<br>Ctrm:  6D<br>Judge: Hon. Fernando M. Olguin<br><br><br>Complaint Filed: April 26, 2019 |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................ 1

II.    FACTUAL BACKGROUND............................................................ 2

III.   LEGAL STANDARD .................................................................... 3

IV.    ARGUMENT............................................................................... 4

A.   Plaintiffs' Nationwide Class Allegations Are Sufficient ...................... 4

B.   Plaintiffs Have Standing to Pursue Injunctive Relief......................... 6

C.   Defendant's Deceptive Acts Caused Plaintiffs' Injuries ..................... 7

D.   Plaintiffs' Claims Are Not Preempted....................................... 8

E.   The Primary Jurisdiction Doctrine Does Not Apply ........................... 11

F.   Plaintiffs' FAC Establishes That the Challenged Claims Are False ................... 12

   1. Plaintiffs Cite Studies Showing That HCA Does Not Support Appetite Control 13

   2. Plaintiffs Cite Studies Showing That HCA Does Not Support Weight
      Management ...................................................................... 14

      i.    The FAC Disproves Each Biological Mechanism By Which HCA May
            Affect Weight Management. ............................................... 14

      ii.   The FAC Demonstrates that HCA Is No More Effective Than a Placebo.... 16

   3. Plaintiffs Cite Studies Showing that HCA Does Not Support Weight Loss........ 18

G.   Plaintiffs Satisfy Rule 9(b) ................................................... 19

H.   Plaintiffs' New Jersey Claims Are Sufficiently Pleaded..................... 20

I.   The Economic Loss Doctrine Does Not Apply to Plaintiffs' Negligent
     Misrepresentation Claim ....................................................... 21

J.   Plaintiffs Have Provided an Adequate Prayer for Punitive Damages ................. 22

K.   Disgorgement of Profits is an Available Remedy Under the UCL, FAL, and
     CLRA...................................................................... 24

V.     CONCLUSION............................................................................ 24

ii

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

## Cases

*Allred v. Kellogg*,
2018 WL 1158885 (S.D. Cal. 2018)................................................................ 7

*Alvarez v. NBTY, Inc.*,
2017 WL 6059159 (S.D. Cal. Dec. 6, 2017) ................................................ 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................ 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................ 3

*Boswell v. Costco Wholesale Corp.*,
2016 U.S. Dist. LEXIS 73926 (C.D. Cal. June 6, 2016)............................. 12

*Branca v. Bai*,
2019 WL 1082562 (S.D. Cal. 2019)............................................................... 5

*Bret Harte Union High Sch. Dist. v. FieldTurf, USA, Inc.*,
2016 WL 3519294 (E.D. Cal. June 27, 2016) ............................................. 22

*Burton v. Time Warner Cable Inc.*,
2013 WL 3337784 (C.D. Cal. Mar. 20, 2013) .............................................. 4

*Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011). .................................................................... 20

*Clancy v. The Bromley Tea Co.*,
308 F.R.D. 564, 573 (N.D. Cal. 2013) ........................................................ 8, 9

*Clark v. State Farm Mut. Auto. Ins. Co.*,
231 F.R.D. 405 (C.D. Cal. 2005).................................................................. 23

*Conley v. Gibson*,
355 U.S. 41, 47 (1957) .................................................................................... 3

iii

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

*County of Santa Clara v. Astra United States*,
  588 F.3d 1237 (9th Cir. 2009) ................................................................. 11

*Dabish v. Brand New Energy, LLC*,
  2016 WL 7048319, (S.D. Cal Dec. 5, 2015) .......................................... 8

*Davel Comm'ns, Inc. v. Qwest Corp.*,
  460 F.3d 1075 (9th Cir. 2006) ................................................................. 11

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ............................................................... 6, 7

*Davison v. Santa Barbara High School District*,
  48 F.Supp.2d 1225 (C.D. Cal. 1998) ...................................................... 4

*DePhillippis v. Living Essentials, LLC*,
  2018 WL 7051065,  (S.D. Cal. Nov. 29, 2018) ...................................... 7

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ............................................................... 24

*Figy v. Frito-Lay N. Am., Inc.*,
  67 F. Supp. 3d 1075 (N.D. Cal. 2014) ..................................................... 9

*Freedom Transport, Inc. v. Travelers Companies, Inc.*,
   2016 WL 7507755 (C.D. Cal. Aug. 11, 2016). ....................................... 23

*Gallagher v. Bayer AG*,
  2015 WL 1056480 (N.D. Cal. 2015) ........................................... 10, 11, 12

*Hannibal Pictures, Inc. v. Sonja Prods. LLC*,
  432 Fed.Appx. 700, 701 (9th Cir. 2011) ............................................... 22

*In re Clorox Consumer Litig.*,
  894 F.Supp.2d 1224 (N.D. Cal August 24, 2012) .................................... 5

*In re Farm Raised Salmon Cases*,
   42 Cal. 4th 1077 (2008) ........................................................................... 9

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) (en banc) ................................................................. 5

*In re Sony Grand WEGA KDF–E A10/A20 Series Rear Projection HDTV TV Litig.*,
  758 F.Supp.2d 1077, 1096 (S.D. Cal. 2010) ........................................................ 4

*In Re Tobacco Cases II*,
  240 Cal.App.4th 779 (Sept. 28, 2015) ................................................................. 24

*Kalitta Air, L.L.C. v. Central Texas Airborne Sys., Inc.*,
  315 Fed.Appx. 603 (9th Cir. 2008) ...................................................................... 22

*Khasin v. Hershey Co.*,
  2012 WL 5471153, (N.D. Cal. Nov. 9, 2012) ........................................................ 9

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ............................................................................... 4

*Mladenov v. Wegmans Food Markets, Inc.*,
  124 F.Supp.3d 360 (D. NJ. 2015) ........................................................................ 20

*Nathan v. Vitamin Shoppe, Inc.*,
  2019 WL 1200554 (S.D. Cal. Mar. 14, 2019) ............................................... 1, 8, 12

*Pam Wonderful v. Ocean Spray Cranberries, Inc.*,
  642 F. Supp. 2d 1112 (C.D. Cal. 2009) ............................................................... 12

*Quinn v. Walgreen Co.*,
  958 F. Supp. 2d 533 (S.D. N.Y. 2013) ................................................................. 14

*Racies v. Quincy Bioscience, LLC*,
  2015 WL 2398268 (N.D. Cal. May 19, 2015) ...................................................... 15

*Rikos v. Procter & Gamble Co.*,
  782 F. Supp. 2d 522 (S.D. Ohio 2011) ................................................................ 12

*Risto v. Screen Actors Guild – American Federation of Television and Radio Artists*,
  2018 WL 7016345 (C.D. Cal. Nov. 6, 2018) ....................................................... 23

v

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

*Sagan v. Apple Computer, Inc.*,
  874 F. Supp. 1072 (C.D. Cal. 1994) ........................................................ 4

*Spencer v. Hartford Fin. Servs. Grp., Inc.*,
  256 F.R.D. 284 (D. Conn. 2009) .............................................................. 6

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir.2011) .................................................................. 4

*Tomasino v. Estee Lauder Cos.*,
  2015 U.S. Dist. LEXIS 38918 (E.D. N.Y. Mar. 26, 2015). ...................... 12

*Vasic v. Patent Health, LLC*,
  2014 WL 940323 (S.D. Cal. Mar. 10, 2014) ............................................ 16

*Vess v. Ciba– Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ................................................................ 19

*Von Koenig v. Snapple Beverage Corp.*,
  713 F. Supp. 2d 1066 (E.D. Cal. 2010) ................................................... 19

*Washington Mut. Bank, FA v. Super. Ct.*,
  24 Cal. 4th 906 (Jan. 25, 2001) ............................................................... 5

*Watkinson v. MortgageIT, Inc.*,
  2010 WL 2196083 (S.D. Cal. June 1, 2010) ............................................ 23

*Wilson v. Frito-Lay N. Am., Inc.*,
  2013 WL 1320468 (N.D. Cal. Apr. 1, 2013) .............................................. 9

*Woodard v. Labrada*,
  2017 WL 3309765 (C.D. Cal. Jul. 31, 2017) ....................................... 1, 20

*Zakaria v. Gerber Prod. Co.*,
  2015 WL 3827654 (C.D. Cal. June 18, 2015) .......................................... 22

**Statutes**

21 U.S.C. § 343(r)(6) ................................................................................ 10

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

21 U.S.C. § 343(a) .................................................................................... 10

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ................................................. 3

Cal. Bus. & Prof. Code §§ 17500, *et seq.* ................................................. 3

Cal. Civ. Code §§ 1750, *et seq.* ................................................................ 3

Cal. Civ. Code §§ 1750, *et seq.* ................................................................ 3

Food, Drug, and Cosmetic Act ("FDCA")

   21 U.S.C. § 301 *et seq.* ..................................................................... 8, 9

New Jersey's Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.* .................. 3, 21

New Jersey's Truth-in-Consumers Contract, Warranty, and Notice Act New Jersey Stat.

   §§ 56:12-14 to 56:12-18 .................................................................. 3, 21

Nutritional Labeling and Education Act ("NLEA")

   21 U.S.C. § 343 *et seq.* ................................................................... 8, 10

**Rules**

Fed. R. Civ. P. 8 ..................................................................................... 3

Fed. R. Civ. P. 8(e) ................................................................................. 4

Fed. R. Civ. P. 9(b) ............................................................................... 19

**Regulations**

*Regulations on Statements Made for Dietary Supplements Concerning the Effect of the*

   *Product on the Structure or Function of the Body,*

   65 FR 1000. ....................................................................................... 10

*Capaci v. Sports Research, Inc.,* No. 2:19-cv-03440-FMO-FFM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Plaintiffs Frank Capaci and Cynthia Ford (collectively "Plaintiffs"), on behalf of themselves, all others similarly situated, and the general public, respectfully submit this Memorandum of Points and Authorities in Support of Plaintiffs' Opposition to the Motion to Dismiss First Amended Complaint that was filed by Defendant Sports Research, Inc. ("Defendant") on July 8, 2019. (Dkt. No. 18, ("Def.'s Mot.")). For the reasons set forth herein, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss in its entirety.

## I.  INTRODUCTION

This is a consumer class action lawsuit involving the false and deceptive sales of a dietary supplement product called Sports Research Garcinia Cambogia (the "Product"). The gravamen of Plaintiffs' First Amended Complaint ("FAC") is that the Product misleads consumers because the Product label claims to be an effective aid with regards to "Appetite Control" and "Weight Management," but the Product's only "active" ingredients are incapable of providing any weight management or appetite control benefits.  (*See* FAC ¶ 26).  The operative FAC cites to studies which demonstrate that the Product and its active ingredients cannot provide the touted weight and appetite control benefits and that Defendant's advertising of the Product has misled reasonable consumers into purchasing "worthless" supplements. (*See generally*, FAC).

In its Motion to Dismiss the FAC, Defendant argues that Plaintiffs' claims should be dismissed because Plaintiffs merely allege lack of substantiation and cannot show that the Product label is false or misleading. To the contrary, the FAC cites to numerous studies affirmatively demonstrating that Garcinia Cambogia, or HCA, is not effective for weight management, weight loss, or appetite control. As discussed more fully below, none of Defendant's grounds for dismissal are persuasive. Other courts in California have previously rejected Defendant's arguments and declined to dismiss similar cases involving the use of Garcinia Cambogia as a purported weight-loss supplement. *See Nathan v. Vitamin Shoppe, Inc.*, 2019 WL 1200554 (S.D. Cal. Mar. 14, 2019) ("*Nathan*"); *see also Woodard v. Labrada,* 2017 WL 3309765 (C.D. Cal. Jul. 31, 2017). This Court

1

should reach a similar conclusion here, and for the reasons set forth below, deny Defendant's Motion to Dismiss in its entirety.

## II.   FACTUAL BACKGROUND

Plaintiff Frank Capaci originally filed the Complaint on April 26, 2019. (*See* Dkt. No. 1). Defendant filed a Motion to Dismiss Plaintiff Capaci's Complaint on June 7, 2019. (*See* Dkt. No. 12). Plaintiffs Frank Capaci and Cynthia Ford then filed the operative First Amended Complaint on June 17, 2019. (Dkt. No. 16). Defendant filed a Motion to Dismiss Plaintiffs' First Amended Complaint and a Request for Judicial Notice on July 8, 2019. (*See* Dkt. No. 18).

Plaintiffs' First Amended Complaint concerns Defendant's false and misleading claims made on its Sports Research Garcinia Cambogia product. Specifically, the Product claims to support "Appetite Control" and "Weight Management," which conveys "that the Product is capable of helping consumers lose weight and will actually help consumers lose weight, by suppressing appetite. However, these claims, taken individually and especially in context of the label as a whole, are misleading because the Product's only 'active' ingredients are incapable of providing any weight-loss benefits." (FAC ¶ 26). The FAC alleges "[n]umerous randomized, placebo controlled scientific studies demonstrate that Garcinia Cambogia extract and/or HCA does not provide weight-loss or appetite control benefits in humans" and "in fact, the only reliable scientific evidence demonstrates it is no more effective as a weight-management aid than a placebo." (FAC ¶ 28).

"During the class period, Plaintiff Frank Capaci purchased Sports Research Garcinia Cambogia in reliance on the Product's misleading dietary claims from GNC stores in New Jersey. The cost was approximately $25 per bottle." (FAC ¶ 55). "During the class period, Plaintiff Cynthia Ford purchased Sports Research Garcinia Cambogia in reliance on the Product's misleading dietary claims from a Vitamin Shoppe store in Long Beach, California. The cost of the Product was approximately $20 to $25." (FAC ¶ 56). "When deciding to purchase the Product, Plaintiffs read and relied on the claims that

2

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

"Garcinia Cambogia is a great way to support your overall weight management plan" and that the Product "Supports Appetite Control," which appears directly on the Product's label and packaging." (FAC ¶ 57). "Based on these representations, Plaintiffs believed the Product was an effective dietary aid that would provide weight-loss benefits and would help them lose weight and help control their appetite." (FAC ¶ 58). "The representations on the Product's label were and are false and misleading … because, as described in detail herein, the Product cannot deliver the purported benefits and is no more effective than a placebo." (FAC ¶ 62).

Plaintiffs allege that Defendant has violated California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL"), New Jersey's Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.* ("CFA"), New Jersey's Truth-in-Consumers Contract, Warranty, and Notice Act New Jersey Stat. §§ 56:12-14 to 56:12-18 ("TCCWNA"), and Plaintiffs bring further causes of action for fraud, negligent misrepresentation, and breach of express and implied warranties. (*See generally* FAC). Plaintiffs seek to represent a class defined as "[a]ll U.S. citizens who purchased the Product in their respective state of citizenship for personal and household use and not for resale during the Class Period." (FAC ¶ 76). Plaintiffs also seek to represent a California sub-class and a New Jersey sub-class of consumers. (*Id*).

## III.   <u>LEGAL STANDARD</u>

A pleading that sets forth a claim for relief "must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8; *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (holding that the purpose of pleading a "short and plain statement of the claim" is merely to "give the defendant fair notice of what the Plaintiffs' claim is and the grounds upon which it rests."); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

When ruling on a motion to dismiss, the court accepts "allegations in the complaint

as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Thus, to survive a motion to dismiss, a Plaintiff is required to allege only "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). "The Ninth Circuit has clarified that (1) a complaint must 'contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively,' and (2) 'the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.'" *Burton v. Time Warner Cable Inc.*, No. CV 12-06764 JGB AJWX, 2013 WL 3337784, at *2 (C.D. Cal. Mar. 20, 2013) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

The liberal pleading standard applied by federal courts comports with Rule 8(e), which says "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e); *C.f. Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994) ("Parties are expected to use discovery, not the pleadings, to learn the specifics of the claims being asserted."); *Davison v. Santa Barbara High School District*, 48 F.Supp.2d 1225, 1228 (C.D. Cal. 1998) ("If the moving party could obtain the missing detail through discovery, the motion should be denied.").

## IV.   <u>ARGUMENT</u>

### A.   Plaintiffs' Nationwide Class Allegations Are Sufficient

Defendant argues that Plaintiffs should be precluded "from bringing any California consumer protection claims on behalf of a nationwide class." (Def.'s Mot. at 9:6-7). Defendant is essentially asking this Court to dismiss Plaintiffs' nationwide class allegations at the pleadings stage. Yet, whether or not to certify a nationwide class and California and New Jersey sub-classes is a question not appropriate for determination on a motion to dismiss. Indeed, other courts have rejected similar arguments. *See In re Sony Grand WEGA KDF–E A10/A20 Series Rear Projection HDTV TV Litig.*, 758 F.Supp.2d 1077, 1096 (S.D. Cal. 2010) ("In a putative class action, the Court will not conduct a

4

detailed choice-of-law analysis during the pleading stage.").[1]

Notwithstanding, certification of a nationwide class is proper here because Defendant has demonstrated no conflict between California and the laws of other states. While Defendant has identified general differences between California law and the laws of other states, it fails to allege that such variances are material in *this* case, nor does it demonstrate that California law should not apply. *See Branca v. Bai*, 2019 WL 1082562, at *10 (S.D. Cal. 2019) ("while [Defendant] does point to differences between California law and that of other states, more is needed for Defendants to sustain their burden to show that those differences are " 'material,' that is, ... they 'make a difference in this litigation.'" (citations omitted)). Here, Defendant has failed to meet its burden in showing that foreign law is more properly applied. *See In re Clorox Consumer Litig.*, 894 F.Supp.2d 1224, 1237 (N.D. Cal August 24, 2012) (citing *Washington Mut. Bank, FA v. Super. Ct.*, 24 Cal.4th 906, 921, 103 Cal.Rptr.2d 320, 15 P.3d 1071 (Jan. 25, 2001)) (class action opponent bears "the burden of demonstrating that foreign law, rather than California law, should apply to class claims"); *see also In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 562, n. 6 (9th Cir. 2019) (en banc) (noting that a district court is not obligated to conduct a 'comprehensive survey of every state's law' when the foreign law proponent has failed to do so).  Further, until the parties have explored the facts through discovery, it would be premature to speculate about whether the differences in consumer protection laws among states are material in this particular case. *See In re Clorox Consumer Litig.,* at 1237 ("Since the parties have yet to develop a factual record, it is unclear whether applying different state consumer protection statutes could have a material impact on the viability of Plaintiffs' claims").

Moreover, "Plaintiffs' claims are all fraud-based." (Def.'s Mot. at 2:25-26). "[T]he

---

[1] *See also Werdebaugh v. Blue Diamond Growers*, 2013 WL 5487236, at *16 (N.D. Cal. 2013) (court declining to evaluate California's choice-of-law rules at motion to dismiss stage); *Branca v. Bai Brands, LLC*, 2019 WL 1082562, at *10 (S.D. Cal. Mar. 7, 2019) (same); *Wisdom v. Eastern Diamond Sports, LLC*, 2018 WL 6264994, at *6 (C.D. Cal 2018) ("Several California district courts have declined to perform a choice-of-law analysis at the motion to dismiss stage of class action litigation, because that analysis is premature") (citing *Forcellati v. Hylands, Inc*., 876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012).

5

*Capaci v. Sports Research, Inc.,* No. 2:19-cv-03440-FMO-FFM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

fundamental elements of fraud are substantially similar from state to state." *Spencer v. Hartford Fin. Servs. Grp., Inc.*, 256 F.R.D. 284, 300 (D. Conn. 2009). "Virtually every state requires that there be a misrepresentation made by the defendant, that the defendant had knowledge that it was false, the defendant intended to induce the reliance of the plaintiff, the plaintiff relied on the statement, and the plaintiff was injured as a result." *Id.* The *Spencer* Court found that "common legal issues predominate with respect to how states treat fraud claims" and the "Plaintiffs have adequately demonstrated that the elements of fraud are substantially similar from state to state." *Id.* at 301. Thus, it would be premature to dismiss Plaintiffs' nationwide class allegations at this stage of the litigation. *See Werdebaugh*, 2013 WL 5487236, at *16. Defendant's Motion to Dismiss should be denied.

## B.   Plaintiffs Have Standing to Pursue Injunctive Relief

Defendant next argues that Plaintiffs lack standing to pursue injunctive relief. (*See* Def.'s Mot. at 20-21). However, the Ninth Circuit has recently resolved this issue. *See Davidson v. Kimberly-Clark Corp*., 889 F.3d 956, 966-69 (9th Cir. 2018) ("*Davidson II*"). The *Davidson II* Court noted that "[i]t [was] an open question in this circuit to what extent a previously deceived consumer who brings a false advertising claim can allege that her inability to rely on the advertising in the future is an injury sufficient to grant her Article III standing to seek injunctive relief." *Id.* at 967. The Ninth Circuit "resolve[d] this district court split in favor of plaintiffs seeking injunctive relief" and held "that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Id.* at 969.

Defendant contends that Plaintiffs lack standing because the FAC alleges that the Product is worthless. (*See* Def.'s Mot. at 9:22 – 10:4). However, Plaintiffs allege that they "would consider purchasing the Product again if the advertising statements made on the

Product labels were, in fact, truthful and represented in a manner as not to deceive consumers." (FAC ¶¶ 9-10). If the statements made on the Product label were truthful, the Product would not be worthless. This allegation is sufficient to confer standing to seek injunctive relief. *See Davidson II*, 889 F.3d at 971; *Allred v. Kellogg*, 2018 WL 1158885, at *7 (S.D. Cal. 2018) (finding that plaintiffs have standing to pursue injunctive relief because they "similarly pled future injury by stating 'Plaintiffs intend to, desire to, and will purchase the Product again when they can do so with the assurance that the Product's label ... is lawful and consistent with the Product's ingredients.'"). Plaintiffs have successfully alleged standing to pursue injunctive relief and Defendant's Motion should be denied.

## C.   Defendant's Deceptive Acts Caused Plaintiffs' Injuries

Defendant complains that the FAC "raises more questions than it answers," such as "[w]hat representations did Plaintiffs see" and "[w]ho made those representations." (Def.'s Mot. at 10:21-22). However, the FAC alleges that the Plaintiffs "have suffered injury in fact as a result of Defendant's actions as set forth herein.  Specifically, prior to the filing of this action, Plaintiffs purchased the Product in reliance on Defendant's false and misleading labeling claims that the Product, among other things, aids in weight management and provides appetite control." (FAC ¶ 111). "When deciding to purchase the Product, Plaintiffs read and relied on the claims that 'Garcinia Cambogia is a great way to support your overall weight management plan' and that the Product 'Supports Appetite Control,' which appears directly on the Product's label and packaging." (FAC ¶ 57). The FAC further alleges, "[a]fter using the Product, Plaintiffs did not experience the benefits promised by the Product labels" and "Plaintiffs lost money as a result of Defendant's deceptive claims and practices in that they did not receive what they paid for when purchasing the Product." (FAC ¶¶ 61, 73). These allegations are sufficient to establish injury at the pleading stage. *See DePhillippis v. Living Essentials, LLC*, 2018 WL 7051065, at *2  (S.D. Cal. Nov. 29, 2018) ("Plaintiff can show Article III standing by alleging she purchased a product she otherwise would not have purchased, or that she

7

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

spent too much on such a product in reliance on the product labels' representations …) (citing *Brazil v. Dole Food Co., Inc*., 935 F. Supp. 2d 947, 960-62 (N.D. Cal. 2013); *see also Pirozzi v. Apple Inc*., 913 F. Supp. 2d 840, 846-47 (N.D. Cal. 2012) ("'Overpaying for goods or purchasing goods a person otherwise would not have purchased based upon alleged misrepresentations by the manufacturer would satisfy the injury-in-fact and causation requirements for Article III standing.'"). Because the court accepts these allegations as true at the pleadings stage, Defendant's argument should be rejected.

Defendant further complains that the FAC raises additional questions, such as "[d]id Plaintiffs consult a doctor before taking the Product," "[d]id Plaintiffs take the Product in conjunction with a healthy diet and regular exercise," and "[d]id the Product work at any point" (Def.'s Mot. at 10:22-25). Defendant, however, fails to provide any authority that such allegations are required. As the *Nathan* court explained, "Plaintiff's claims do not pertain to whether she, personally, experienced the Product's advertised benefits; they pertain to the Product's mislabeling, based on the Product's inability to actually deliver the claimed benefits. In other words, Plaintiff's claims do not turn on her personal use of the Product *after* purchase. Instead, her claims turn on whether the Product's labeling, which led her to purchase the Product, was false or misleading." *Nathan*, *supra*, 2019 WL 1200554, at *8 (S.D. Cal. 2019) (citing *Dabish v. Brand New Energy, LLC*, 2016 WL 7048319, at *3 (S.D. Cal Dec. 5, 2015) ("Plaintiff need not allege ... that he did not experience any advertised benefits. The allegations do not pertain to allegations of benefits. The allegations pertain to mislabeling the products.")). Because the FAC establishes that Defendant's deceptive conduct caused Plaintiffs' and the Class's injuries, the Court should deny Defendant's Motion.

### D.   Plaintiffs' Claims Are Not Preempted

Defendant argues that Plaintiffs' claims are preempted under the FDCA and NLEA. (*See* Def.'s Mot. at 11-15). "When Congress passed the FDCA and its subsequent amendments creating national uniform nutrition labeling, it expressly preempted state law that was inconsistent with its requirements." *Clancy v. The Bromley Tea Co.*, 308 F.R.D.

8

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

564, 573 (N.D. Cal. 2013). "However, it did not attempt to completely preempt state laws regarding the marketing of food products. To the contrary, Congress specifically anticipated states enacting their own identical laws." *Id.* (citing *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1090 (2008)). "California complied with this requirement in passing the Sherman Law, which expressly adopts the federal labeling requirement. 'All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act ... shall be the food regulations of this state.' Cal. Health & Safety Code § 110100(a)." *Id.* Here, Plaintiffs' state law claims are likewise based on violations of California's Sherman Law, which is identical to the FDCA. "Because the Sherman Law's requirements are identical to the requirements of the Federal Food, Drug, and Cosmetic Act and FDA regulations, the Sherman law is explicitly authorized by the FDCA." (FAC ¶ 49).

Instructive here is the case of *Wilson v. Frito-Lay N. Am., Inc.*, where the court held that "[s]ince Plaintiffs' state law claims rely on statutes that explicitly incorporate federal law and regulations without modification, and since those claims also do not attempt to impose stricter requirements than those laws or regulations, Plaintiffs' state law claims are not preempted. These claims are all based on the theory that by not complying with the relevant federal laws and regulations, Defendant's labels mislead and deceive consumers." No. 12-1586 SC, 2013 WL 1320468, at *9 (N.D. Cal. Apr. 1, 2013); *see also Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1082 (N.D. Cal. 2014) ("Plaintiffs' state law claims are based on California's Sherman Food, Drug, and Cosmetic Act, Cal. Health & Safety Code § 109875 *et seq.*, which adopts and incorporates the FDCA."); *Kosta v. Del Monte Corporation*, 12–cv–01722–YGR, 2013 WL 2147413 (N.D. Cal., May 15, 2013) (finding no conflict between the Sherman Law and FDCA and refusing to find that the Sherman Law claims preempted); *see also Khasin v. Hershey Co.,* No. 12–cv–01862–EJD, 2012 WL 5471153, at *4 (N.D. Cal. Nov. 9, 2012) ("courts have refused to find that preemption precludes the private, state-based causes of action" "based on parallel state laws that mirror the relevant sections of the FDCA and the

9

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

NLEA").

Defendant argues that Plaintiffs' claims must be dismissed because they are based entirely upon lack of substantiation allegations for which there is no private right of action. (*See* Def.'s Mot. at 13). Plaintiff, however, do not merely allege a lack of substantiation. The FAC alleges that the Product label's claims are false because scientific evidence confirms that the ingredients Defendant asserts help support weight management or appetite control do not provide the purported benefits. As a matter of pleading, that is sufficient to state a false and misleading claim under the consumer protection statutes at issue. *See Gallagher v. Bayer AG*, 2015 WL 1056480, at *9 (N.D. Cal. Mar. 10, 2015).

Defendant further contends that Plaintiffs' claims are preempted because Defendant's claims are proper structure/function claims as permitted by federal requirements." (Def.'s Mot. at 15:16-22). However, when issuing the final regulations interpreting § 343(r)(6), the FDA explained:

> The rule is neither intended to establish whether any particular structure/function claim is appropriate for any specific product, nor whether the claim would be permitted under other provisions of the act. Like the labeling of any other FDA-regulated product, the labeling of dietary supplements must comply with all applicable requirements of the act and regulations. For example, an otherwise acceptable structure/function claim might nevertheless be false or misleading for other reasons, causing the product to be misbranded under section 403(a)(1) of the act.

*Regulations on Statements Made for Dietary Supplements Concerning the Effect of the Product on the Structure or Function of the Body*, 65 FR 1000 at 1001. The FDA similarly recognized that all "food claims, including structure/function claims on dietary supplements, [are subject] to the 'truthful and non-misleading' standard." *Id*. at 1003. Because the Product label is false and misleading, it violates 21 U.S.C. § 343(a) of the FDCA and the unlawful, unfair, and fraudulent prongs of the UCL. This theory is not preempted because state false-advertising laws are consistent with the FDCA's prohibition on false and misleading labeling and they are unrelated to the labeling

10

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

requirements of § 343(r)(6). *See Gallagher*, 2015 WL 1056480, at *7 ("Not preempted would be a claim that 'supports heart health' as a structure/function claim is a false and misleading statement contrary to scientific studies."). Thus, Plaintiffs' claims premised on the theory that the Product labeling is false and misleading are not expressly preempted.

### E.   The Primary Jurisdiction Doctrine Does Not Apply

The primary jurisdiction doctrine "is a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decision making responsibility should be performed by the relevant agency rather than the courts." *Davel Comm'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086 (9th Cir. 2006). "[T]he doctrine does not, however, require that all claims within an agency's purview be decided by the agency." *Id*. Where "the allegations of the complaint do not necessarily require the doctrine's applicability, then the primary jurisdiction doctrine may not be applied." *Id*. at 1088. When deciding whether to defer jurisdiction at the motion to dismiss stage, courts "apply a standard derived from Rule 12(b)(6) jurisprudence: whether the complaint plausibly asserts a claim that would not implicate the [primary jurisdiction] doctrine." *County of Santa Clara v. Astra United States*, 588 F.3d 1237, 1251-52 (9th Cir. 2009) (declining to invoke primary jurisdiction where action would 'plausibly be adjudicated' without agency's expertise), rev'd on other grounds.

Here, Plaintiffs' false advertising claims do not depend on any federal regulation. This alone precludes application of the primary jurisdiction doctrine. *See Davel Communs., Inc.*, 460 F.3d at 1088. Further, this is a typical false advertising case and "[d]etermining whether a term is false or misleading is within the province of the courts." *Rojas v. Gen. Mills, Inc.*, 2013 WL 5568389, at *4 (N.D. Cal. Oct. 9, 2013). Contrary to Defendant's assertion, this action does not "fundamentally challenge[] the ability of any manufacturer or distributor to sell GCE products" (Def.'s Mot. at 16). Rather, Plaintiffs allege that Defendant's specific conduct in labeling its Garcinia Cambogia product with the claims "weight management" and "appetite control" is misleading—a question the

11

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Court is well equipped to handle. *See Nathan*, *supra,* 2019 WL 1200554, at *6 ("Plaintiff's claims concern Defendant's allegedly misleading labeling of its GCE/HCA product with promises of 'weight management' and 'appetite control,' a determination this Court is equipped to make.").

Moreover, Defendant does not offer any evidence that the FDA has demonstrated some level of interest in regulating GCE/HCA products in this context. *See, e.g., Rikos v. Procter & Gamble Co*., 782 F. Supp. 2d 522, 530 (S.D. Ohio 2011) ("[C]ourts have declined to apply the primary jurisdiction doctrine when the party seeking agency referral does not provide evidence that 'the FDA has actually taken any interest in investigating the claims or issues presented here.'") (quoting *Pam Wonderful v. Ocean Spray Cranberries, Inc*., 642 F. Supp. 2d 1112, 1123 (C.D. Cal. 2009)). This Court should reach the same conclusion and decline to dismiss the action.

## F.   Plaintiffs' FAC Establishes That the Challenged Claims Are False

Plaintiffs recognize that they may not allege merely that Defendant does not have substantiation for its claims. Accordingly, they do not merely allege a lack of substantiation, as Defendant asserts (*See* Def.'s Mot. at 17-18), but rather cite to numerous studies that have found that the Product's primary ingredient, Garcinia Cambogia or HCA, fails to provide the benefits promised by the Product's labels. (*See* FAC ¶¶ 28-45; *see also Gallagher*, 2015 WL 1056480, at *8 (N.D. Cal. 2015) ("where plaintiffs allege that manufacturers' food or supplement claims are false and cite to scientific studies in support, those allegations are adequate to plead false and misleading conduct under their consumer protection statutes."). At the pleading stage, this does not impose a heavy burden, and a plaintiff "is not obligated in her complaint to definitively prove all of [her] claims by reference to unassailable scientific fact. Rather, she is only required to state a claim that is plausible on its face." *Tomasino v. Estee Lauder Cos*., 2015 U.S. Dist. LEXIS 38918, at *12-13 (E.D. N.Y. Mar. 26, 2015). *See also Boswell v. Costco Wholesale Corp.*, 2016 U.S. Dist. LEXIS 73926, at *26-27 (C.D. Cal. June 6, 2016) ("find[ing] Plaintiffs have adduced *some factual support* for the proposition that

12

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

coconut oil *might* have a deleterious effect on an individual's health. . . . That is all that is required at this stage" (emphasis added)).

Plaintiffs allege three theories of deception. First, that the "Appetite Control" claim is false or misleading. Second, that the "Weight Management" claim is false or misleading. Third, that the claims "Appetite Control" and "Weight Management" convey a message that the Product aids in weight loss, which is false or misleading. Plaintiffs cite studies supporting each theory of deception, thereby adequately pleading false and misleading conduct under consumer protection statutes.

### 1.   Plaintiffs Cite Studies Showing That HCA Does Not Support Appetite Control

Plaintiffs allege that the Product's "Supports Appetite Control" claim is false and misleading because the Product's only "active" ingredients are incapable of providing such benefits. (*See* FAC ¶ 26). Plaintiffs support this allegation with citations to two scientific studies demonstrating that "Garcinia Cambogia extract and/or HCA does not provide [] appetite control benefits in humans." (FAC ¶ 28).

The FAC alleges, "[s]ince hydroxycitric acid ["HCA"] reportedly promotes weight loss, in part, through suppression of hunger, a study was conducted to determine the effects of hydroxycitric acid on appetitive variables." (FAC ¶ 33). The first study, *Mattes*,[2] tested HCA's effect on food intake and appetitive variables, and assessed "[h]unger, desire to eat, prospective consumption (how much food do you think you could eat right now?) and fullness" at baseline and monthly for 12 weeks. (*See* RJN, Exh. 1 at 87, 92]). The study found that "[n]o significant treatment effects were observed on mean, peak or nadir hunger ratings, mean ratings of desire to eat, prospective consumption, fullness or sensations of thirst, stomach growling…" and that "[t]he appetitive indices also were not significantly associated with energy intake or body weight change within the active treatment participants." (*See* RJN, Exh. 1 at 92). Ultimately, "[t]he active

---

[2] Mattes R, Bormann L. *Effects of (-)-hydroxycitric acid on appetitive variables*. Physiol Behav 2000, 71:87-94.

treatment group did not exhibit better dietary compliance or significant correlations between appetitive variables and energy intake or weight change." (*Id.*; *see also* FAC ¶ 33). The authors therefore concluded that there were no effects of HCA on appetite variables and the study did not support a satiety effect of HCA. (*See* RJN, Exh. 1 at 87; *see also* FAC ¶ 33). The second study, *Kim*[3], similarly found that there was "[n]o effect of . . . GCE [garcinia cambogia extract] supplementation on energy intake," (*See* RJN, Exh. 2 at 7). The authors therefore concluded that "[i]n agreement with past studies the present study provided no evidence that . . . GCE supplementation can modify calorie intake . . . ." (*See* FAC ¶ 42 (quoting *Kim*); *see also* RJN, Exh. 2, at 7).

Here, Defendant does not even acknowledge the *Mattes* study in its Motion and fails to include it in its Request for Judicial Notice. (*See* Dkt. Nos. 18-1 – 18-3). But this study found that HCA was no more effective than a placebo on a wide variety of appetite variables including hunger, desire to eat, prospective consumption, fullness, and thirst. *(See* RJN, Exh. 1 at 92). And crucially, both *Mattes* and *Kim* showed that HCA was not effective with respect to energy intake. (*See* RJN, Exh. 1 at 92; RJN, Exh. 2 at 7). Thus, the Court should "find[] unavailing defendant's contention that plaintiffs' claims should be dismissed because the studies plaintiffs cite do not, in fact, support the precise propositions for which they are cited. Whether or not the studies support plaintiff's proposition . . . is an issue of fact the Court cannot resolve on a motion to dismiss," *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D. N.Y. 2013).

### 2. Plaintiffs Cite Studies Showing That HCA Does Not Support Weight Management

#### i. The FAC Disproves Each Biological Mechanism By Which HCA May Affect Weight Management.

Plaintiffs allege that the Product's "Weight Management" claim is misleading because the Product's only "active" ingredients are incapable of providing such benefits.

---

[3] Kim et al., *Does Glycine max leaves or Garcinia Cambogia promote weight-loss or lower plasma cholesterol in overweight individuals: a randomized control trial*, 10 Nutr. J. 94, 100 (2011).

(*See* FAC ¶ 26). Plaintiffs support this allegation with citations to scientific studies "affirmatively demonstrat[ing] that Garcinia Cambogia extract (HCA) does not and cannot aid weight management" (FAC ¶ 43). Plaintiffs first cite to studies ruling out each possible biological mechanism of action by which HCA is purported to affect weight. Such allegations that a product cannot have the claimed biological effect are sufficient to state a claim. *See Racies v. Quincy Bioscience, LLC*, 2015 WL 2398268, at *4 (N.D. Cal. May 19, 2015) ("If Plaintiff successfully proves that the apoaequorin in the Product is destroyed by the human digestive system or is of such a trivial amount that it cannot biologically affect memory or support brain function, he will be able to affirmatively prove the falsity of Defendant's Product claims."); *Alvarez v. NBTY, Inc.*, 2017 WL 6059159, at *9 (S.D. Cal. Dec. 6, 2017) (finding that allegations that "that the Products' representations are actually false because the majority of people cannot use an excessive amount of biotin, prohibiting the Products from providing any benefits" supported by citations to evidence that "the body does not require more than 30 mcg of biotin per day, let alone the 5,000 to 10,000 mcg of biotin provided in the Biotin Products" are "sufficient to survive the motion to dismiss stage" even if "more scientific evidence in support of this claim may be necessary going forward").

In order for a supplement to be effective in aiding weight management, it must help users either (1) lower energy intake, (2) increase energy expenditure, or (3) otherwise alter the manner in which the body processes the energy they consume. *See Nathan, supra*, at *4. Regarding the first mechanism (lowering energy intake), as demonstrated above, the *Mattes* and *Kim* studies demonstrate that HCA does not affect energy intake. (*See* RJN, Exs. 1-2).

Regarding the second mechanism (increasing energy expenditure), Plaintiffs cite the *Van Loon*[4] study, which was "conducted to assess the effects of acute hydroxycitric acid supplementation on substrate metabolism at rest and during exercise in humans."

---

[4] van Loon L, van Rooijen J, Niesen B, Verhagen H, Saris W, Wagenmakers A. *Effects of acute (-)-hydroxycitrate supplementation on substrate metabolism at rest and during exercise in humans*. Am J Clin Nutr 2000, 72:1445-50.

(FAC ¶ 34). The authors of *Van Loon* explained that "in order for HCA to qualify as an effective metabolic antiobesity agent, it should produce a stimulating effect on skeletal muscle fat oxidation or total energy expenditure." (RJN, Exh. 3 at 1448). The *Van Loon* study found that "energy expenditure and fat and carbohydrate oxidation at rest and during exercise were not significantly different between [the HCA and placebo] trials." (*See* RJN, Exh. 3 at 1448). The authors of *Van Loon* concluded that "HCA availability does not increase energy expenditure or skeletal muscle fat oxidation." (*Id.*)

With respect to the third mechanism, (altering the manner in which the body processes energy), the factor relevant to this mechanism is increased fat oxidation. *See Nathan, supra*, at *4. The *Van Loon* study "investigated whether systemic HCE availability altered fat oxidation rates and plasma metabolite concentrations at rest and during moderate-intensity exercise" (*See* RJN, Exh. 3 at 1446). The results of the *Van Loon* study showed "that HCA supplementation is ineffective at increasing fat oxidation in endurance-trained subjects, even in large doses." (*Id.* at 1448). The authors of the *Van Loon* study concluded, "we did not detect any indication that HCA supplementation can affect whole-body metabolism in humans" and "a direct effect of HCA on fat oxidation seems unlikely to contribute to its claimed antiobesity or ergogenic potential." (*Id.* at 1449).

Because Plaintiffs cite to studies disproving each possible biological mechanism of action by which HCA may affect weight management, Plaintiffs' theory that the "Weight Management" claim is misleading does not rest upon a lack of substantiation. *See Vasic v. Patent Health, LLC*, 2014 WL 940323, at *4 (S.D. Cal. Mar. 10, 2014) ("because the studies cited by Plaintiff looked at products that share some of the same active ingredients as the Products at issue, Plaintiff's claims are facially plausible . . . . Accordingly, the Court finds . . . the issue of whether the proffered studies do in fact show that Defendants' representations are provably false is a question not properly decided on a motion to dismiss.").

       ii.   *The FAC Demonstrates that HCA Is No More Effective Than a Placebo*

16

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

A "weight management" claim implies that the product will aid in managing or controlling one's weight, i.e. gaining, losing, or maintaining weight. Here, Plaintiffs cite numerous studies showing that Garcinia Cambogia does not provide any such benefits and in fact, is no more effective than a placebo. For example, the *Hemsfield* [5] study measured "[b]ody weight change and fat mass change" in a twelve-week randomized, double-blind, placebo-controlled trial. (*See* RJN, Exh. 4 at 1596). The study found that "body weight and fat mass change during the 12-week study period did not differ significantly between placebo and treatment groups" and "there were no observed selective fat-mobilizing effects specifically attributable to the active agent, hydroxycitric acid." (RJN, Exh. 4 at 1599).

The second study, *Yonei*,[6] tested the effect of a dietary supplement with garcinia cambogia extract as one of the main ingredients. The study found "no significant changes in height, weight, body water content, muscle volume, lean muscle mass, skeletal muscle volume, body-fat volume, BMI, body fat percentage, waist-hip ratio, basal metabolism, or blood pressure." (*See* RJN, Exh. 5 at 91). The authors of *Yonei* concluded "'hydroxycitric acid had no significant effect on the body component" and that "dietary efficacy was not indicated.'" (FAC ¶ 37 (quoting *Yonei* at 100)).

The third study, *Kim, supra*, found that "[t]here were no significant differences in body weight, body mass index (BMI) and waist-to-hip ratio (WHR) after 10 weeks supplementation with [ ] GCE compared to placebo." (RJN, Exh. 2 at 4). *Kim* further found "no evidence that [ ] GCE supplementation can modify calorie intake" (RJN, Exh. 2 at 7). The authors concluded that GCE "had a minimal effect on % body fat" and had no "clinically significant effects on other plasma lipids, antioxidant or adipocytokine levels compared to placebo." (RJN, Exh. 2 at 10).

---

[5] S.B. Heymsfield, *et al., Garcinia Cambogia (Hydroxycitric Acid) As a Potential Antiobesity Agent: A Randomized Controlled Trial*, J. Amer. Med. Assoc. 280(18):1596-600 (1998).
[6] Yoshikazu Yonei et. al, *Effects on the Human Body of a Dietary Supplement Containing L-Carnitine and Garcinia Cambogia Extract: A Study using Double-blind Tests*, 42 J. Clin. Biochem. Nutr. 89, 101 (2008).

*Capaci v. Sports Research, Inc.,* No. 2:19-cv-03440-FMO-FFM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Because Plaintiffs cite to studies showing that the Product is no more effective than a placebo, and therefore cannot aid in weight management, Plaintiffs' claims do not rest upon a lack of substantiation. "These factual allegations do not merely suggest that there is a lack of evidence to substantiate Defendant['s] representations; rather, these factual allegations suggest that evidence exists to refute the truth of Defendant['s] representations." *Dorfman v. Nutramax Labs., Inc.*, No. 13-CV-0873, 2013 U.S. Dist. LEXIS 136949, at *33-34 (S.D. Cal. Sept. 23, 2013) ("Plaintiff cites to several scientific studies that allegedly undermine Defendants' representations. The Court finds that these allegations are 'sufficient[ly] detail[ed] . . . to give us some assurance that [Plaintiffs'] theory has a basis in fact.'" (quoting *Berson v. Applied Signal Tech., Inc*., 527 F.3d 982, 989-90 (9th Cir. 2008))). Thus, the Court should deny Defendant's Motion.

### 3. Plaintiffs Cite Studies Showing that HCA Does Not Support Weight Loss

The FAC alleges, "[w]hen deciding to purchase the Product, Plaintiffs read and relied on the claims that 'Garcinia Cambogia is a great way to support your overall weight management plan' and that the Product 'Supports Appetite Control,' which appears directly on the Product's label and packaging." (FAC ¶ 57). "Based on these representations, Plaintiffs believed the Product was an effective dietary aid that would provide weight-loss benefits and would help them lose weight and help control their appetite." (FAC ¶ 58). In other words, "Defendant's claims relating to the Product are likely to mislead reasonable consumers to believe the Product can provide weight-loss benefits, when it cannot." (FAC ¶ 94).

Here, the FAC alleges that "the Food and Drug Administration's (FDA) Office of Dietary Supplements concludes that based on research findings, that 'Garcinia cambogia has little to no effect on weight loss.'" (FAC ¶ 44). Further, Plaintiffs cite numerous studies showing that the Product's primary ingredient, Garcinia Cambogia Extract or HCA does not provide benefits related to weight and appetite. (*See* FAC ¶¶ 28-45). For example, the *Kim* study found that there was "no significant difference in weight-loss

18

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

between HCE and placebo supplementation." The authors of *Kim* concluded that "GCE supplementation failed to promote weight-loss" and "was not effective in promoting weight-loss." (RJN, Exh. 2 at 6). Additionally, the *Hemsfield* study found that "Garcinia cambogia failed to produce significant weight loss … beyond that observed with placebo" and "do[es] not support a role … as a facilitator of weight loss." (RJN, Exh. 4 at 1596, 1600). Finally, the *Yonei* study found that "Garcinia cambogia extract did not show dietary efficiency." (RJN, Exh. 5 at 101).

Collectively these studies found that the Product's main "active" ingredient does not improve "weight loss," "fat loss," "fat metabolism," "fat oxidation," "carbohydrate oxidation," "energy expenditure," "resting metabolic rate," "activity-induced energy expenditure," "satiety," "calorie intake," or other appetitive variables. Succinctly put, with regards to dietary benefits, including those relating to weight and appetite, these studies found that "HCA was not effective." (*See* FAC ¶¶ 41, 51, 62). Because Plaintiffs advance a theory of deception that the claims "Weight Management" and "Appetite Control" convey a misleading weight-loss message, and because Plaintiffs cite to numerous studies showing that the Product is not an effective weight-loss supplement, Defendant's Motion should be denied.

### G.   Plaintiffs Satisfy Rule 9(b)

Defendant's argument that the FAC fails to satisfy the heightened pleading requirements of Rule 9(b), is also incorrect. Rule 9(b) does not impose as onerous of a burden as Defendant contends. Allegations of fraud or mistake need only be "specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *see also Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1077-78 (E.D. Cal. 2010) (finding Rule 9(b) satisfied where the plaintiffs alleged that during a certain period of time the defendant made certain labeling claims on its drink products, submitted examples of the labels, explained what was misleading about the labels, and alleged that they would not have

purchased the products had they known the truth); *Mollicone v. Universal Handicraft, Inc.*, No. 216CV07322CASMRWX, 2017 WL 440257, at *11 (C.D. Cal. Jan. 30, 2017) (finding that Rule 9(b) was satisfied).

Here, Plaintiffs allege the "who, what, when, where and how of the misconduct charged," as well as "what is false or misleading about [the purportedly fraudulent conduct], and why it is false." *Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). The FAC explains that Defendant Sports Research Corporation (the "who") made the "Weight Management" and "Supports Appetite Control" statements (the "what") on the Product packaging and in its advertising of the Sports Research Garcinia Cambogia product, which Plaintiff Frank Capaci read in New Jersey and Plaintiff Cynthia Ford read in California (the "where") during the class period (the "when"). These statements are alleged to be false and misleading because Plaintiffs assert: (1) the Product does not provide the weight management or appetite control benefits that are claimed on the Product's label, (2) Defendant knew that Product was nothing more than a placebo but intended that consumers rely upon its misleading representations in purchasing the Product, and (3) Plaintiffs relied on these misstatements when purchasing the products (the "how"). Plaintiffs have sufficiently alleged their fraud claims and Defendant's Motion should be denied. *See Woodard v. Labrada,* 2017 WL 3309765, at *7 (C.D. Cal. Jul. 31, 2017) (Plaintiffs satisfied Rule 9(b) by alleging that the Defendant "(a) made affirmative misrepresentations or fraudulent omissions; (b) had knowledge (or a duty to have knowledge) that these representations were false; and (c) intended to induce Plaintiffs' reliance in making those fraudulent misrepresentations or omissions.")

## H. Plaintiffs' New Jersey Claims Are Sufficiently Pleaded

Defendant complains that the FAC does not plead the specific dates and times of Plaintiffs' purchases as required by *Mladenov*. (Def.'s Mot. at 23:17-20 (citing *Mladenov v. Wegmans Food Markets, Inc.*, 124 F.Supp.3d 360 (D. NJ. 2015)). Defendant misinterprets the requirements as set forth by *Mladenov*. There, the Court "d[id] not know

20

*Capaci v. Sports Research, Inc.,* No. 2:19-cv-03440-FMO-FFM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

which specific products Plaintiffs purchased, whether those specific products were linked to specific signs or advertisements, and what those signs or advertisements stated." *Id*. at *377. Here however, Plaintiffs allege that they purchased the Sports Research Garcinia Cambogia Product at GNC and Vitamin Shoppe stores for $20 to $25 in reliance on the Product label's misleading "weight management" and "supports appetite control" claims. (*See* FAC ¶¶ 55-57). Defendant complains that the FAC does not include additional allegations (*see* Def.'s Mot. at 23:21-27), but Defendant fails to provide any authority that such allegations are required. In their FAC, Plaintiffs sufficiently demonstrate Defendant's unlawful conduct, an ascertainable loss, and a causal relationship between the two. (*See* FAC ¶ 146 ("Defendant, by selling, distributing, designing, packaging and marketing the Product, as set forth above, engaged in deceptive practices and acts in violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2."); *see also* FAC ¶ 154 ("Plaintiffs and the Class suffered an ascertainable loss caused by Defendant's misrepresentations, unconscionable commercial practices, and knowing omissions because (a) they would not have purchased Product on the same terms if the true facts concerning its actual capabilities had been known; and (b) they paid a price premium due to the misrepresentation of the Product.")).

Defendant contends that Plaintiffs' TCCWNA claim fails because Plaintiffs fail to allege a viable CFA claim. (Def.'s Mot. at 24:1-3). Because Plaintiffs have adequately pleaded a CFA claim, this argument is moot. Notwithstanding, Plaintiffs have sufficiently alleged a "clearly established right" as required by TCCWNA. (*See* FAC ¶ 162 ("The right of consumers to truthful and accurate statements on the labels and marketing materials for the Product, as well as the right to avoid deception caused by false and misleading statements on such labels and marketing materials, are 'clearly established legal rights' under N.J.S.A. § 56:8-2."). Defendant's Motion should be denied.

## I.   The Economic Loss Doctrine Does Not Apply to Plaintiffs' Negligent Misrepresentation Claim

Defendant argues that the economic loss doctrine bars Plaintiffs' negligent

21

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

misrepresentation claims because "Plaintiffs have not alleged personal injury or damages to property other than the Product itself." (Def.'s Mot. at 24:12-14). Defendant's position regarding the economic loss doctrine is incorrect. Courts have routinely held that the economic loss doctrine does not apply to claims of negligent misrepresentation that are grounded in fraud, such as the allegations in Plaintiffs' FAC. [7] The FAC alleges that "Defendant made the [supports weight management and appetite control] representations to induce Plaintiffs and the members of Class to purchase the Product. Plaintiffs and the Class members relied on the representations when purchasing Defendant's product." (FAC ¶ 127). Further, "Plaintiffs and the Class Members would not have purchased the Product or paid as much for the Product if the true facts had been known." (FAC ¶ 143). Ultimately, Plaintiffs' and the Class's purchases were fraudulently induced by Defendant's deceptive advertising. This conduct rises from principles of tort law and amounts to tortious conduct, permitting tort damages. *See Young v. Neurobrands, Inc.*, Case No. 4:18-cv-05907-JSW (N.D. Cal. Feb 19, 2019) (Dkt. No. 37), at 10 ("Because Plaintiffs allege that they were fraudulently induced to purchase the Products, they have stated a claim under tort principles, which would not be precluded by the economic loss doctrine.") Defendant's Motion to Dismiss should therefore be denied.

### J.    Plaintiffs Have Provided an Adequate Prayer for Punitive Damages

Defendant next argues that Plaintiffs' FAC does not meet the *Iqbal/Twombly* standard for punitive damages. (Def.'s Mot. at 24). As a preliminary matter, federal law determines the pleading standard for Plaintiffs' claims, even as they arise out of California substantive law. *See Watkinson v. MortgageIT, Inc.*, No. 10-CV-327-IEG

---

[7] *See also Hannibal Pictures, Inc. v. Sonja Prods. LLC*, 432 Fed.Appx. 700, 701 (9th Cir. 2011) (holding a jury verdict in favor of a negligent misrepresentation claim was not precluded by the economic loss rule where "one party has lied to the other"); *Kalitta Air, L.L.C. v. Central Texas Airborne Sys., Inc.*, 315 Fed.Appx. 603, 607 (9th Cir. 2008) (holding negligent misrepresentation is a "species of fraud" under California law, for which "economic loss is recoverable"); *see also Bret Harte Union High Sch. Dist. v. FieldTurf, USA, Inc.*, No. 116CV00371DADSMS, 2016 WL 3519294, at *5 (E.D. Cal. June 27, 2016); *Zakaria v. Gerber Prod. Co.*, No. LA CV15-00200 JAK EX, 2015 WL 3827654, at *11 (C.D. Cal. June 18, 2015), *reconsideration denied*, No. LACV1500200JAKEX, 2015 WL 4379743 (C.D. Cal. July 14, 2015).

22

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

(BLM), 2010 WL 2196083, at *10 (S.D. Cal. June 1, 2010) ("[W]hile Section 3294 governs Plaintiff's substantive claim for punitive damages, the Federal Rules of Civil Procedure govern the punitive damages claim procedurally with respect to the adequacy of pleadings.") (emphasis omitted); *Clark v. State Farm Mut. Auto. Ins. Co*., 231 F.R.D. 405, 406 (C.D. Cal. 2005) (accord). Numerous courts in this district and others have found that, "a plaintiff bringing an action in federal court 'may include a "short and plain" prayer for punitive damages that relies entirely on unsupported and conclusory averments of malice or fraudulent intent.'" *Clark*, 231 F.R.D. at 406; *see also Risto v. Screen Actors Guild – American Federation of Television and Radio Artists*, 2018 WL 7016345, at *11 (C.D. Cal. Nov. 6, 2018) ("This Court adopts the position of many other courts in this district that '[p]laintiff only needs to provide notice pleading pursuant to Rule 8(a) with regards to its claim for punitive damages; conclusory pleading is sufficient.'") (citations omitted)). Here, Plaintiffs have provided an adequate prayer for punitive damages under the FRCP.

Notwithstanding, Plaintiffs provide factual allegations in their FAC establishing in detail Defendant's violations of law and provide factual support for those allegations. The FAC alleges, "[n]umerous randomized, placebo controlled scientific studies demonstrate that Garcinia Cambogia extract and/or HCA does not provide weight-loss or appetite control benefits in humans… [and] the only reliable scientific evidence demonstrates it is no more effective as a weight-management aid than a placebo." (FAC ¶ 28). Here, "Defendant knew the contents and ingredients in the Product and knew that [the] Product was nothing more than a placebo. Nonetheless, Defendant knowingly concealed, suppressed, and/or omitted the true capabilities of the Product, given consumers' desire for breakthrough weight-loss supplements." (FAC ¶ 153). Plaintiffs' factual allegations are sufficient to survive the pleadings stage. *See Freedom Transport, Inc. v. Travelers Companies, Inc*., 2016 WL 7507755, at *7 (C.D. Cal. Aug. 11, 2016).

**K.      Disgorgement of Profits is an Available Remedy Under the UCL, FAL, and CLRA**

Defendant contends that "[i]n California, disgorgement of profits is not available under the UCL, FAL, or CLRA" (Def.'s Mot. at 25:7-8). However, "there are two types of disgorgement: 'restitutionary disgorgement,' which *focuses on the plaintiff's loss*, and 'nonrestitutionary disgorgement,' which focuses on the defendant's unjust enrichment." *See In Re Tobacco Cases II*, 240 Cal.App.4th 779, 800 (Sept. 28, 2015) (italics in original).  Here, the FAC alleges, "[t]he Product, which has the sole intended purpose as a dietary aid, is worthless since it is incapable of providing any such benefits." (FAC ¶ 68). In other words, consumers received no value from the Product. Disgorgement of profits therefore constitutes restitutionary disgorgement, which is an available remedy under the UCL, FAL, and CLRA. *See Tobacco Cases II*, at *801. Defendant further argues that because Plaintiffs do not have a viable CFA claim, they cannot seek disgorgement of profits for the New Jersey causes of action. (*See* Def.'s Mot. at 25). As discussed *supra*, Plaintiffs' CFA claim is viable, rendering Defendant's argument moot. Defendant's Motion should be denied in its entirety.

## V.      CONCLUSION

For the foregoing reasons, the Court should respectfully deny Defendant's Motion to Dismiss in its entirety. If the Court dismisses any portion of the FAC, Plaintiffs respectfully request leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Dated:    July 18, 2019                Respectfully submitted,

/s/ *Ronald A. Marron*
    RONALD A. MARRON

**LAW OFFICES OF RONALD A. MARRON, APLC**

24

RONALD A. MARRON
MICHAEL HOUCHIN
LILACH HALPERIN
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
***Attorneys for Plaintiffs and the Proposed Class***

*Capaci v. Sports Research, Inc.,* No. 2:19-cv-03440-FMO-FFM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT