**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
LILACH HALPERIN (SBN 323202)
*lilach@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
*Attorneys for Plaintiff and the Proposed Class*

**GARCIA RAINEY BLANK & BOWERBANK LLP**
JEFFREY M. BLANK (SBN 217522)
jblank@garciarainey.com
NORMA V. GARCIA (SBN 223512)
ngarciaguillen@garciarainey.com
695 Town Center Drive, Suite 700
Costa Mesa, California 92626
Telephone 714.382.7000
Facsimile: 714.784.0031
*Attorneys for Defendant Sports Research Corporation*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK CAPACI and CYNTHIA FORD on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>SPORTS RESEARCH, INC., a California Corporation.<br><br>Defendant. | Case No.: 2:19-cv-03440-FMO-FFM<br><br>**CLASS ACTION**<br><br>**JOINT BRIEF REGARDING (1) PLAINTIFF CYNTHIA FORD'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION, AND (2) DEFENDANT SPORTS RESEARCH CORPORATION'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date:   October 15, 2020<br>Time:   10:00a.m.<br>Ctrm:   6D<br>Judge: Hon. Fernando M. Olguin<br><br>Complaint Filed: April 26, 2019 |

i

# <u>TABLE OF CONTENTS</u>

I.    PLAINTIFF'S INTRODUCTION ............................................................... 1

II.   DEFENDANT'S INTRODUCTION ............................................................ 2

III.  STATEMENT OF FACTS ........................................................................... 5

  A.  Plaintiff's Statement of Facts ................................................................ 5

  B.  Defendant's Statement of Facts ............................................................ 6

IV.   ARGUMENT – WHETHER PLAINTIFF IS ENTITLED TO SUMMARY
     JUDGMENT OR SUMMARY ADJUDICATION .................................... 6

  A.  Plaintiff's Position: Garcinia Cambogia Does Not Provide Weight
Management or Weight Loss Benefits ......................................................... 6

     *1. Defendant's Advertising Misleadingly Implies Weight Loss Benefits* .............. 6

     *2. The Totality of Scientific Evidence Demonstrates that the Weight*
      *Management and Weight Loss Claims Are False and Misleading* .................. 7

        *i.    Systematic Reviews and Meta-Analyses Prove that GCE Does*
           *Not Provide Weight Management or Weight Loss Benefits* .............. 7

        *ii.   Randomized Controlled Trials Prove that Garcinia Cambogia*
           *Does Not Provide Weight Management or Weight Loss Benefits* ..... 8

        *iii.  Scientific Experts Agree that Garcinia Cambogia Does Not*
           *Provide Weight Management or Weight Loss Benefits* .................... 8

        *iv.   The NIH Agrees that Garcinia Cambogia Does Not Provide*
           *Weight Management or Weight Loss Benefits* .................................. 9

     *3. Defendant's Expert Fails to Rebut Plaintiff's Position* ...................................... 9

        *i.    Dr. Kalman Does Not Opine that Garcinia Cambogia is*
           *Effective* ............................................................................................ 9

        *ii.   Dr. Kalman Admits "There Is No Magic Pill For Weight Loss"* .... 10

        *iii.  The Studies Cited By Dr. Kalman Do Not Support His*
           *Conclusions* ...................................................................................... 11

i

B.  Defendant's Position: Plaintiff Fails to Prove the Weight Management CLS is False and Misleading. ...................................................................................... 12

C.  Plaintiff's Position: The Evidence Provided in the Case Demonstrates that Garcinia Cambogia Does Not Support Appetite Control............................................. 14

  1. *There is No Genuine Dispute That Garcinia Cambogia Does Not Support Appetite Control* ................................................................................ 14

  2. *Defendant Fails to Rebut Plaintiff's Evidence* ................................................. 15

D.  Defendant's Position:  Plaintiff Fails to Prove the Appetite Control CLSs are False and Misleading. ...................................................................................... 16

E.  Plaintiff's Position: Damages Cannot Genuinely Be Disputed............................ 16

F.  Defendant's Position:  SR Disputes FRM and Damage Calculations.................. 17

V.  WHETHER DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ...... 18

A.  Plaintiff Offers No Evidence She Detrimentally Relied on the CLSs. ................ 18

B.  Plaintiff's Position: Plaintiff Relied On The CLSs ............................................ 20

C.  Plaintiff Presents No Evidence That the CLSs are False or Misleading. ............. 21

  1. *Defendant's Position: The Standard for False Advertising Claims.* ............... 21

  2. *Plaintiff's Position: The Standard For Deceptive Labeling Claims* ............... 23

  3. *Defendant's Position: Plaintiff Cannot Prove the CLSs are False.* ............... 24

  4. *Plaintiff's Position: The Evidence Presented Confirms CLSs Are False* ........ 28

  5. *Defendant's Position:  Plaintiff Cannot Prove the CLSs are Misleading.* ...... 31

  6. *Plaintiff's Position: CLSs Are Misleading To Reasonable Consumers* .......... 32

D.  Defendant's Position:  Plaintiff Merely Alleges an Impermissible Lack of Substantiation Claim. ......................................................................................... 32

E.  Plaintiff's Position: This is Not A Lack of Substantiation Case ........................ 35

F.  Defendant's Position:  There is No Triable Issue of Fact as to Damages. .......... 36

G.  Plaintiff's Position: The Full Refund Damages Model Is Appropriate................ 39

H.  Defendant's Position: The Breach of Express Warranty Claim Fails. ................ 41

ii

*Capaci v. Sports Research, Inc.,* No. 2:19-cv-03440-FMO-FFM
JOINT MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE PARTIES'
MOTION(S) FOR SUMMARY JUDGMENT

I.   Plaintiff's Position: Defendant's Arguments Regarding Plaintiff's Breach of Express Warranty Claim Are Inapposite ..................................................... 42

J.   Defendant's Position: The Breach of Implied Warranty Claim Fails. ................. 42

K.   Plaintiff's Position: Defendant's Argument Regarding Vertical Privity Does Not Preclude Plaintiff's Implied Warranty Claim ....................................... 43

L.   Defendant's Position:  Plaintiff Has No Standing for Injunctive Relief. ............. 44

M.   Plaintiff's Position: Plaintiff Has Standing For Injunctive Relief........................ 45

N.   Defendant's Position:  Plaintiff's Pursuit of Public Injunctive Relief Does Not Permit Circumvention of Article III Standing Requirements. ..................................... 46

O.   Plaintiff's Position: Plaintiff Has Article III Standing ......................................... 47

P.   Defendant's Position:  Plaintiff Has No Right to Equitable Restitution. ............. 48

Q.   Plaintiff's Position: Plaintiff Is Entitled to Equitable Restitution ........................ 49

R.   Defendant's Position:  Plaintiff Has No Right to Punitive Damages................... 49

S.   Plaintiff's Position: Plaintiff Is Entitled To Punitive Damages ........................... 50

VI.   PLAINTIFF'S CONCLUSION............................................................................ 50

VII.   DEFENDANT'S CONCLUSION......................................................................... 50

iii

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
JOINT MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE PARTIES'
MOTION(S) FOR SUMMARY JUDGMENT

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Abraham v. Volkswagen of America, Inc.*,

    795 F.2d 238 (2nd Cir. 1986) ................................................................. 43

*Algarin v. Maybelline, LLC*,

    300 F.R.D. 444 (S.D. Cal. 2014) .......................................................... 23

*Allen v. Similasan Corporation,*

    306 F.R.D. 635 (S.D. Cal. 2015) .......................................................... 17

*Alliance Mortgage Co. v. Rothwell*,

    10 Cal. 4th 1226 (1995) ......................................................................... 37

*Aloudi v. Intramedic Research Grp., LLC*,

    2015 WL 4148381 (N.D. Cal. Jul. 9, 2015) ........................................ 22

*Am. Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton*,

    96 Cal. App. 4th 1017 (2002) ............................................................... 50

*Apple, Inc. v. Samsung Elecs., Co. Ltd.*,

    2014 WL 976898 (N.D. Cal. Mar. 6, 2014) ....................................... 38

*Bily v. Arthur Young & Co.*,

    3 Cal. 4th 370 (1992) ............................................................................. 19

*Bland v. Sequel Nat. Ltd.*,

    2019 WL 4674337 (N.D. Cal. Aug. 2, 2019) ..................................... 44

*Brazil v. Dole Packaged Foods, LLC*,

    2014 WL 6901867 (N.D. Cal. Dec. 8, 2014) ..................................... 27

*Brazil v. Dole Packaged Foods, LLC*,

    660 F. App'x 531 (9th Cir. 2016) ................................................. 17, 37

*Brockey v. Moore*

    107 Cal.App.4th 86 (2003) .................................................................... 23

iv

*Bronson v. Johnson & Johnson, Inc.*,

    2013 WL 1629191 (N.D. Cal., Apr. 16, 2013) ...................................................... 33

*Broughton v. Cigna Healthplans of California*,

    21 Cal. 4th 1066, 1080 (1999)...................................................................... 47

*C.H. Robinson Worldwide, Inc. v. KLF Logistics, Inc.*,

    2019 WL 4565173 (C.D. Cal. Jul. 29, 2019) ........................................................ 41

*Caldera v. J.M. Smucker Co.*,

    2014 WL 1477400 (C.D. Cal. Apr. 15, 2014)................................................. 36, 38

*Chavez v. Nestle USA, Inc.*,

    2011 WL 2150128 (C.D. Cal. May 19, 2011)........................................................ 34

*Chowning v. Kohls Dep't Stores, Inc.*,

    733 F. App'x 404 (9th Cir. 2018).................................................................... 37

*Churchill v. Winter Chevrolet*,

    2005 WL 8162543 (N.D. Cal. Jun. 9, 2005) ............................................... 36, 37

*Circle Click Media, LLC v. Regus Mgmt. Grp., LLC*,

    743 F. App'x 883 (9th Cir. 2018).................................................................... 46

*Clemens v. DaimlerChrysler Corp.*,

    534 F.3d 1017 (9th Cir. 2008)........................................................................ 43

*Colgan v. Leatherman Tool Grp., Inc.*,

    135 Cal. App. 4th 663 (2006)................................................................. 22, 37

*Consumer Advocates v. Echostar Satellite Corp.*

    113 Cal.App.4th 1351 (2003)........................................................................ 23

*Cortez v Purolator Air Filtration*,

    23 Cal.4th 163 (2000)................................................................................. 49

*Dachauer v. NBTY, Inc.*,

    913 F.3d 844, 847-48 (9th Cir. 2019) ............................................................. 35

v

*Davidson v. Kimberly-Clark Corp.*,

    889 F.3d 956 (9th Cir. 2018)............................................................ 47, 48

*Day v. AT&T Corp.*,

    63 Cal. App. 4th 325 (1998).................................................................. 24

*Dunson v. Cordis Corp.,*

    2016 WL 3913666 (N.D. Cal. July 20, 2016). ...................................... 44

*Ebner v. Fresh, Inc.*,

    838 F.3d 958 (9th Cir. 2016).................................................................. 23

*Eckler v. Wal-Mart Stores, Inc.*,

    2012 WL 5382218 (S.D. Cal. Nov. 1, 2012) ................................... 3, 28

*Engel v. Novex Biotech LLC*,

    2015 WL 846777 (N.D. Cal. Feb. 25, 2015),

    *aff'd* 689 Fed. App'x. 510 (9th Cir. 2017) ....................... 24, 28, 33, 35

*Estakhrian v. Obenstine*,

    233 F. Supp. 3d 824 (C.D. Cal. 2017).................................................... 49

*Farar v. Bayer AG*,

    2017 WL 5952876 (N.D. Cal. 2017)............................................... 17, 39

*Fragale v. Faulkner*,

    110 Cal. App. 4th 229, 236 (2003)......................................................... 37

*Fraker v. Bayer Corp.*,

    2009 WL 5865687 (E.D. Cal. Oct. 6, 2009) ............................ 12, 33, 35

*Franulovic v. Coca-Cola Co.*,

    2009 WL 1025541 (D.N.J. Apr. 16, 2009),

    *aff'd*, 390 Fed App'x 125 (3d Cir. 2010) ............................................. 27

*FTC v. Figgie Int'l*,

    994 F.2d 595 (9th Cir. 1993)................................................................. 40

*Garcia v. Super. Ct.*,

    50 Cal. 3d 728 (1990)...........................................................................19

*Haskell v. Time, Inc.*,

    965 F. Supp. 1398 (E.D. Cal. 1997)....................................................23

*Hollingsworth v. Perry*,

    570 U.S. 693 (2013) ............................................................................46

*In re GNC Corp.*,

    789 F.3d 505 (4th Cir. 2015)...............................................................22

*In re NJOY, Inc. Consumer Class Action Litig.*,

    120 F. Supp. 3d 1050 (C.D. Cal. 2015)...........................12, 19, 36, 38

*In re POM Wonderful LLC*,

    2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) ....................................38

*In re Scotts EZ Seed Litig.*,

    304 F.R.D. 397 (S.D.N.Y. 2015).........................................................17

*In re Tobacco II Cases*,

    46 Cal. 4th 298 (2009).................................................................19, 21

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,

    313 F. Supp. 1113 (N.D. Cal. 2018) ...................................................49

*Johns v. Bayer*,

    2013 WL 1498965 (S.D. Cal. Apr. 10, 2013) ..............................*passim*

*Jones v. ConocoPhillips*,

    198 Cal. App. 4th 1187 (2011).............................................................44

*Kane v. Chobani*,

    973 F. Supp. 2d 1120 (N.D. Cal. 2014) ..............................................19

*Kasky v. Nike, Inc.*,

    27 Cal.4th 939 (2002)..........................................................................23

*Korea Supply Co. v. Lockheed Martin Corp.*,

    29 Cal. 4th 1134 (2003)......................................................................... 37

*Kwan v. SanMedica Int'l, LLC*,

    2015 WL 848868 (N.D. Cal. Feb. 25, 2015),

    *aff'd* 854 F.3d 1088 (9th Cir. 2017) ....................................... 22, 33, 35

*Kwikset Corp. v. Super. Ct.*,

    51 Cal. 4th 310 (2011)................................................................... 18, 19

*Lanovas v. Twinings N. Am., Inc.*,

    2014 WL 46822 (N.D. Cal. Jan. 6, 2014) ........................................... 23

*Lavie v. Procter & Gamble Co.*,

    105 Cal. App. 4th 496 (2003).............................................................. 23

*Luong v. Subaru of America, Inc.*,

    2018 WL 2047646 (N.D. Cal. May 2, 2018). ..................................... 49

*Mayfield v. United States*,

    599 F.3d 964 (9th Cir. 2010).............................................................. 44

*McCrary v. Elations Co., LLC*,

    2013 WL 6402217 (C.D. Cal. Apr. 24, 2013)......................... 39, 41, 42

*Mezzadri v. Med. Depot, Inc.*,

    2016 WL 5107163 (S.D. Cal. May 12, 2016) ..................................... 42

*Mullins v. Direct Digital, LLC*,

    2014 U.S. Dist. LEXIS 155018 (N.D. Ill. Sept. 30, 2014)................... 17

*Nagel v. Twin Laboratories, Inc.*

    109 Cal.App.4th 39 (2003).................................................................. 23

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms., Inc.*,

    107 Cal. App. 4th 1336 (2003)........................................... 3, 22, 32, 34

*NuCal Foods, Inc. v. Quality Egg LLC*,

    918 F. Supp. 2d 1023 (E.D. Cal. 2013) .............................................. 42

*O'Shea v. Littleton*,

    414 U.S. 488 (1974) ........................................................................................ 44

*Pac. Gas & Elec. Co. v. Super. Ct.*,

    24 Cal. App. 5th 1150 (2018) ........................................................................ 50

*Padilla v. Costco Wholesale Corp.*,

    2013 WL 195769 (N.D. Ill. Jan. 16, 2013) .............................................. 24, 29

*People v. Wahl*

    100 P.2d 550 (1940) ...................................................................................... 23

*Resort Car Rental System, Inc. v. Federal Trade Com.*,

    518 F.2d 962 (9th Cir.1975) .......................................................................... 24

*Ries v. Arizona Beverages USA LLC*,

    2013 WL 1287416 (N.D. Cal. Mar. 28, 2013) ...................................23, 27, 37

*Rikos v. Procter & Gamble Co.*,

    799 F.3d 497 (6th Cir. 2015) ............................................................... 2, 17, 40

*Rodarte v. Philip Morris, Inc.*,

    2003 WL 23341208 (C.D. Cal. Jun. 23, 2003) ............................................. 41

*Rogers v. Lyft, Inc.*,

    2020 WL 1684151, at *9 (N.D. Cal. Apr. 7, 2020)..................................46, 47

*Scheuerman v. Nestle Healthcare Nutrition, Inc.*,

    2012 WL 2916827 (D.N.J. Jul. 17, 2012) ...........................................22, 24, 29, 33

*Shanks v. Jarrow Formulas, Inc.*,

    2019 WL 7905745 (C.D. Cal. Dec. 27, 2019) .....................................37, 38, 45

*Slayman v. FedEx Ground Package Sys., Inc.*,

    765 F.3d 1033 (9th Cir. 2014).......................................................................44

*Smith v. Keurig Green Mountain, Inc.,*

    393 F. Supp. 3d 837 (N.D. Cal. 2019) ........................................................... 41

ix

*Sonner v. Premier Nutrition Corp.*,
    --- F.3d ---, 2020 WL 4882896
    (9th Cir. Jun. 17, 2020, as amended Aug. 20, 2020)............................ 4, 18, 48, 49

*Stanley v. Bayer Healthcare LLC*,
    2012 WL 1132920 (S.D. Cal. Apr. 3, 2012) ................................................*passim*

*Torres v. Nutrisystem, Inc.*,
    289 F.R.D. 587 (C.D. Cal. Apr. 8, 2013) .............................................................. 45

*Townsend v. Monster Beverage Corp.*,
    303 F. Supp. 3d 1010 (C.D. Cal. 2018)................................................................ 36

*Warth v. Seldin*,
    422 U.S. 490 (1975) ............................................................................................. 47

*Williams v. Gerber Products Co.*,
    552 F.3d 934 (9th Cir. 2008)................................................................................ 24

*Williams v. Union Carbide Corp.*,
    17 A.D.2d 661, 230 N.Y.S.2d 478 (1962) .......................................................... 44

*Yamagata v. Reckitt Benckiser LLC*,
    445 F.Supp.3d 28 (N.D. Cal. Mar. 30, 2020)...................................................... 40

*Zakaria v. Gerber Prods. Co.*,
    2017 WL 9512587 (C.D. Cal. Aug. 9, 2017),
    *aff'd* 755 F. App'x 623 (9th Cir. 2018) ................................................... 18, 36, 37

*Zakaria v. Gerber Prods. Co.*,
    755 F. App'x 623 (9th Cir. 2018)........................................................................ 38

**Statutes**

21 U.S.C. § 343(r)(1)..................................................................................................... 35

21 U.S.C. § 343-1(a)(5) ................................................................................................. 35

x

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
JOINT MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE PARTIES'
MOTION(S) FOR SUMMARY JUDGMENT

Cal. Bus. & Prof. Code § 17204 ................................................................. 18

Cal. Bus. & Prof. Code § 17535 ................................................................. 18

Cal. Civ. Code § 1780 ............................................................................... 18

Cal. Civ. Code § 3294 ............................................................................... 49

Cal. Com. Code § 2714(2)......................................................................... 36

U.C.C. § 2–314 ......................................................................................... 43

U.C.C. § 2–315 ......................................................................................... 43

**Rules**

Fed. R. Civ. P. 56...................................................................................... 1

**Other Authorities**

Guidance For Industry: Substantiation For Dietary Supplement Claims Made Under

    Section 403(r)(6) of the Federal Food, Drug, And Cosmetic Act, 2008 WL

    10889843 ............................................................................................ 34

xi

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
JOINT MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE PARTIES'
MOTION(S) FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, and the Court's Order Re: Summary Judgment Motions (Dkt. No. 24) and Order Re Further Proceedings (Dkt. No. 49), Plaintiff Cynthia Ford ("Plaintiff") and Defendant Sports Research Corporation ("Sports Research," "SR," or "Defendant") respectfully submit the following Memorandum of Points and Authorities in support of, and in opposition to, (1) Plaintiff's Motion for Summary Judgment or, in the Alternative, Summary Adjudication; and (2) Defendant Sports Research's Motion for Summary Judgment.

## I.    PLAINTIFF'S INTRODUCTION

**Plaintiff's Motion for Summary Judgment ("MSJ") Should Be Granted:** This is a straightforward consumer fraud class action. Defendant advertises that its Sports Research Garcinia Cambogia product (the "Product") "supports appetite control" and "weight management," and such claims convey a misleading weight-loss message. This motion is directed to the most basic factual issue in the case: does garcinia cambogia provide any of the benefits advertised on the Product's label? The answer is a resounding "no" – to the contrary, the evidence shows this ingredient is nothing more than a placebo.

The parties have engaged in substantial discovery, including written interrogatories, document production, depositions, and hiring of experts. Plaintiff's expert, Dr. David B. Allison, who has over 25 years of experience in the obesity and weight-related field, has opined that the scientific consensus of experts in the field is that garcinia cambogia does not provide appetite control, weight management, or weight loss benefits. Defendant has not rebutted this evidence. Defendant's rebuttal expert, Dr. Douglas Kalman admitted that "there is no magic pill for weight loss" and refused to testify during his deposition as to the benefits of garcinia cambogia on its own.

Not only do the undisputed material facts show that, as a matter of law, Defendant falsely advertised the Product its efficacy, Plaintiff is also entitled to summary judgment regarding liability and damages. Because the Product does not confer the benefits it promises, the full refund model is the appropriate measure of damages in this case.

**Defendant's MSJ Should Be Denied:** To prevail on an MSJ, a defendant must

1

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
JOINT MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE PARTIES'
MOTION(S) FOR SUMMARY JUDGMENT

show there is no genuine dispute as to any material facts at issue. Defendant has failed at this showing as is amply demonstrated through Plaintiff's citations to clear evidence disputing or flatly contradicting the purported facts Defendant relies on for its Motion.

Defendant's argument that Plaintiff "did not rely" on the contested labeling statements ("CLSs") is flatly contradicted by Plaintiff's deposition testimony. Defendant's additional argument that Plaintiff has not offered evidence showing that the CLSs were deceptive to a significant portion of the population or caused any injury or harm is flawed. The CLSs are not subject to subjective interpretation – they clearly state that those who consume the Product will actually receive the promised benefits. Defendant's "lack of substantiation" argument also fails because Plaintiff has presented evidence that the CLSs are provably false and misleading.

Defendant also argues that the class is not entitled to a full refund of the Product's purchase price because consumers might have purchased the Product for additional reasons. But if the Product does not provide the promised benefits, then purchasers did not receive what they thought they were buying. Under such circumstances, a full refund is appropriate. *Rikos v. P&G*, 799 F.3d 497, 523-24 (6th Cir. 2015). The remainder of Defendant's arguments are similarly meritless. Defendant's Motion must be denied.

## II.   DEFENDANT'S INTRODUCTION

Plaintiff Cynthia Ford ("Plaintiff" or "Ford") accuses defendant Sports Research Corporation ("SR") of engaging in false and deceptive advertising that leads consumers to think they will lose weight by using SR's Product, based on certain contested label statements ("CLS(s)"), namely, (i) that garcinia cambogia extract ("GCE") has been "studied for its potential to suppress appetite," (ii) that the Product "Supports Appetite Control," and (iii) "Along with diet and exercise, Garcinia Cambogia is a great way to support your overall weight management plan."[1]  (UF D128, SAC, ¶¶ 22-27.)

---

[1] The "Product" refers to a dietary supplement SR developed, which contains GCE standardized to 65% hydroxycitric acid ("HCA") and organic coconut oil in a softgel. (Uncontroverted Fact ("UF") D111; SAC, ¶¶ 13, 16, 21, 22; Exh. C, Pedersen Decl., EA_635, ¶¶ 3-4.)

2

*Capaci v. Sports Research, Inc.,* No. 2:19-cv-03440-FMO-FFM
JOINT MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE PARTIES'
MOTION(S) FOR SUMMARY JUDGMENT

1      Plaintiff has produced *no evidence* that she relied on the CLSs in purchasing the

2   Product, which is detrimental to her consumer protection, breach of express warranty,

3   and negligent misrepresentation claims.  Plaintiff has also failed to offer *any evidence*

4   that the CLSs were deceptive to a significant portion of the target audience, caused any

5   injury or harm, or posed any risk of future injury.  Plaintiff has not conducted any

6   consumer survey or adduced any other extrinsic evidence to prove that the CLSs lead

7   consumers to think they would lose weight.  Indeed, not even Ford was led to believe

8   that—*she did not purchase the Product for weight loss* but rather to maintain her current

9   healthy weight.  (UF D129, D139, Exh. B1, Ford Dep., EA_353 [12:10-11, 12:22-23],

10  EA_363 [37:1-6].)

11      To prevail on her California consumer protection claims, Plaintiff must establish

12  that the CLSs have been scientifically disproven.  *Johns v. Bayer*, 2013 WL 1498965, at

13  *33-47 (S.D. Cal. Apr. 10, 2013).  Yet, Plaintiff's scientific expert Dr. David B. Allison

14  admitted that not one of the scientific studies he relied on met his own criteria to

15  determine the efficacy of a product, as the studies were "*not probative*" for determining

16  the SR Product's efficacy.  (UF D145-147, Exh. A-1, Allison Rpt., EA_022 [p. 16, ¶¶ 50-

17  51]; Exh. B2, Allison Dep., EA_374 [85:18-20].)  Further, the studies Plaintiff relied on

18  addressed GCE's efficacy for weight loss in obese or overweight subjects (UF D135,

19  SAC, ¶¶ 28-42), even though "weight loss" is not mentioned on the label (UF D136, SAC,

20  ¶20, pp. 7-9) and even though Ford purchased the Product to maintain a healthy weight

21  (UF D139, Exh. B1, EA_363 [37:1-6]).  The "mismatch between the representations at

22  issue and the evidence that allegedly debunks them" is fatal to Plaintiff's claims.  *Eckler*

23  *v. Wal-Mart Stores, Inc.*, 2012 WL 5382218, at *7 (S.D. Cal. Nov. 1, 2012).

24      Further, Plaintiff impermissibly seeks to shift the burden to SR to substantiate its

25  claims, which is not cognizable under California law.  *Nat'l Council Against Health*

26  *Fraud, Inc. v. King Bio Pharms., Inc.*, 107 Cal. App. 4th 1336, 1345-48 (2003).

27      Plaintiff's damages expert Charlene L. Podlipna ("Podlipna") also produced *no*

28  *evidence at all* of any damages and failed to put forth a damages model that was tied to

3

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
JOINT MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE PARTIES'
MOTION(S) FOR SUMMARY JUDGMENT

SR's alleged liability in this case.  (UF D186, Exh. B7, Podlipna Dep., EA_479-480, 90:23-91:3.)  While damages must be tied to the Product's value and hence marketplace data, Podlipna admitted she did not analyze the value of the product, any marketplace data, any competitor products, or even consider the named plaintiff's testimony.  (*E.g.*, UF D187-198, Exh. B7, EA_473 [35:20-24], EA_476-479 [47:3-6, 55:18-22, 84:13-17, 90:1-6], EA_481-491 [108:20-23, 109:16-110:4, 110:21-111:17, 116:25-117:2, 156:25-157:2, 158:24-159:4, 161:19-23].)   In fact, Podlipna conceded that she had ***no marketplace data*** to refute SR's damages expert Dr. Daniel Werner's finding that there is "no evidence consumers have been economically harmed by the [CLSs]."  (UF 199-200, Exh. B8, Werner Rpt., EA_503 [p. 6, ¶ 10]; Exh. B7, EA_487 [156:10-15].)

Plaintiff's injunctive relief claim also fails because it is moot and she lacks standing.  Plaintiff seeks to remove the CLSs from the Product, but the CLSs were permanently removed from the Product as of January 2020.  (UF D202; Exh. C, EA_636, ¶ 12.)  Ford testified she would consider purchasing the Product again at the same price, absent the CLSs and without reformulation, for liver benefits, and she can purchase it again today.  (UF D179; Exh. B1, EA_364 [49:3-18].)  Plaintiff also lacks standing for public injunctive relief.

Plaintiff cannot invoke the equitable jurisdiction of the Court, as she failed to allege an inadequate legal remedy and seeks the same amount of monetary relief as actual damages.  *Sonner v. Premier Nutrition Corp.*, --- F.3d ---, 2020 WL 4882896 (9th Cir. Jun. 17, 2020, as amended Aug. 20, 2020).  In addition to Plaintiff's failure to establish reliance, the Product's disclaimer language negates any express warranty.  (UF D137, SAC, ¶ 20, p. 8.)  Her breach of implied warranty claim fails as she has no vertical contractual privity with SR—Ford purchased the Product at a Vitamin Shoppe store.  (UF D112, D123, SAC, ¶¶ 10, 14, 15, 56; Exh. C, EA_636, ¶ 8.)

Finally, Plaintiff cannot establish entitlement to punitive damages because she has failed to put forth ***any evidence*** of wrongdoing by SR's officers and directors.

For these reasons and as will be discussed below, SR requests that the Court grant

4

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
JOINT MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE PARTIES'
MOTION(S) FOR SUMMARY JUDGMENT

1   its Motion for Summary Judgment and dismiss Plaintiff's claims with prejudice.

2   **III.   STATEMENT OF FACTS**

3       **A.   Plaintiff's Statement of Facts**

4       Plaintiffs' Second Amended Complaint concerns the Product's false and

5   misleading "Appetite Control" and "Weight Management" claims, which convey a

6   misleading "weight loss" message. *See* Dkt. No. 44 ("SAC"). These claims are false and

7   misleading because the Product's only 'active' ingredients are incapable of providing any

8   appetite control, weight management, or weight-loss benefits. SAC ¶¶ 26-45.

9       On July 10, 2020, Defendant took the deposition of Plaintiff Ford. *See* Ex. E-1 at

10   EA_791 [Ford Dep.]. During her deposition, Plaintiff Ford testified, "I did not get the

11   results that were advertised on the bottle when I purchased it in January and February of

12   2018. And what I bought it for was weight management and appetite suppressant." *See*

13   *id*. at EA_793 [Ford Dep. at 12:20-23].

14       On January 24, 2020, Plaintiff produced the expert report of Dr. David B. Allison.

15   *See* Ex. A-1, EA_6-39 (Allison Rpt.). Dr. Allison has over 25 years of experience in the

16   weight-related field and is an expert on the topics of weight loss, weight management,

17   and appetite control. *See* Ex. A-3, EA_62-63 (Allison Dep. at 27:2-9; 136:7-12). In his

18   report, Dr. Allison considered the totality of scientific evidence available, including

19   systematic reviews, meta-analyses, and randomized controlled trials ("RCTs"), and

20   concluded that "[t]he overwhelming majority of opinion of people writing in the scientific

21   literature was that the scientific literature shows that garcinia cambogia-containing

22   products are not effective, not clinically meaningfully effective, for weight loss or weight

23   management." (UF Nos. P3, P4; Ex. A-3, EA_66 (Allison Dep. at 244:10-15)). Dr.

24   Allison also cited to studies contradicting the Product's "supports appetite control"

25   labeling claim. (UF No. P5; Ex. A-1, EA_23, 27 (Allison Rpt. ¶¶ 55, 58)).

26       Defendant submitted the rebuttal expert report of Dr. Douglas Kalman to rebut Dr.

27   Allison's opinions regarding the effectiveness of garcinia cambogia. *See* Ex. A-2, EA_40-

28   59 (Kalman Rpt.). In his report, Dr. Kalman did not attempt to rebut the opinions of Dr.

5

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
JOINT MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE PARTIES'
MOTION(S) FOR SUMMARY JUDGMENT

Allison regarding garcinia cambogia as an ineffective aid in weight loss, and instead maintained that the Product does not suggest weight loss benefits. *See* Ex. A-2, EA_51-52 (Kalman Rpt. ¶ 23(a)). During his deposition, Dr. Kalman did not answer whether garcinia cambogia was an effective aid in weight management, and instead stated that garcinia cambogia "can" or "might" be effective if used in conjunction with diet and exercise. *See* Ex. A-4, EA_78-79 (Kalman Dep. at 94:9-16; 99:10 – 100:13). The studies cited by Dr. Kalman in his report as supportive of the Product's claims also do not support the CLSs or expressly contradict such claims. *See* Ex. A-2, EA_40-59 (Kalman Rpt.). Defendant failed to rebut Plaintiff's evidence showing that the Product's labeling claims are false and misleading. Accordingly, Plaintiff is entitled to summary judgment.

### B.    Defendant's Statement of Facts

On April 26, 2019, Frank Capaci filed the instant putative class action lawsuit against SR. (UF D113, Dkt. No. 1.) On July 15, 2020, the Court dismissed Capaci and his individual claims. (UF D114, Dkt. No. 51.) On June 17, 2019, Ford was added as a named plaintiff in the FAC. (UF D115, Dkt. No. 16.) On April 6, 2020, Plaintiff filed the SAC (UF D116, Dkt. No. 44). The SAC alleged that (i) Ford purchased the Product at a Vitamin Shoppe store in Long Beach, California "around January 2018" (UF D123, SAC, ¶ 10), (ii) Ford sought "an effective supplement that aids in weight loss" (UF D124, SAC, ¶ 59), (iii) the Product label "indicates that the Product helps reduce belly fat and achieve weight loss" (UF D125, SAC, ¶ 73), and (iv) Ford "relied on the [CLSs] in deciding to purchase the Product" (UF 126-127, SAC, ¶¶ 10, 57, 60).

Plaintiff fails to provide any evidentiary support for these allegations against SR.

## IV.    ARGUMENT – WHETHER PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT OR SUMMARY ADJUDICATION

### A.    Plaintiff's Position: Garcinia Cambogia Does Not Provide Weight Management or Weight Loss Benefits

#### 1.    *Defendant's Advertising Misleadingly Implies Weight Loss Benefits*

According to Defendant, reasonable consumers could not interpret the Product's

6

*Capaci v. Sports Research, Inc.,* No. 2:19-cv-03440-FMO-FFM
JOINT MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE PARTIES'
MOTION(S) FOR SUMMARY JUDGMENT

"appetite control" and "weight management" claims to mean that the Product will provide weight loss benefits. Defendant's scientific expert, Dr. Kalman, opined that "the product label never suggests that the product leads to weight loss" and "[t]he product has no direct or implied claims regarding weight loss." *See* Ex. A-2, EA_51-57 (Kalman Rpt. ¶ 23(a), p. 16). But Dr. Kalman also admitted that "weight management" includes weight loss. UF No. P57; Ex. A-4, EA_79 (Kalman Dep. at 98:16-24); Ex. A-2, EA_49 (Kalman Rpt. ¶ 19(a). And as this Court rightly pointed out, "[b]y combining the terms 'weight management' and 'appetite control,' defendant appears to convey an implicit message to consumers that the Product will support weight loss…"). *See* Dkt. No. 42 (Order on MTD FAC, at n. 3). While the Product at least implicitly claims to provide weight loss benefits, the Product provides no such benefits. (UF Nos. P3-P7; Ex. A-1 (Allison Rpt.)).

## 2.   *The Totality of Scientific Evidence Demonstrates that the Weight Management and Weight Loss Claims Are False and Misleading*

### i.   *Systematic Reviews and Meta-Analyses Prove that GCE Does Not Provide Weight Management or Weight Loss Benefits*

In his report, Dr. Allison cited to systematic reviews and meta-analyses to determine whether garcinia cambogia could provide weight loss or weight management benefits. Dr. Allison cited to Haber et al. (2018), who conducted a systematic review of the available evidence and concluded "use of G. cambogia for weight loss is not recommended." (UF No. P8; Ex. A-1, EA_23 (Allison Rpt. ¶ 54); Ex. A-5, EA_90-96 (Haber)). Dr. Allison also cited Astell *et al*. (2013) who concluded "'the evidence is not convincing in demonstrating that most dietary supplements used as appetite suppressants for weight loss in the treatment of obesity are effective…'" (UF No. P12, P13; Ex. A-1, EA_23 (Allison Rpt. ¶ 55); Ex. A-6, EA_97-108 (Astell)). Dr. Allison analyzed Onakpoya et al. (2011), a meta-analysis that found a barely statistically significant effect of garcinia cambogia on weight loss. (UF No. P76, P77; Ex. A-1, EA_24-26 (Allison Rpt. ¶¶ 56-57); Ex. A-7, EA_109-118 (Onakpoya)). Onakpoya et al. cautioned that "the results [of the meta-analysis] be interpreted cautiously" and stated "the magnitude of the effect

7

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
JOINT MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE PARTIES'
MOTION(S) FOR SUMMARY JUDGMENT

1    is small, is no longer statistically significant when rigorous RCTs are considered, and its
2    clinical relevance seems questionable." (UF Nos. P78, P79; Ex. A-2, EA_56 (Kalman
3    Rpt. ¶ 28(b)(6)); Ex. A-3, EA_64 (Allison Dep. at 222:6-11); Ex. A-6, EA_116
4    (Onakpoya)). Dr. Allison also produced a January 2020 meta-analysis in response to
5    Defendant's Document Requests. (UF Nos. P17; P18; Ex. A-8, EA_119-132 (Maunder)).
6    Maunder et al. evaluated relevant studies of garcinia cambogia and concluded GCE
7    produced a "non-significant effect on weight" compared to placebo. (UF No. P19; *Id.*)

8                    ii.   *Randomized Controlled Trials Prove that Garcinia Cambogia*
9                          *Does Not Provide Weight Management or Weight Loss Benefits*

10        Dr. Allison also cited to RCTs that "found no statistically significant effects of
11   garcinia Cambogia." (Ex. A-1, EA_26-27 (Allison Rpt. ¶ 58)). For example, Heymsfield
12   et al. (1998), found that "Garcinia cambogia failed to produce significant weight loss …
13   beyond that observed with placebo" and "do[es] not support a role … as a facilitator of
14   weight loss." (UF No. P23; Ex. A-1, EA_26-27 (Allison Rpt. ¶ 58); Ex. A-9, EA_133-
15   138 (Heymsfield)). Hayamizu et al., 2003 "also found no statistically significant evidence
16   of an effect on BMI or body weight." (UF No. P27; Ex. A-1, EA_27 (Allison Rpt. ¶ 58);
17   Ex. A-10, EA_139-156 (Hayamizu)). Dr. Allison also referenced the studies cited in
18   Plaintiff's Complaint that similarly found no statistically significant effects of GCE. (Ex.
19   A-1, EA_27 (Allison Rpt. ¶ 58)). For instance, Kim et al. found "no significant difference
20   in weight-loss between HCE and placebo supplementation." (UF No. P31; Ex. A-11,
21   EA_157-168 (Kim)). Kim et al. concluded "GCE supplementation failed to promote
22   weight-loss" and "was not effective in promoting weight-loss." (UF Nos. P32, P33; *id.*;
23   Ex. A-3, EA_70 (Allison Dep. at 262:16 – 263:1)). And Yonei *et al.* found that "[GCE]
24   did not show dietary efficiency." (UF No. P37; Ex. A-12, EA_169-184 (Yonei)); Ex. A-
25   3, EA_69 (Allison Dep. at 261:12-25)).

26                   iii.  *Scientific Experts Agree that Garcinia Cambogia Does Not*
27                         *Provide Weight Management or Weight Loss Benefits*

28        Dr. Allison also noted the consensus in the scientific community is that HCA does

not provide weight management or weight loss benefits. For example, "After an overview of the literature, Barrea et al. (2019) concluded 'Garcinia cambogia did not significantly affect body weight or body fat'" and "Ríos-Hoyo and Gutiérrez-Salmeán (2016) stated 'Given the aforementioned findings, little evidence exists to support the long-term effectiveness of G. cambogia on weight management.'" (UF Nos. P41; P45; Ex. A-1, EA_28 (Allison Rpt. ¶ 61); Ex. A-13, EA_185-203 (Barrea); Ex. A-14, EA_204-213 (Ríos-Hoyo)). Dr Allison further noted, "Marquez *et al*. (2012) wrote 'there is still little evidence to support the potential effectiveness and long-term benefits of G. cambogia extracts.'" (UF No. P49; *Id*. at Allison Rpt. ¶ 61; Ex. A-15, EA_214-225 (Marquez).

> ### iv. *The NIH Agrees that Garcinia Cambogia Does Not Provide Weight Management or Weight Loss Benefits*

The National Institutes of Health's (NIH's) Office of Dietary Supplements likewise negates the CLSs. (UF No. P53; Ex. A-16, EA_226-294 (NIH webpage); Ex. A-1, EA_27-28 (Allison Rpt. ¶ 61) ("[NIH] concluded 'Research findings: Little to no effect on body weight.'")). As detailed above, substantial evidence exists that the Product does not do what Defendant claims in its advertising. Defendant's position is unsupported by any cited source, reputable or otherwise, and in fact, is emphatically contradicted by the scientific consensus -- and the NIH.

### 3. *Defendant's Expert Fails to Rebut Plaintiff's Position*

> #### i. *Dr. Kalman Does Not Opine that Garcinia Cambogia is Effective*

According to Dr. Kalman, garcinia cambogia can (1) help an individual lose weight; (2) help an individual maintain weight; *and* (3) help an individual gain weight. (UF No. P57; Ex. A-4 (Kalman Dep. at 98:16-24); Ex. A-2, EA_49 (Kalman Rpt. ¶ 19(a))). Dr. Kalman provides no support for this illogical conclusion, stating only that diet and exercise would be necessary in each of the scenarios. During his deposition, Dr. Kalman did not state any opinions relating specifically to garcinia cambogia, and instead repeatedly stated that garcinia cambogia "can" be effective or "might" be effective – as long as it is used in conjunction with diet and exercise. (UF Nos. P2, P3; Ex. A-4, EA_78

1    (Kalman Dep. at 94:9-16); Ex. A-4, EA_79 (Kalman Dep. at 99:10 – 100:13)).

2        When asked about the effectiveness of garcinia cambogia on its own, Dr. Kalman

3    testified that such questions were "too hypothetical for reality." For example, while Dr.

4    Kalman opines that weight management includes weight gain, Dr. Kalman testified that

5    if consumers wanted to gain weight as part of their weight management plan, they would

6    have to increase their caloric intake. *See* Ex. A-4, EA_80 (Kalman Dep. at 103:2-11).

7    When asked whether garcinia cambogia could help an individual gain weight without

8    increasing caloric intake, Dr. Kalman testified "I can't make that hypothetical leap … if

9    they don't control for diet or if they don't control for exercise will it still have the desired

10   results, that's too hypothetical for reality. Ex. A-4, EA_80 (Kalman Dep. at 103:12-20).[2]

11       Defendant's *own expert* refused to testify that garcinia cambogia could provide the

12   Product's touted benefits. As such, Plaintiff is entitled to summary judgment.

13              *ii.  Dr. Kalman Admits "There Is No Magic Pill For Weight Loss"*

14       When asked to separate diet and exercise from the equation and consider whether

15   garcinia cambogia provides any benefits on its own, Dr. Kalman admitted that "there is

16   no magic pill for weight loss." (UF No. P59; Ex. A-4, EA_79 (Kalman Dep. at 100:23 –

17   101:14)). Dr. Kalman also testified that garcinia cambogia would *not* help some

18   consumers with their weight management goals. (UF No. P61; Ex. A-4, EA_78 (Kalman

19   Dep. at 94:21 – 95:9 ["Q: If consumers did not diet and exercise but they did take Garcinia

20   Cambogia, is it your opinion that the – that that would or would not support their overall

21   weight management goal? … A: It's too hard to say because it's hypothetical. I would

22

23   _____

     [2] *See also* Ex. A-4, EA_79 (Kalman Dep. at 100:14 – 101:2 ["Q: Is it your opinion that

24   Garcinia Cambogia is not effective if it's not used along with diet and exercise? … A: So

     if [a] person were just to take Garcinia Cambogia but not look to improve their diet and/or

25   physical activity, I would say that they're missing the boat. So I wouldn't even comment

     on that. It's hypothetical."]); *see also* Ex. A-4, EA_83 (Kalman Dep. at 126:14 – 127:4

26   ["Q: Is it your opinion that if the phrase 'along with diet and exercise' wasn't a part of

     the Sports Research label, it would be misleading and false? [objection omitted] A:

27   Again, that's a hypothetical. I can't say what it would mean or what the impression would

     mean…"]). Dr. Kalman failed to opine on the function of garcinia cambogia by itself.

28   (UF No. P58; Ex. A-4 (Kalman Dep. at 103:12-20)).

*Capaci v. Sports Research, Inc.,* No. 2:19-cv-03440-FMO-FFM
JOINT MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE PARTIES'
MOTION(S) FOR SUMMARY JUDGMENT

say analogous to anything in life, for some, yes, for some, no.").

### iii. The Studies Cited By Dr. Kalman Do Not Support His Conclusions

Dr. Kalman cites to four studies: (1) Ramos; (2) Lu; (3) Kovacs; and (4) Onakpoya as supportive of the labeling claim "along with diet and exercise, garcinia cambogia is a great way to support your overall weight management plan." *See* Ex. A-2, EA_55-56 (Kalman Rpt. ¶ 28(b)). These studies do not rebut Plaintiff's evidence. For example, Dr. Kalman admitted he did not read the Ramos study in its entirety – has never even seen the entire study – and only read the abstract. (UF Nos. P62, P63; Ex. A-4, EA_85 (Kalman Dep. at 140:7-22)). The Ramos paper was not produced in discovery and is unavailable online. (UF No. P64; *Id.*) As such, it is an unreliable source that cannot be properly analyzed. Dr. Kalman also cited to Lu et al. as supportive of the Product's "weight management" claim (Ex. A-2, EA_55 (Kalman Rpt. ¶ 28(b)(2))), but Lu et al. concluded, "the administration of G. cambogia and P. vulgaris extracts over eight weeks in overweight Taiwanese adults without restricting diet and exercise *does not have a significant effect on body weight*, BMI, SMM, BFS, percentage of body fat and blood pressure." (UF No. P66; Ex. A-4, EA_87 (Kalman Dep. at 148:22 – 149:4) (emphasis added); Ex. A-17, EA_295-305 (Lu). This study expressly contradicts the CLSs.

Dr. Kalman also stated that Kovacs et al. "postulated that [garcinia cambogia] may promote weight maintenance." Ex. A-2, EA_56 (Kalman Rpt. ¶ 28(b)(7)). The Kovacs study cited by Dr. Kalman, however, did not actually find that garcinia cambogia promoted weight maintenance – it was just a *hypothesis* that was not tested. (UF No. 71; Ex. A-4, EA_89 (Kalman Dep. at 177:2-16 ["Q: So did the results show that weight maintenance was promoted or was it just a hypothesis? … A: The weight – I may have misspoke. The weight maintenance part would be postulated as a hypothesis."]); Ex. A-18 (Kovacs). Because Kovacs did not even test garcinia cambogia for weight management or weight loss, it does not support the claims on the Product's label.

Dr. Kalman also cited to Onakpoya that "reported a small but significant difference in change in body weight between groups receiving Garcinia Cambogia and placebo."

11

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
JOINT MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE PARTIES'
MOTION(S) FOR SUMMARY JUDGMENT

Ex. A-2, EA_56 (Kalman Rpt. ¶ 28(b)(6)). As discussed above, the results in Onakpoya were barely statistically significant, and the overwhelming majority of scientific evidence contradicts the findings in Onakpoya, including more current meta-analyses. *See* Ex. A-3 (Allison Dep. at 251:1-6 ["A… Moreover, [] the one study, even if it were an ideal study, and even if it did clearly show efficacy, is not enough to be considered competent and reliable evidence to demonstrate something if it is outweighed by larger body studies."]). Defendant has not and cannot rebut the totality of scientific evidence showing that garcinia cambogia is ineffective as a weight maintenance or weight loss aid.[3]

### B.   Defendant's Position: Plaintiff Fails to Prove the Weight Management CLS is False and Misleading.

Plaintiff must demonstrate through evidentiary proof, absent the allegedly false or misleading representation, "[s]he would not have otherwise purchased, or paid a price premium for the product." *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1088 (C.D. Cal. 2015). ***Plaintiff*** bears the burden of proof of coming forward with evidence sufficient to establish that the CLSs are false and misleading. *Stanley v. Bayer Healthcare LLC*, 2012 WL 1132920, at *8 (S.D. Cal. Apr. 3, 2012); *Fraker v. Bayer Corp.*, 2009 WL 5865687, at *8 (E.D. Cal. Oct. 6, 2009). To prevail at trial, Plaintiff must prove the ***SR Product***, not just GCE in a vacuum, does not provide weight management support benefits in conjunction with diet and exercise. Plaintiff argues that the Court must look at the advertising "as a whole" in determining whether it is deceptive. SR's expert Dr. Kalman does exactly that—he reviewed the full claim regarding all words in the CLS, including that the Product should be used in conjunction with diet and exercise—and Plaintiff faults him for not providing an incomplete analysis of the ***actual*** label claim. Plaintiff has not and cannot produce any evidence that the CLSs are false and misleading. Thus, no "genuine issue of material fact" exists as to the truth of the

---

[3] Despite its litigation position, Defendant stopped releasing Product labels into the market with the "weight management" claim in December 2019. *See* Dkt. No. 57-3, at EA_737-738 (Pederson Decl. re. MCC, at ¶ 39). This remedial conduct is consistent with Plaintiff's allegations that the contested labeling claims are false and misleading.

12

1    CLS and Plaintiff's Motion for Summary Judgment ("MSJ") should be denied.

2         As discussed further in SR's MSJ, Section V.A. and V.C., *infra*, Ford did not

3    purchase the Product for weight loss but rather to maintain her current healthy weight.

4    (UF D129, D139, Exh. B1, EA_353 [12:10-11, 12:22-23], EA_363 [37:1-6].)  Plaintiff

5    has submitted no evidence showing Ford or any reasonable consumer interpreted the

6    CLSs to mean weight loss.  Plaintiff failed to submit scientific evidence disproving the

7    CLSs, as the studies she relied on are not probative of the Product's efficacy as to the

8    CLSs.  (P3-5, Exh. A1, EA_022 [¶¶ 50-51], Exh. B2, EA_374 [85:18-20].)  Plaintiff

9    further failed to show that weight management equates to weight loss, as both Dr. Allison

10   and Dr. Kalman agree that weight management has many different meanings.  (*See* P6-7,

11   Exh. D1, EA_645 [30:5-7, 30:11-13], EA_647 [34:23] (it is "not a very precisely defined

12   term,' there is "no…universally accepted meaning of the phrase," and "it could mean

13   other things to individuals at different times."), Exh. A2, EA_049 [¶ 19a] ("Weight

14   management is not synonymous with 'weight loss'.").)  Moreover, absent from her

15   analysis is the most recent 2020 systematic review that concluded that GCE "significantly

16   decreases weight […] compared with the placebo." (P3-4, Exh. D3, EA_766.)

17        Instead, Plaintiff's argument is spent entirely on immaterial evidence regarding

18   GCE's efficacy for weight loss in overweight and obese subjects, which fails to prove the

19   CLSs are false and misleading.  Importantly, Plaintiff does not address the Product's other

20   active ingredient, organic coconut oil, at all.  In the SAC, she alleged coconut oil cannot

21   cause weight loss (SAC, ¶ 45) and previously admitted in briefing that coconut oil is an

22   "active ingredient" in the Product (*see* Dkt. No. 59-1, p. 1), but Plaintiff never mentions

23   coconut oil again or in her MSJ.  As discussed in Section V.C.3., *infra*, Dr. Allison admits

24   he cannot rule out coconut oil's effects on the Product's efficacy, and that none of the

25   studies either he or Plaintiff relied on studied a GCE product that was standardized to

26   65% HCA and combined with organic coconut oil.  (D148-153.)  SR produced evidence

27   that coconut oil increases GCE's absorption and bioavailability. (P3-5, Exh. C, Pedersen

28   Decl., EA_635, ¶ 3; Exh. D2, Kalman Dep., EA_756-757 [210:22-211:10].)   Thus,

Plaintiff fails her burden to prove the weight management claim is false and misleading.

Plaintiff argues that SR removed the CLSs from the Product label because of this case. (*See*, *supra*, p. 16, fn. 2; *infra*, p. 20, fn. 3). This is blatantly false. As discussed in Section V.L., *infra*, because of its brand strength, in 2018, well before this lawsuit was initiated, SR decided to remove label statements from its products company-wide and completed the process by 2020. (UF D202-204, Exh. C, EA_636-637, ¶¶ 10-12.) Significantly, Ford herself testified that SR is a brand with a very good reputation, which is important to her purchasing decisions. (UF D120-121, Exh. B1, EA_356 [19:8-12, 19:17-20], EA_360 [31:23-25].) Ford's brand outlook is supported by the fact that brand name/reputation was among the most chosen purchasing influences on the SR Purchasers, with 39 of 93 (41.9%) selecting it in the Iyengar Survey. (Exh. B9, EA_583, Table 8.) Thus, the claim that SR's decision was "remedial" is not based on any facts in evidence.

## C. Plaintiff's Position: The Evidence Provided in the Case Demonstrates that Garcinia Cambogia Does Not Support Appetite Control

### 1. *There is No Genuine Dispute That Garcinia Cambogia Does Not Support Appetite Control*

In his expert report, Dr. Allison cites authoritative sources showing that garcinia cambogia is ineffective at supporting appetite control. Dr. Allison cited to the study by Mattes & Bormann, which tested garcinia cambogia's effect on food intake and appetitive variables. (UF No. P82; Ex. A-1, EA_27 (Allison Rpt. ¶ 58); Ex. A-19, EA_318-326 (Mattes & Bormann). Mattes et al. concluded there were no effects of HCA on appetite variables and the "study d[id] not support a satiety effect of HCA." (UF Nos. P83, P84; Ex. A-19, EA_319 (Mattes & Bormann)). Dr. Allison also cited to Astell et al. (2013) which "assessed 'the current evidence of commonly available natural supplements used to suppress appetite for obesity control and management in humans…'" (UF No. P86; Ex. A-1, EA_23 (Allison Rpt. ¶ 55); Ex. A-6, EA_97-108 (Astell)). Astell did not judge garcinia cambogia by itself as an effective aid in reducing body weight through appetite suppression. (UF No. P87; *Id*.) The Kim study referenced in Plaintiff's complaint

14

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
Joint Memorandum of Points and Authorities Regarding the Parties'
Motion(s) for Summary Judgment

1  similarly found no difference in energy intake. (UF No. P89; Ex. A-11, EA_157-168
2  (Kim). The scientific evidence confirms that Defendant's claims are false and misleading.

3  ## 2.  *Defendant Fails to Rebut Plaintiff's Evidence*

4  Dr. Kalman analyzed three studies in his rebuttal report that purported to support
5  the Product's appetite control claim: (1) Mattes & Bormann, (2) Mayer, and (3) Anton.
6  (Ex. A-2, EA_48-49 (Kalman Rpt. ¶ 18)). None of the studies cited by Dr. Kalman
7  support the Product's appetite control claim. As discussed above, Mattes & Bormann
8  expressly contradicts the "supports appetite control" labeling claim, as the authors
9  conclude "[n]o effects of the HCA were observed on appetitive variables" and "[t]his
10 study does not support a satiety effect of HCA." (UF Nos. P83, P84; Ex. A-1, EA_28
11 (Allison Rpt. ¶ 58); Ex. A-19, EA_319 (Mattes & Bormann); Ex. A-4, EA_73 (Kalman
12 Dep. at 49:16-22)). The Mayer study did not test garcinia cambogia on its own; it tested
13 a supplement that contained Garcinia Cambogia, L-carnitine, and Ascophyllum
14 Nodosum. (UF Nos. P90, P91; Ex. A-20, EA_327-334 (Mayer study); Ex. A-4, EA_74
15 (Kalman Dep. at 56:5-21)). Mayer et al. did not test garcinia cambogia individually and
16 made no conclusions specific to garcinia cambogia; therefore it cannot support Dr.
17 Kalman's conclusions. (UF Nos. P92-P96; Ex. A-20, EA_327-334 (Mayer study); Ex. A-
18 4, EA_75 (Kalman Dep. at 68:1-14)). Finally, the Anton study was not a study; it was
19 simply a study protocol. (UF No. P101; Ex. A-21, EA_335-345 (Anton study protocol);
20 Ex. A-4, EA_76 (Kalman Dep. at 84:21 – 85:20)). The actual study was terminated and
21 no study results were published. (UF Nos. P102, P103; *see id.*; Ex. A-4, EA_77 (Kalman
22 Dep. at 88:1-9)). The Anton "study" therefore does not support the CLSs.

23 Aside from these three studies, Dr. Kalman provided no other evidence to support
24 the "supports appetite control" labeling claim. (UF No. P107; Ex. A-2 (Kalman Rpt.)).
25 Because none of Defendant's evidence rebuts Plaintiff's evidence, summary judgment
26 must be entered in Plaintiff's favor.[4]

27

28 _____

[4] Defendant stopped releasing Product labels into the market with the "supports appetite control" claims in October 2018. *See* Dkt. No. 57-3, EA_737-738 (Pederson Decl. re.

15

**D.     Defendant's Position:  Plaintiff Fails to Prove the Appetite Control CLSs are False and Misleading.**

Plaintiff fails to show how her cited studies prove the "Supports Appetite Control" CLS is false and misleading and failed to provide evidence of consumer deception regarding this CLS.  Dr. Allison testified he did not analyze appetite control in this case. (UF D166; Exh. B2, EA_384, 149:15-24.)  The authors of Mattes study conceded "the concurrent dietary restriction could have hampered induction of HCA's satiety effects." (Exh. A-19, EA_325.)  Dr. Allison also testified the Astell was not specific to GCE, as 9 out of the 14 studies did not involve GCE.  (UF D157, Exh. B2, EA_392-393 [216:18-217:13].)  The Kim study specifically states the evidence is not settled, noting the Onakpoya study suggests GCE may cause short-term weight loss, and cites to a study that found HCA supplementation "increase[s] the release of serotonin, a neurotransmitter implicated in the regulation of eating behavior and appetite control."  (P31, P36, Exh. A-11, EA_159.)  Plaintiff thereby admits evidence exists supporting the appetite control claim.  Moreover, Dr. Allison testified that people engage in appetite control for various reasons, as some individuals wanting to maintain, rather than reduce, their current body weight would find ways to control their appetite, *i.e.*, engage in "appetite control."  (P5, Exh. D1, EA_646 [31:8-11].)  Thus, she fails to meet her summary judgment burden.

**E.     Plaintiff's Position: Damages Cannot Genuinely Be Disputed**

Plaintiff and Class members are entitled to a full refund of the purchase price of the Product. A full refund for each class member is appropriate because there is no reason to purchase the Product except for its purported benefits. As discussed in detail above, the evidence demonstrates that the Product does not provide the promised benefits, and therefore consumers purchased a product that did not provide any value or worth to the consumer. Under these circumstances, a full refund is the appropriate measure of damages. *Allen v. Hyland's*, 300 F.R.D. 643, 670-71 (C.D. Cal. 2014) (full refund

---

MCC, ¶ 39). This remedial conduct is consistent with Plaintiff's allegations that the CLSs are false and misleading.

16

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
JOINT MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE PARTIES'
MOTION(S) FOR SUMMARY JUDGMENT

damages model appropriate where products' active ingredients were too diluted to be effective); *Farar v. Bayer AG*, 2017 WL 5952876, at *11 (N.D. Cal. 2017) (full refund damages model appropriate where plaintiffs "allege that they purchased defendants' One A Day Products for the touted health claims and received no other benefits from them.").[5]

Damages can be determined by multiplying the average retail price of the Product by the number of units sold. *See Allen v. Similasan Corporation,* 306 F.R.D. 635, 641–42 (S.D. Cal. 2015) ("damages can be calculated in this litigation by multiplying retail prices by the number of units sold."). Here, Plaintiff's damages expert adopted Defendant's average retail price for the 90-count Product and used actual retail sales data of 97% of sales of the 180-count bottle to determine the average retail price of the 180-count Product. *See* Dkt. No. 57-2, at EA_224 – EA_232 (Podlipna Expert Report). Defendant has produced no evidence demonstrating that the average retail price used by Plaintiff's expert is in some way incorrect. Because there is no genuine dispute as to the average retail price, Plaintiff is entitled to summary judgment regarding damages.

## F.   Defendant's Position:  SR Disputes FRM and Damage Calculations.

For a full refund as restitution or actual damages under California law, Plaintiff must **prove** the product is "valueless."  *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 535 (9th Cir. 2016).  Podlipna admits she did not analyze the Product's value, relying on conclusory allegations in Plaintiff's complaint.  As discussed in Section V.F., *infra*, any of Ford's testimony about perceived liver benefits, Dr. Werner's opinion that there is no price premium related to CLSs, and the Iyengar Survey about the Product's consumer demand—is alone sufficient to defeat Podlipna's full refund model ("FRM").

---

[5] *See also Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 523 (6th Cir. 2015) ("Plaintiffs' damages model – a full refund of the purchase price for each class member – satisfies *Comcast*"); *Mullins v. Direct Digital, LLC*, 2014 U.S. Dist. LEXIS 155018, *8-9 (N.D. Ill. Sept. 30, 2014) ("Plaintiff's theory of damages – a full refund and statutory consumer fraud fines – matches his theory of liability – Instaflex does not perform as advertised."), *aff'd*, 795 F.3d 654 (7th Cir. 2015); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 412 (S.D.N.Y. 2015) (granting certification where full refunds were proposed because "[t]his model matches plaintiffs' first theory of liability – that EZ Seed does not grow grass, and is thus valueless").

Plaintiff argues *supra* that just multiplying retail price by the number of units sold would determine damages and SR "has produced no evidence demonstrating the average retail price used by Plaintiff's expert is in some way incorrect." The record shows this is blatantly false. In opposition to Plaintiff's Class Certification Motion, the Declaration of Jeff Pedersen, Jr., provided details as to why Podlipna's calculation inflated actual damages that could be attributable to SR, because (i) the data she used included wholesale data produced by SR, rather than obtaining and analyzing retail data showing sales to actual consumers, and (ii) the data regarding average retail price did not and could not account for discounts, promotions, units returned by customers, expired units, or unsold units of the Product. (Dkt. Nos., 55-5, 59-3, Exh. 25, EA_733-735, ¶¶ 21-27.)

Because Plaintiff did not show the Product's actual market value (*Zakaria v. Gerber Prods. Co.*, 2017 WL 9512587, at *20 (C.D. Cal. Aug. 9, 2017), *aff'd* 755 F. App'x 623 (9th Cir. 2018)) and is not entitled to restitution (*Sonner*, 2020 WL 4882896), she failed to meet her burden and her MSJ should be denied. (*See* Section V.F., *infra*.)

## V.   **WHETHER DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT**

### A.   **Plaintiff Offers No Evidence She Detrimentally Relied on the CLSs.**

Since 2004, standing under the UCL and FAL has been limited to consumers who have "suffered injury in fact and ha[ve] lost money or property **as a result of**" unfair competition or false advertising. *See* Cal. Bus. & Prof. Code §§ 17204, 17535 (emphasis added). Standing under the CLRA is likewise limited to "[a]ny consumer who suffers any damage as a result of the use or employment by any person of [a deceptive business practice]." Cal. Civ. Code § 1780. "The plain import of this is that a plaintiff… must demonstrate some form of economic injury" to have standing to sue under these statutes. *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 326 (2011).

"[A] plaintiff proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate **actual reliance** on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions." *Kwikset*, 51 Cal. 4th at 326-27 (emphasis added). Because

18

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
JOINT MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE PARTIES'
MOTION(S) FOR SUMMARY JUDGMENT

the "reliance" requirement under the California consumer-protection statutes is interpreted the same as in the "ordinary fraud context," a plaintiff must show that "he or she was motivated to act or refrain from action based on the truth or falsity of a defendant's statement, not merely on the fact that it was made." *Id.* at 327 n. 10; *see also id.* at 326 (plaintiff must make "a showing of a causal connection or reliance on the alleged misrepresentation"); *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) (plaintiff must show in absence of alleged misrepresentation, he "in all reasonable probability would not have engaged in the injury-producing conduct"); *NJOY*, 120 F. Supp. 3d at 1088 (plaintiff must demonstrate through evidentiary proof, absent the allegedly false or misleading representation, "[s]he would not have otherwise purchased, or paid a price premium for the product.")); In false labeling cases, the requirement applies to claims under the statute's "unlawful" and "unfair" prongs. *See, e.g.*, *Kwikset*, 51 Cal. 4th at 326 n.9; *Kane v. Chobani*, 973 F. Supp. 2d 1120, 1129 (N.D. Cal. 2014).

A failure to establish reliance also defeats a negligent misrepresentation claim, since it requires a showing of "actual, justifiable reliance on the representations" alleged to be false. *See Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 413 (1992); *Garcia v. Super. Ct.*, 50 Cal. 3d 728, 737 (1990) (plaintiff in negligent misrepresentation case must have "actually and reasonably relied on the alleged misrepresentations").

Plaintiff has presented no evidence that Ford actually read and relied on the CLSs when purchasing the Product, as alleged in the SAC. Rather, Ford saw GCE discussed on Dr. Oz's show, and based on its various benefits, she decided to purchase a GCE Product. (UF D117-118; Exh. B1, EA_354-355 [14:25-15:7].) Ford also conducted hours' worth of online research regarding GCE and found that SR is a brand with a very good reputation, and brand reputation is important to her purchasing decisions. (UF D120-121; Exh. B1, EA_356-357 [19:8-12, 19:17-20, 25:4-17], EA_360 [31:23-25].) When Ford went to the Vitamin Shoppe to purchase a GCE product, she was drawn to the SR Product because "[t]he bottle was really pretty. It just jumped out at you compared to other ones on the shelves." (UF D132, Exh. B1, EA_365 [51:14-24].) A Vitamin

19

Shoppe representative also recommended the SR Product, which is important to Ford—having "a person there when I'm purchasing a product that I can ask directly." (UF D133-134, Exh. B1, EA_365 [51:15-17], EA_358-359 [28:18-29:8].)   To the extent Ford testified about reading the Product label at the time of purchase, it was to confirm that it contained more than 60% HCA, because that was what Dr. Oz recommended.  (UF D119, Exh. B1, EA_361-362 [32:21-33:3].)  Moreover, Ford testified that she could obtain liver benefits from the Product independent of the CLSs, and that she would consider purchasing the Product again *just* for liver benefits at full price.  (UF D122, D179, Exh. B1, EA_354 [14:16-24], EA_364 [49:3-18].)  That Ford would buy the Product at full price for a benefit independent of the CLSs—a benefit espoused by Dr. Oz—further shows she would have otherwise purchased the Product and did not rely on the CLSs.

Thus, Plaintiff cannot show that in all probability she would not have purchased the Product absent the CLSs, as she believes the Product has other benefits for which she is willing to pay full price.

**B.     Plaintiff's Position: Plaintiff Relied On The CLSs**

Defendant argues that the Plaintiff did not rely on any of the false and misleading labeling claims made on Defendant's Product label. But Plaintiff submitted a declaration in support of her Class Certification Motion attesting to the fact that she relied on the CLSs. *See* Dkt. No. 57-2, at EA_250-51 [Ford Decl., ¶ 6 ("When I purchased the Sports Research Garcinia Cambogia Product, I read and relied on the label of the Product. In particular, I recall that the Product label claimed to support appetite control and weight management.")]. Plaintiff also testified at her deposition that she relied on the CLSs prior to purchasing the Product. *See* Ex. E-1 at EA_793 [Ford Dep. at 12:10-14 ("A: Well I bought it for weight management and appetite suppressing. And after two months of not getting that, I did not get the results that I was hoping for which was advertised on the bottle.")]; Ex. E-1 at EA_803-804 [Ford Dep. at 42:23 – 43:1 ("A: …what got my attention, [] was mainly the weight management and suppressing the appetite.")].

Defendant's argument that Plaintiff relied on *The Dr. Oz Show*, online articles, or

the colors of the Product label does not remove the fact that Plaintiff relied on the CLSs. "While a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct, the plaintiff need not demonstrate it was the ***only*** cause. '"It is not ... necessary that [the plaintiff's] reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in influencing his conduct.... It is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision." [Citation.]'" *In re Tobacco II Cases*, (2009) 46 Cal.4th 298, 326, 93 Cal.Rptr.3d 559, 207 P.3d 20 (emphasis added). In other words, it is enough if a plaintiff shows that "in [the] absence [of the misrepresentation] the plaintiff "in all reasonable probability" would not have engaged in the injury-producing conduct.' [Citation.]" *Id*. Here, Plaintiff testified that she reviewed the Product's label before making the purchase. Defendant's advertising led Plaintiff to select the Product, decide to purchase it, and to stand in line to make the purchase. On this reasoning, it is clear that Plaintiff's reliance on the misleading advertisements was a cause – even if not the only cause – of her economic harm.

Defendant also argues that because Plaintiff Ford testified that she would consider purchasing the Product again for liver benefits, it must mean that she would have purchased the Product without the CLSs and did not rely on the CLSs. But Plaintiff Ford testified during her deposition, in no uncertain terms, that she purchased the Product specifically for the advertised appetite control and weight management benefits. *See* Ex. E-1 at EA_793, 803-804 [Ford Dep. at 12:10-14; 42:23 – 43:1]. That Plaintiff Ford is interested in supplements that would provide liver benefits *in the future* does not change her reliance on the Product's false and misleading labeling claims *in the past*. Plaintiff has established reliance and Defendant is not entitled to summary judgment.

## C.    Plaintiff Presents No Evidence That the CLSs are False or Misleading.

### 1.    *Defendant's Position: The Standard for False Advertising Claims.*

To prove a violation of the UCL or CLRA, the plaintiff must establish the challenged advertising claims were actually false or objectively misleading. *Colgan v.*

*Capaci v. Sports Research, Inc.,* No. 2:19-cv-03440-FMO-FFM
Joint Memorandum of Points and Authorities Regarding the Parties'
Motion(s) for Summary Judgment

*Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 682 (2006). A false advertising claim will be dismissed if the plaintiff cannot allege the challenged representations are actually, provably false. *See, e.g., In re GNC Corp.*, 789 F.3d 505, 516 (4th Cir. 2015) (affirming dismissal of false advertising claims under California law where plaintiff did not allege scientific consensus that products were incapable of providing advertised benefits); *Aloudi v. Intramedic Research Grp., LLC*, 2015 WL 4148381, at *3-6 (N.D. Cal. Jul. 9, 2015) (dismissing complaint alleging dietary supplement did not work as advertised where plaintiff failed to allege scientific evidence specifically disproving claimed benefits); *Kwan v. SanMedica Int'l, LLC*, 2015 WL 848868, at *5 (N.D. Cal. Feb. 25, 2015), *aff'd* 854 F.3d 1088 (9th Cir. 2017) (dismissing false advertising claims where plaintiff did not allege "a study exists showing [the represented product] benefits are categorically impossible to achieve").

To avoid summary judgment, a false advertising plaintiff must affirmatively come forward with scientific evidence, available during the class period, that ***disproves*** the challenged advertising claims. *See, e.g., King Bio*, 107 Cal. App. 4th at 1345-1348 (plaintiff bears burden of coming forward with evidence sufficient to "establish[]" the "falsity of the advertising claims"); *Johns*, 2013 1498965, at *40 (granting summary judgment where plaintiffs failed to raise triable issue of fact "in the absence of affirmative scientific evidence available during the Class Period that proves that [the supplement] does not [provide the advertised benefit]"). Evidence suggesting the scientific support underlying the advertising claim is not as strong as Plaintiff claims it should be, is not enough to raise a triable issue of fact. *See Stanley*, 2012 WL 1132920, at *4-11 (granting summary judgment where all plaintiff could show was mixed scientific evidence on effectiveness of supplement, and where plaintiff lacked evidence the challenged claims were "actually false"); *Scheuerman v. Nestle Healthcare Nutrition, Inc.*, 2012 WL 2916827, at *5-9, 11 (D.N.J. Jul. 17, 2012) (same); *Johns*, 1498965, at *40 (same).

To prevail under UCL, FAL, and CLRA deceptiveness claims, a plaintiff must prove the defendant made a false or deceptive statement of material fact likely to deceive

22

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
JOINT MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE PARTIES'
MOTION(S) FOR SUMMARY JUDGMENT

a significant portion of the target audience.  California's standard for deceptiveness is not whether a gullible person might be misled, but rather whether the statement is likely to deceive "'a significant portion of… the targeted consumers, acting reasonably under the circumstances.'"  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)); *see also Haskell v. Time, Inc.*, 965 F. Supp. 1398, 1407 (E.D. Cal. 1997) (anecdotal evidence alone is insufficient to prove that public likely to be misled).

Where the defendant submits unrefuted evidence of "who the reasonable consumer in the target audience is and what drives her in making purchasing decisions… the Court does not need to look to the hypothetical reasonable consumer" and infer reliance. *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 453 (S.D. Cal. 2014); *Ries v. Arizona Beverages USA LLC*, 2013 WL 1287416, at *6-7 (N.D. Cal. Mar. 28, 2013) (granting summary judgment where plaintiff offered no evidence that significant portion of consuming public was likely to be misled by defendant's label claims); *see also Lanovas v. Twinings N. Am., Inc.*, 2014 WL 46822, at *3 (N.D. Cal. Jan. 6, 2014) ("a presumption cannot survive if the evidence establishes an actual lack of reliance").  A plaintiff cannot evade the "'lack of substantiation' bar to recovery" by alleging an advertising claim is ***misleading because it is unsubstantiated***.  *Johns*, 2013 WL 1498965, at *48.

## 2.  *Plaintiff's Position: The Standard For Deceptive Labeling Claims*

The CLRA, FAL, and UCL prohibit "'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'"  *Kasky v. Nike, Inc.,* 27 Cal.4th 939, 951 (2002); *Consumer Advocates v. Echostar Satellite Corp*., 113 Cal.App.4th 1351, 1360 (2003); *Nagel v. Twin Laboratories, Inc*., 109 Cal.App.4th 39, 54 (2003).  In determining whether a statement is misleading under the statute, "the primary evidence in a false advertising case is the advertising itself."  *Brockey v. Moore*, 107 Cal.App.4th 86, 100 (2003).  The "misleading character" of a given representation "appears on applying its words to the facts."  *People v. Wahl*, 39 Cal.App.2d Supp. 771, 774 (1940);

*Resort Car Rental System, Inc. v. Federal Trade Com*., 518 F.2d 962, 964 (9th Cir.1975).

Plaintiff only needs to establish that Defendant's claims are "likely to mislead or deceive the reasonable consumer." *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332 (1998); *Williams v. Gerber Products Co*., 552 F.3d 934, 938 (9th Cir. 2008) (same). Accordingly, Plaintiff prevails by showing that Defendant's CLSs have the capacity, likelihood or tendency to deceive or confuse the public. *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms., Inc*., 107 Cal. App. 4th 1336, 1341 (2003).

### 3. *Defendant's Position: Plaintiff Cannot Prove the CLSs are False.*

Plaintiff has presented no studies, evidence, or expert testimony demonstrating that the represented benefits of the Product "are categorically impossible to achieve," as is her burden. *Engel v. Novex Biotech LLC*, 2015 WL 846777, at * 4 (N.D. Cal. Feb. 25, 2015), *aff'd* 689 Fed. App'x. 510 (9th Cir. 2017). Indeed, Plaintiff's expert Dr. Allison admitted that such scientific studies do not exist. (UF D147, Exh. A-1, EA_022 [¶ 51] ["I first sought evidence from any RCTs [randomized controlled trials] of the specific marketed product in question. *I found none*."] (emphasis added)). This lack of affirmative evidence of falsity is fatal to Plaintiff's case, and SR is entitled to judgment as a matter of law. *See Johns*, 2013 WL 1498965, at * 40; *Padilla v. Costco Wholesale Corp.*, 2013 WL 195769, at *4 (N.D. Ill. Jan. 16, 2013); *Scheuerman*, 2012 WL 2916827, at * 7-9.

**Plaintiff's Studies.** Plaintiff's studies assess GCE's efficacy for weight loss in obese or overweight individuals. (UF D135, SAC, ¶¶ 28-42.) Thus, they are incapable of disproving the CLSs for the simple reason that nowhere on the Product label does SR mention or indicate that the Product causes weight loss or otherwise treat obesity; to the contrary, the Product label expressly disclaims that the Product is intended to diagnose, treat, prevent, or cure any disease. (UF D137, SAC, ¶ 20, p. 8.) Plaintiff fails to show how studies regarding GCE's effectiveness in causing weight loss *disprove* the CLSs at issue related to weight management and appetite control, and thus these studies cannot and do not prove the CLSs are false.

**Dr. Allison's Expert Report and Testimony.** Dr. Allison's failure to identify any

24

*Capaci v. Sports Research, Inc.,* No. 2:19-cv-03440-FMO-FFM
JOINT MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE PARTIES'
MOTION(S) FOR SUMMARY JUDGMENT

affirmative studies or other evidence establishing that the Product's advertised benefits are not possible—and his admission that no such evidence exists—are fatal to Plaintiff's case. *Stanley*, 2012 WL 1132920 (granting summary judgment where all plaintiff could show was mixed scientific evidence on effectiveness of probiotics and no expert stated that challenged were "actually false"). Dr. Allison's concludes in his declaration that the Product is not scientifically proven to cause weight loss. (UF D168, Exh. A-1, EA_028 [¶ 62].) Yet, his cited studies do not match up with his evidentiary criteria for an RCT to be probative of a particular outcome.

*First*, per Dr. Allison's criteria, RCTs cannot be probative for the claims in question unless they are "in humans reasonably representative of those for whom claims of the effects of the products are made or implied." (UF D138; Exh. A1, EA_022 [¶ 50].) Ford testified that she purchased the Product to maintain her current healthy weight, not for weight loss. (UF D139; Exh. B1, EA_363 [37:1-6].) Logically, then, for an RCT regarding the Product to be probative for people of a healthy weight maintaining such healthy weight, the subjects of such RCT must be reflective of consumers like Ford. Indeed, Dr. Allison testified that an RCT to test the proposition that a product will help consumers maintain their healthy body weight "would have to start with people who have a healthy body weight[,]" and that "all other things being equal, if you want to draw conclusions about nonobese people, it would be best if you study nonobese people." (UF D140-141; Exh. B2, EA_386-387 [183:20-184:11], EA_382 [138:16-19].) However, ***not one*** of the studies in the meta-analyses on which Dr. Allison relied studied individuals of a healthy weight; the subjects were overwhelmingly obese and/or overweight. (UF D142-144; Exh. A1, EA_023-24, ¶¶ 54-56; Exh. B2, EA_390-391 [210:25-211:2]; Exh. B3, EA_401; Exh. B4, EA_408-409; Exh. B5, EA_421.)

*Second*, per Dr. Allison's criteria, RCTs cannot be probative for the claims at issue unless they "[u]se the products in question (and not just somewhat related products) at the dose that is in the marketed product." (UF D145-146; Exh. A1, EA_022 [¶ 50]; Exh. B2, EA_374 [85:18-20].) ***None*** of the cited RCTs used the Product. (UF D147; Exh.

25

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
JOINT MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE PARTIES'
MOTION(S) FOR SUMMARY JUDGMENT

A1, EA_022 [¶ 51].)  This is important, as Dr. Allison testified (i) the presence or absence of other ingredients other than GCE in the Product could "conceivably" affect the efficacy of the Product (UF D148; Exh. B2, EA_376, 89:6-14); (ii) some nutrients are better absorbed by the body when combined with fats or lipids, *e.g.*, coconut oil (UF D149; Exh. B2, EA_373, 84:19-22); (iii) he "cannot rule out" that coconut oil's presence in the Product could have any effect on studies' results (UF D150; Exh. B2, EA_377, 92:12-22); (iv) he "cannot rule out" that different delivery mechanisms could potentially affect studies' results (UF D151, Exh. B2, EA_375, 88:7-10); and (v) different GCE brands can "certainly" vary regarding delivery mechanisms (UF D152, Exh. B2, EA_375, 88:3-6). Despite this, ***not one RCT*** referenced by Dr. Allison studied a GCE product that combines 65% HCA and coconut oil in a softgel.  (UF D153; Exh. B3-B5, EA_401-404, EA_410-414, EA_422-423.)

**Third**, per Dr. Allison's criteria, RCTs are not probative for the claims at issue if they do not "[m]easure outcomes about which claims are made with reliable and valid measurement techniques."  (UF D154, Exh. A1, EA_022 [¶ 50].)  Each of Dr. Allison's cited meta-analyses was comprised of RCTs measuring weight loss in obese and overweight subjects.  (UF D142-144.)  Not one RCT studied outcomes related to weight management and appetite control.  (UF D155, Exhs. B3-B5.)  Dr. Allison admitted each meta-analysis on which he relied was ***not probative*** of GCE's efficacy, as (i) the Haber meta-analysis "does not prove […] that there is no effect of garcinia cambogia-containing products on weight loss under any circumstance for any humans"; (ii) 9 of the 14 studies included in the Astell meta-analysis did not involve garcinia cambogia; and (iii) the Onakpoya meta-analysis "does not assess the efficacy of garcinia cambogia per se."  (UF D156-159;  Exh. B2, EA_388-389 [199:14-200:9], EA_392-393 [216:18-217:13], EA_371 [50:3-10, 50:22-25].)

**Finally**, Dr. Allison testified that to opine that a label is false and misleading, "[t]here would need to be a minimum of one randomized controlled trial that met […] a number of factors including both factors having the design and execution and the outcome

itself, of course." (UF D160; Exh. B2, EA_378-379 [96:14-97:2].) As discussed above, ***not one*** RCT referenced by Dr. Allison meets his own criteria.

Dr. Allison also testified that it is important to look at the actual text of the label claim in determining whether it is false or misleading. (UF D161; Exh. B2 EA_381 [134:10-13].) Yet, the CLSs never appear in his report after he quotes them from the complaint. (*See* UF D162; Exh. A1, EA_021 [¶ 49].) Dr. Allison does not recall seeing the words "weight loss," "reduction of weight," or "scientifically proven" on the Product label. (UF D163-165, Exh. B2, EA_385, 174:9-25.) He admitted he did not evaluate appetite control claims for the SR Product. (UF D166; Exh. B2, EA_384, 149:15-24.) Indeed, in his report, the only section that discusses appetite has to do specifically with weight loss and with regard to a product that combined GCE with another natural supplement, not facts applicable here. (UF D167, Exh. A1, EA_023 [¶ 55].)

Despite this, Dr. Allison declared "the claim that Garcinia Cambogia and HCA produce weight loss in humans and that products that contain them, produce weight loss in humans, are refuted by the scientific literature and are false and misleading." (UF D168-169; Exh. A1, EA_028 [¶ 62]; Exh. B2, EA_380 [128:10-13].) As discussed in SR's Motion to Exclude Expert Report and Testimony of Plaintiff's Expert Dr. David B. Allison (*see* Dkt. No. 70), Dr. Allison did not analyze the CLSs and instead copied his analysis from another case. (UF D170; *compare* Exh. A1 with Exh. B6.)

**Plaintiff's Subjective Belief.** Plaintiff's subjective belief that the Product did not provide the advertised benefits is not scientific evidence of falsity or deception and is not sufficient to defeat summary judgment. *Brazil v. Dole Packaged Foods, LLC*, 2014 WL 6901867, at *5 (N.D. Cal. Dec. 8, 2014); *Ries*, 2013 WL 1287416, at *6-7. Dr. Allison testified that Ford's subjective experience with the Product is irrelevant to his analysis of whether the CLSs are false or misleading. (UF D171, Exh. B2, EA_383 [144:4-7].) Plaintiff's subjective belief does not raise a material question of fact as to whether the Product can provide the advertised benefits. *See Franulovic v. Coca-Cola Co.*, 2009 WL 1025541, at *6 (D.N.J. Apr. 16, 2009), *aff'd*, 390 Fed App'x 125 (3d Cir. 2010).

27

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
JOINT MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE PARTIES'
MOTION(S) FOR SUMMARY JUDGMENT

In sum, Plaintiff cannot satisfy her burden of proving falsity.  There are no factual allegations bridging any scientific studies to the conclusion sustaining the alleged falsity of the CLSs.  *See Eckler*, 2012 WL 5382218, at *8 (S.D. Cal. Nov. 1, 2012) (dismissing UCL and CLRA claims where plaintiff did not sufficiently allege "why the studies she cites… contradict the actual representations at issue").

### 4.  *Plaintiff's Position: The Evidence Presented Confirms CLSs Are False*

Defendant misstates Plaintiff's burden. Defendant states Plaintiff must demonstrate "that the represented benefits of the Product 'are categorically impossible to achieve,' as is her burden." (citing *Engel v. Novex Biotech LLC*, 2015 WL 846777, at *4 (N.D. Cal. Fe. 25, 2015). Defendant misleadingly included only a portion of the quote from the *Engel* opinion. The full quote is: "Plaintiff still does not allege that a study exists showing that these benefits are categorically impossible to achieve, *or that one or more authorities studied or tested Growth Factor-9's formula and found that it does not produce the results Defendants claim*." *See id.* (emphasis added).

Here, Plaintiff has presented expert testimony, scientific studies, meta-analyses, systematic reviews, and conclusions by scientific experts and the NIH demonstrating that the Product fails to provide the promised benefits. *See Gallagher v. Bayer AG*, 2015 WL 1056480, at *8 (N.D. Cal. 2015) ("where plaintiffs allege that manufacturers' food or supplement claims are false and cite to scientific studies in support, those allegations are adequate to plead false and misleading conduct under [] consumer protection statutes.").

**Plaintiff's Studies:** Analysis of the totality of relevant scientific evidence unequivocally demonstrates that the Product's advertised claims are false. In his Expert Report, Dr. David B. Allison, targeted Defendant's claims that the Product "supports appetite control" and "weight management," which convey a misleading "weight loss" claim. Dr. Allison cited to meta-analyses, systematic reviews, randomized controlled trials ("RCTs"), the opinions of other scientific experts, and the NIH, all of whom contradict the claims touted by the Product label. *See* Sections IV(A) and IV(C) above; *see also* Ex. A-1, EA_23-28 [Allison Rpt. ¶¶ 55, 58 (citing Astell, *et al*. and Mattes &

Bormann to refute appetite control claim)]; *see also id.* at ¶¶ 54-61 (citing Haber, *et al.*; Heymsfield, *et al.*; Astell, *et al.*; Hayamizu, *et al.*; Barrea, Ríos-Hoyo and Gutiérrez-Salmeán, Marquez *et al*, and NIH's Office of Dietary Supplements to refute weight management and weight loss claims). Plaintiff has provided substantial evidence proving that the garcinia cambogia in the Product does not do what Defendant claims in its advertising. Because Plaintiff has presented competent scientific evidence demonstrating that Defendant's claims are objectively false, Defendant's Motion should be denied.[6]

**Dr. Allison's Expert Report and Testimony:** As discussed above, based on his own and others' studies, Dr. Allison concludes that "the scientific literature shows that garcinia cambogia-containing products are not effective, not clinically meaningfully effect, for weight loss or weight management." (UF Nos. P3, P4; Ex. A-3, EA_66 (Allison Dep. at 244:10-15)). Dr. Allison also finds that garcinia cambogia "does not support a satiety effect." *See* Ex. A-1, EA_27 [Allison Rpt. ¶ 58 (citing Mattes & Bormann)].

Defendant contends that Dr. Allison should have reviewed scientific studies which tested subjects of a healthy weight because Plaintiff Ford "testified that she purchased the Product to maintain her current healthy weight, not for weight loss."  Defendant takes Plaintiff Ford's deposition testimony out of context. During her deposition, Plaintiff Ford testified that she purchased the Product in reliance on the Product's appetite control and weight management benefits. *See* Ex. E-1, EA_799, 803-804 [Ford Dep. at 32:9-12; 42:23 – 43:1]. Defendant's counsel asked Plaintiff Ford, "what does that mean to you though, 'a great way to support your overall weight management plan'?" *See* Ex. E-1, EA_801 [Ford Dep. at 36:19-21]. Plaintiff Ford testified, "…a great way would be if I

---

[6] Defendant cites three opinions in support of its argument that "lack of affirmative evidence of falsity is fatal to Plaintiff's case." All three are markedly different than this case. For example, the plaintiffs in *Johns* never articulated "how the Prostate Claims were deceptive." *Johns v. Bayer*, 2013 WL 1498965, at *48 (S.D. Cal. Apr. 10, 2013). The court in *Padilla v. Costco Wholesale Corp.*, 2013 WL 195769, at *4 (N.D. Ill. Jan. 16, 2013) found plaintiff "failed to make any connection between the clinical studies that he cite[d] and the actual representations." Similarly, in *Scheuerman v. Nestle Healthcare Nutrition*, 2012 WL 2916827, at *7 (D.N.J. Jul. 17, 2012), the court found that "[a]t best, Plaintiffs can prove that Nestle's studies were not sufficiently strong."

followed the instructions, I should get the desired results." *Id.*, EA_802 [Ford Dep. at 37:1-3]. Defendant's counsel then asked, "[w]hich would be to maintain your current healthy weight?" *Id.*, EA_802 [Ford Dep. Tr. 37:4-5]. In responding to Defendant's question about what a "great way to support your overall weight management plan" might mean, Plaintiff Ford answered "yes." *Id.*, EA_802 [Ford Dep. Tr. 37:6]. Plaintiff Ford never testified that she did not purchase the Product for weight loss, and Defendant's counsel never asked Plaintiff if she purchased the Product to lose weight, nor could he, as this Court limited the deposition topics to Plaintiff's desire to purchase the Product *in the future*. *See* Dkt. No. 49 [Order Denying Defendant's MTD Injunctive Relief Claim].

Even assuming *arguendo* that Plaintiff Ford did not purchase the Product to lose weight, not every consumer purchased the Product to maintain their weight. Because the Product's labeling claims convey a misleading weight loss message, it is likely that consumers purchased the Product for weight loss. Therefore, the studies cited by Dr. Allison are relevant and probative. *See* Ex. A-1, EA_23-28 [Allison Rpt. ¶¶ 54-61].

Defendant next argues that because the specific Product at issue has not been tested, scientific studies that have tested garcinia cambogia cannot demonstrate that the Product is merely a placebo. Defendant appears to argue that because Defendant never actually tested its own Product to verify that the CLSs were truthful prior to releasing the Product, no evidence exists to prove that the Product's labeling is false and misleading. This argument is misguided. The "active" ingredients in the Product are garcinia cambogia and coconut oil. SAC ¶ 1. Plaintiff's evidence demonstrates that neither of these ingredients provide the Product's advertised benefits. *Id.* at ¶¶ 28-45. Defendant's argument that the presence of coconut oil somehow makes the Product effective is illogical. Even if coconut oil might allow nutrients to be better absorbed in the body, garcinia cambogia, once absorbed, does not provide any of the advertised benefits. Because none of the Product's ingredients provide the touted benefits, the CLSs are false.

Defendant's argument that "not one RCT [cited in Dr. Allison's Report] studied outcomes related to weight management and appetite control" is false. *See* Ex. A-1,

30

EA_27 (Allison Rpt. ¶ 58) (citing Hayamizu, *et al*., an RCT that found "no statistically significant evidence of an effect on BMI or body weight."); *id.* (citing Mattes & Bormann, an RCT that "d[id] not support a satiety effect of HCA"). In addition to RCTs, Dr. Allison provided meta analyses, systematic reviews, and conclusions from scientific experts and the NIH all confirming the same, that the Product does not provide appetite control or weight management benefits. *See* Ex. A-1, EA_6-39 (Allison Rpt.)

**Plaintiff's Deposition Testimony:** Plaintiff, a consumer who purchased the Product and took it as directed, testified during her deposition that she herself did not experience any of the advertised benefits. *See* Ex. E-1, EA_793, 796, 800 [Ford Dep. at 12:2-14; 21:11-16; 35:4-14]. Plaintiff's experience, coupled with the scientific evidence presented in this case, provides overwhelming evidence that the CLSs are entirely false.

As detailed above, substantial evidence exists that the garcinia cambogia in the Product does not do what Defendant claims in its advertising. This evidence affirmatively demonstrates that Defendant's claims are false. Defendant's Motion must be denied.

### 5. *Defendant's Position:  Plaintiff Cannot Prove the CLSs are Misleading.*

Here, Plaintiff has no evidence to demonstrate materiality or deception.  To the contrary, the vast majority of Product purchasers bought the Product for reasons completely unrelated to the CLSs.  SR's expert Dr. Samantha Iyengar conducted a consumer survey (the "Iyengar Survey") on 532 respondents, including 93 respondents who purchased the Product ("SR Purchasers"), and found that the label only influenced the purchasing decisions of 18/93 SR Purchasers, and of those 18, ***only 2 mentioned "weight"*** in open-ended answers as influencing their decision, and one of those 2 mentioned coconut oil as well.  (UF D172-175, Exh. B9, EA_585, EA_582-584, ¶¶ 39, 52, 54, Table 8, Figure 3.)  The Iyengar Survey eviscerates any suggestion that the CLSs were material to or misled a substantial portion of the target audience.  Moreover, Ford testified she purchased the Product for weight management and appetite suppression, she never saw any representations on the Product claiming it would help her "reduce fat and achieve weight loss," and any reference in the SAC to weight loss is a "mistake." (UF

31

*Capaci v. Sports Research, Inc.,* No. 2:19-cv-03440-FMO-FFM
JOINT MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE PARTIES'
MOTION(S) FOR SUMMARY JUDGMENT

D129-131, Exh. B1, EA_353 [12:10-11], EA_361 [32:1-8].)  Ford could not have relied on any mistaken belief that the Product was effective at producing weight loss as she did not intend to purchase or use the Product for weight loss.

Accordingly, Plaintiff has failed to show the CLSs are false or misleading and her UCL, FAL, and CLRA claims fail as a matter of law on these bases.

### 6.   *Plaintiff's Position: CLSs Are Misleading To Reasonable Consumers*

Defendant argues that the results from the Iyengar survey demonstrates the CLSs were not material to consumers' purchasing decisions. But Dr. Iyengar's survey, which surveyed only 93 Sports Research consumers, only asked 18 out of the 93 Sports Research purchasers about *some* of the CLSs, and did not ask *any* of the Sports Research purchasers about the "support appetite control" labeling claim. *See* Ex. B9 at EA_558-631. Therefore, Dr. Iyengar's survey did not appropriately test for materiality.

Defendant also contends that the implied "weight loss" claim is not misleading because Plaintiff "did not intend to purchase or use the Product for weight loss." As explained above in Section V(A)(4), Plaintiff did not testify that she did not purchase the Product for weight loss. And as described in Section IV(A)(1) above, the evidence demonstrates that Defendant intended to market the Product for weight loss. The Product's implied "weight loss" claim is therefore misleading because the evidence in this case proves that the Product does not provide weight loss benefits.

Common sense indicates that reasonable consumers would understand the "weight management" and "appetite control" claims to mean that a consumer will achieve appetite control and weight management benefits by taking the Product. These statements are misleading because the Product does not provide any such benefits. Because the CLSs are misleading to reasonable consumers, Defendant's Motion must be dismissed.

### D.   Defendant's Position:  Plaintiff Merely Alleges an Impermissible Lack of Substantiation Claim.

Under California law, "prosecuting authorities, but not private plaintiffs, [may] require substantiation of advertising claims."  *King Bio*, 107 Cal. App. 4th at 1345-48).

False advertising claims resting on a lack of substantiation theory, instead of provable falsehood, "are not cognizable under the California consumer protection laws." *Bronson v. Johnson & Johnson, Inc.*, 2013 WL 1629191, at * 8 (N.D. Cal., Apr. 16, 2013); *Johns*, 2013 WL 1498965, at *40; *Scheuerman*, 2012 WL 2916827, at *7-8.

Where a plaintiff's claim boils down to an assertion that the advertising claims lack adequate support in the scientific research, the defendant is entitled to judgment as a matter of law. *See*, *e.g.*, *Johns*, 2013 WL 1498965, at * 40-47 (granting summary judgment to dietary supplement maker where plaintiff's claims were premised on lack of substantiation rather than proof of falsity); *Stanley*, 2012 WL 1132920 (same); *Scheuerman*, 2012 WL 2916827, at * 7-8 (same). In other words, an advertising claim is not false simply because there may not be definitive evidence that supports it.

Plaintiff's case boils down to a lack of substantiation claim. Plaintiff alleges that her cited scientific studies "demonstrate that Garcinia Cambogia extract and/or HCA ***does not provide*** weight-loss or appetite control benefits in humans" (UF D176, SAC, ¶ 28), because such studies concluded that GCE "failed to produce" (*id.*, ¶ 30), "did not show" (*id.*, ¶¶ 36, 38), "had no significant effect" (*id.*, ¶ 37); "failed to promote" (*id.*, ¶ 39), "was not effective" (*id.*, ¶ 41), and that there is "no evidence" (*id.*, ¶ 42) of such outcomes. (Emphasis added.) These are ***exactly*** the type of allegations courts have held to sound in lack of substantiation, rather than actual falsity.

Similar lack of substantiation claims consistently have been dismissed or disposed of on summary judgment because they do not satisfy the plaintiff's burden of establishing falsity through ***affirmative*** scientific evidence. *See*, *e.g.*, *Kwan*, 2015 WL 848868, at * 4-8 (dismissing complaint where plaintiff alleged that advertising claim lacked evidentiary support but failed to "allege that a study exists showing [the represented product] benefits are categorically impossible to achieve"); *Engel*, 2015 WL 846777, at * 4-7 (dismissing complaint on lack of substantiation grounds where plaintiff could not "allege that a study exists showing that [the advertised product] benefits are categorically impossible to achieve"); *Fraker*, 2009 WL 5865687, at * 8-9 ("If Plaintiff is going to

maintain an action against Defendant for false or misleading advertising, then Plaintiff will be required to adduce evidence sufficient to present to a jury to show that Defendant's advertising claims with respect to [the product] are actually false; not simply that they are not backed up by scientific evidence.").

Here, when questioned specifically about disproving affirmative statements on product labels as to the product's efficacy, Dr. Allison admitted that the scientific community would want to see "product-specific studies[,]" and, if a product-specific study is not available, as it is not here, studies of other similar (not identical) products showing lack of efficacy can cast doubt on the efficacy of that particular product thereby "shift[ing] the burden of proof more ***vigorously*** for those who wish to claim that there is efficacy." (UF D177-178, Exh. B2, EA_372 [76:1-22]) (emphasis added).

Dr. Allison's attempt to shift the burden to SR to substantiate its claims as to the efficacy of the Product not only sounds the death knell for Plaintiff's UCL, FAL and CLRA claims, it also violates well-established California law. *See Stanley*, 2012 WL 1132920, at *3 (stating only prosecuting authorities, and not private individuals, can bring action for lack of substantiation); *Chavez v. Nestle USA, Inc.*, 2011 WL 2150128, at *5-7 (C.D. Cal. May 19, 2011) (dismissing UCL and FAL claims based on lack of substantiation, explaining that "there is no basis in California law to shift the burden of proof to a defendant in a representative false advertising and unlawful competition action"); *see also King Bio*, 107 Cal. App. 4th at 1348. Moreover, to the extent that Dr. Allison seeks to impose narrower standard evidence to show of efficacy than allowed by the FDA,[7] Plaintiff's claims are preempted. *Dachauer v. NBTY, Inc.*, 913 F.3d 844, 847-

[7] *See* Guidance For Industry: Substantiation For Dietary Supplement Claims Made Under Section 403(r)(6) of the Federal Food, Drug, And Cosmetic Act, 2008 WL 10889843, at *7-9 (allowing both (i) intervention studies, like the RCTs on which Dr. Allison relies, which "evaluate the product's direct effect on the human body[,]" and (ii) observation studies, in which "the investigator does not have control over the exposure to the treatment or intervention of interest" and include case reports, case-series studies, case-control studies, cohort studies, cross-sectional (prevalence) studies, time-series studies, and epidemiological studies).

34

*Capaci v. Sports Research, Inc.,* No. 2:19-cv-03440-FMO-FFM
JOINT MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE PARTIES'
MOTION(S) FOR SUMMARY JUDGMENT

48 (9th Cir. 2019); 21 U.S.C. § 343-1(a)(5), 21 U.S.C. § 343(r)(1).

**E.    Plaintiff's Position: This is Not A Lack of Substantiation Case**

A "lack of substantiation" case is where the plaintiff presents no evidence that the claim is untrue, instead arguing that the burden rests on the advertiser to substantiate the advertising claim. Plaintiff does not merely take the position that Defendant's claims are unsubstantiated. Instead, Plaintiff relies on the totality of scientific evidence to demonstrate the CLSs are false and misleading. *See* Sections IV(A) and IV(C), above; SAC ¶¶ 26-45. This evidence shows Plaintiff is not simply arguing lack of substantiation.

The cases Defendant cites demonstrate the weakness of its lack of substantiation argument. For example, in *Kwan v. SanMedica Int'l, LLC*, plaintiff conceded there was no science supporting his allegations, but alleged the advertising was false and misleading because "there are no studies that support Defendant's representations" and no high-quality "trials exist to substantiate Defendant's claims." 2015 WL 848868, at *5. The *Kwan* court held "Plaintiff's allegations that Defendant's claims are not substantiated by the supporting study, standing alone, cannot serve as a basis to assert claims under either the UCL or CLRA." *Id*. The other cases Defendant cites are the same.[8] Because Plaintiff Ford provides authoritative sources, including RCTs, that demonstrate the falsity of the CLSs, Defendant's argument that this is merely a lack of substantiation case fails.

Defendant's argument that Dr. Allison "attempt[s] to shift the burden to SR to substantiate its claims as to the efficacy of the Product" is a misunderstanding of Dr. Allison's testimony. Dr. Allison explained that more evidence casting doubt on the efficacy of the Product will make it more difficult for Sports Research to refute such evidence. *See* Ex. B2 at EA_372 [Allison Dep. at 76:1-22]. This statement is true here,

---

[8] *See Engel v. Novex Biotech LLC*, 2015 WL 846777, at *4 (N.D. Cal. Feb. 25, 2015) (plaintiff alleged "there are no studies that support Defendant's representations, and Defendants lack any credible scientific substantiation," but plaintiff had no studies); *Fraker v. Bayer Corp.*, 2009 WL 5865687, at *5 (E.D. Cal. Oct. 2, 2009) (plaintiff could not rely solely on an FTC consent decree as proof that representations were deceptive: "The court can find no independently acquired evidence that would tend to support Plaintiff's central allegations of deceptive advertising.").

35

where Plaintiff has presented extensive evidence demonstrating that the CLSs are false and misleading at the summary judgment stage of the litigation and Defendant has failed to refute that evidence. Defendant's Motion for Summary Judgment must be denied.

### F.   Defendant's Position:  There is No Triable Issue of Fact as to Damages.

As discussed in the Joint Brief re: Class Certification (Dkt. No. 59-1) and SR's Motion to Exclude Expert Report and Testimony of Plaintiff's Expert Charlene L. Podlipna (Dkt. No. 68), Plaintiff has not presented a damage model capable of showing any actual damages or measuring such damages.  For this same failure, Plaintiff cannot obtain any individual monetary award, requiring dismissal of Plaintiff's claims for monetary relief on her claims, whether sought in the form of actual damages or restitution. Plaintiff has adduced no independent measure of damages and Ford's own deposition testimony defeats any entitlement to a full refund.

Actual damages under the CLRA consist of "the difference between the actual value of that with which the defrauded person parted and the actual value of what he received, together with any additional damage arising from the particular transaction. The term 'actual value'… means market value." *Zakaria*, 2017 WL 9512587, at *20 (internal quotations and citation omitted).   "The proper measure of restitution in a mislabeling case is the amount necessary to compensate the purchaser for the difference between a product as labeled and the product as received. *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1048 (C.D. Cal. 2018) (quoting *NJOY*, 120 F. Supp. 3d at 1118).  Similarly, for breach of warranty claims, "the proper measure of damages is 'the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted.'"  *Caldera v. J.M. Smucker Co.*, 2014 WL 1477400, at *4 (C.D. Cal. Apr. 15, 2014), citing Cal. Com. Code § 2714(2).  Regarding negligent misrepresentation, "[i]t is well settled under California law that the measure of damages for fraud, in the absence of a fiduciary relationship, is out-of-pocket rather than benefit of the bargain damages." *Churchill v. Winter Chevrolet*, 2005 WL 8162543, at *15 (N.D. Cal. Jun. 9, 2005) (citing *Fragale v. Faulkner*, 110 Cal.

36

*Capaci v. Sports Research, Inc.,* No. 2:19-cv-03440-FMO-FFM
JOINT MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE PARTIES'
MOTION(S) FOR SUMMARY JUDGMENT

App. 4th 229, 236 (2003)).   "'The out-of-pocket measure restores a plaintiff to the financial position he enjoyed prior to the fraudulent transaction, awarding the difference in actual value between what the plaintiff gave and what the plaintiff received.'"   *Id.* (citing *Fragale*, 110 Cal. App. 4th at 236) (quoting *Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1240 (1995)).

"Although a trial court has broad discretion under [the UCL] to grant equitable relief, that discretion is not 'unlimited' [citation], and does not extend beyond the… parties' evidentiary showing." *Colgan*, 135 Cal. App. 4th at 700.  "A court cannot, under the equitable powers of section 17203, award whatever form of monetary relief it believes might deter unfair practices." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003).  Damages must be supported by "substantial evidence." *Zakaria*, 2017 WL 9512587, at *20.

Restitution "requires that the 'value of what the plaintiff received' was less than what the 'plaintiff paid.'" *Shanks v. Jarrow Formulas, Inc.*, 2019 WL 7905745, at *4 (C.D. Cal. Dec. 27, 2019).  If evidence shows the product's value of the product is zero, "then the price paid minus the value actually received equals the price paid [] (i.e., the price premium is 100%)." *Chowning v. Kohls Dep't Stores, Inc.*, 733 F. App'x 404, 406 (9th Cir. 2018).  Stated otherwise, the price premium is 100%.  "Without any evidence of the value received that calculation is impossible." *Shanks*, 2019 WL 7905745 at *4.

To receive a full refund as actual damages or restitution, a plaintiff must ***prove*** the product is "valueless." *Brazil*, 660 F. App'x at 535 (stating because Brazil failed to prove Dole's products valueless, "[t]he district court correctly limited damages to the difference between the price customer paid and value of [the products] they bought—in other words, the 'price premium' attributable to Dole's [product] labels.").  When a plaintiff fails to identify sufficient evidence in the record to meet the burden of proof regarding damages at trial, summary judgment is appropriate.  *Ries*, 2013 WL 1287416, at *8 (granting summary judgment where plaintiff failed to present evidence of measure of restitution).

For a product to have no value whatsoever, it means "not a single consumer

received a benefit, be it hydration, flavor, energy, or anything else of value." *In re POM Wonderful LLC*, 2014 WL 1225184, at *3, n.2 (C.D. Cal. Mar. 25, 2014); *see also Caldera*, 2014 WL 1477400, at *4 ("Restitution based on a full refund would only be appropriate if not a single class member received any benefit from the products.")

Ford would purchase the Product again at full price for potential liver benefits. (UF D179, Exh. B1, EA_364 [49:3-18].)  Thus, she acknowledges a perceived benefit from the Product, which is fatal to her damage theory. *See Shanks*, 2019 WL 7905745, at *4 (granting summary judgment on unfair competition claim, finding full refund not viable damage model—plaintiff admitted receiving value from coconut oil and did not introduce evidence of price paid for product). The SR Product also contains coconut oil. (UF D1.)  Research and analysis show it has value; because it is sold as a standalone product, Dr. Werner attributes from 55.3% to 84.2% of the Product's value to coconut oil. (UF D180-181, Exh. B8, EA_521 [p. 24, ¶ 33].)  Plaintiff has presented **no evidence** that coconut oil has no actual or perceived value to consumers.

For a plaintiff receive a full refund, the $0 value must be tied to the marketplace data, as subjective value is not enough.  "Under California consumer protection laws, plaintiffs can measure class-wide damages using methods that evaluate what a consumer would have been willing to pay for the product had it been labeled accurately. ***Such methods must, however, reflect supply-side considerations and marketplace realities that would affect product pricing***." *Zakaria v. Gerber Prods. Co.*, 755 F. App'x 623, 624 (9th Cir. 2018) (emphasis added).

Stated otherwise, the proffered methodology must not be "divorced from the marketplace." *NJOY*, 120 F. Supp. 3d at 1122. ("A consumer's subjective valuation of the purported [misrepresentation], measured by their relative willingness to pay for products with or without the [misrepresentation], is not an accurate indicator of restitutionary damages, because it does not permit the court to calculate the true market price of NJOY e-cigarettes absent the purported misrepresentations."); *Apple, Inc. v. Samsung Elecs., Co. Ltd*., 2014 WL 976898, at *11 (N.D. Cal. Mar. 6, 2014) (rejecting

38

*Capaci v. Sports Research, Inc.,* No. 2:19-cv-03440-FMO-FFM
JOINT MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE PARTIES'
MOTION(S) FOR SUMMARY JUDGMENT

1   damage model that failed to provide way to compare "willingness to pay metrics" to
2   market price of product, "which reflects the real-world interaction of supply and demand
3   for the infringing and noninfringing devices").

4   Despite these requirements, Podlipna testified she "determined the full refund
5   model was the appropriate model based on allegations in the Complaint." (UF D182-184,
6   Exh. B7, EA_474-475 [41:23-42:6], EA_478 [84:1-6]; Exh. D4, Podlipna Rpt., EA_777
7   [p. 3, ¶ 11]; SAC, ¶¶ 68, 72.)  Her conclusion that the Product was entirely devoid of
8   value was "not based on economic data," and she did not analyze any marketplace data
9   that would reflect market realities and prices for GCE products, what the Product's price
10  would be with or without the CLSs and did not otherwise analyze supply and demand
11  factors.  (UF D185, D188-198, Exh. B7, EA_478 [84:10-12]; EA_476-479 [47:3-6,
12  55:18-22, 84:13-17, 90:1-6], EA_481-491 [108:20-23, 109:16-110:4, 110:21-111:17,
13  116:25-117:2, 156:25-157:2, 158:24-159:4, 161:19-23].)

14  Plaintiff has failed to create a triable issue of fact to support her claims for actual
15  damages under the CLRA or for restitution under her other claims.

16  **G.   Plaintiff's Position: The Full Refund Damages Model Is Appropriate**

17  Defendant provides no genuine facts to support its position that the full refund
18  model does not apply. A full refund damages model is appropriate in this case because
19  there is no other reason to purchase the product than its advertised benefits. *See McCrary*
20  *v. Elations Co., LLC*, 2014 WL 1779243, at *14 (C.D. Cal. 2014) ("Defendant cannot
21  reasonably argue that a putative class member would purchase a product that does not
22  work"); *see also Farar*, 2017 WL 5952876, at *10 (denying summary judgment on a full-
23  refund damages theory despite defendant's argument that One A Day multivitamins are
24  food products and provide nutritional value in the form of essential vitamins and
25  nutrients). Plaintiff Ford testified that she purchased the Product for appetite control and
26  weight management benefits. *See* SAC ¶ 74; *see also* Ex. E-1, EA_793 [Ford. Dep. at
27  12:10-14]. This by itself is sufficient to support the full refund damages model. *See*
28  *Mullins v. Premier Nutrition Corp.*, 178 F.Supp.3d 867, at *899 (N.D. Cal. Apr. 15, 2016)

39

(consumer's allegations that she and other putative class members would not have purchased dietary supplement absent its claim to treat joint health problems, since, if supplement did not provide such treatment, it conferred no value at all, was sufficient to support claim for restitution of full refund of her purchase).

Defendant's argument that Plaintiff Ford "would purchase the Product again at full price for potential liver benefits" is misguided. Plaintiff Ford purchased the Product for the advertised "appetite control" and "weight management" benefits. *See* Ex. E-1, EA_799, 803-804 [Ford Dep. at 32:9-12; 42:23 – 43:1]. That she would purchase the Product *in the future* if it were able to provide liver benefits, does not replace the fact that she originally purchased the Product for the advertised appetite control and weight management benefits. Defendant's argument that Plaintiff "acknowledges a perceived benefit" does not fit the law. Because the Product does not provide the promised benefits, purchasers did not receive what they thought they were buying, and a full refund is appropriate.  *See Rikos*, 799 F.3d at 506-07 ("The [UCL and CLRA] punish companies that sell products using advertising that misleads the reasonable consumer. Whether consumers were satisfied with the product is irrelevant." (citation omitted)).

Defendant's argument that coconut oil provides benefits to consumers is also flawed. It is undisputed that coconut does not provide appetite control, weight management, or weight loss benefits. UF Nos. P209, P210; SAC ¶ 45, n. 14. Because the Product was advertised as providing appetite control and weight management benefits, and the Product does not actually provide any such benefits, consumers did not get what they purchased the Product for. A full refund model is therefore appropriate. *See FTC v. Figgie Int'l*, 994 F.2d 595, 606 (9th Cir. 1993) ("The fraud in the selling, not the value of the thing sold, is what entitles consumers in this case to full refunds or to refunds for each detector that is not useful to them."), *cert. denied*, 510 U.S. 1110 (1994); *see also Yamagata v. Reckitt Benckiser LLC*, 445 F.Supp.3d 28 (N.D. Cal. Mar. 30, 2020) (buyers of joint supplement not precluded from seeking full-refund damages, even if some of supplement's ingredients provided benefits unrelated to joint health; if "plaintiffs

1  received none of the advertised joint health benefits, they are entitled to a full refund.").

2      Ultimately, the trier of fact determines whether the CLSs are likely to deceive, and

3  if so, the amount of damages. That amount may be the return of the full purchase price

4  or something less. But the issue does not entitle Defendant to summary judgment. *See*

5  *Mullins,* 178 F.Supp.3d 867, at n. 11 (denying defendant's MSJ regarding plaintiff's full

6  refund model and finding plaintiff's suggestion that she may be entitled to restitution in

7  an amount less than the full purchase price "need not be addressed at this juncture.").

8      **H.    Defendant's Position: The Breach of Express Warranty Claim Fails.**

9      To prevail on a breach of express warranty claim, a plaintiff must prove that the

10  seller "(1) made an affirmation of fact or promise or provided a description of its goods;

11  (2) the promise or description formed part of the basis of the bargain; (3) the express

12  warranty was breached; and (4) the breach caused injury to the plaintiff." *Rodarte v.*

13  *Philip Morris, Inc.*, 2003 WL 23341208, *5 (C.D. Cal. Jun. 23, 2003). Courts repeatedly

14  find detrimental reliance is required to prevail on such a claim. *See*, *e.g.*, *C.H. Robinson*

15  *Worldwide, Inc. v. KLF Logistics, Inc.*, 2019 WL 4565173, at *5 (C.D. Cal. Jul. 29, 2019).

16     As discussed in Section V.A., *supra*, Ford did not detrimentally rely on the CLSs.

17  Regardless of whether the Product had the CLSs or not, Ford was going to buy the SR

18  Product, and would consider purchasing it again without reformulation for liver benefits,

19  based on Dr. Oz's recommendations.

20     "[Q]ualifying language may negate or limit an express warranty..." *Smith v. Keurig*

21  *Green Mountain, Inc.,* 393 F. Supp. 3d 837, 847–48 (N.D. Cal. 2019).  No reasonable

22  consumer could understand the CLSs to imply the Product produces weight loss or treats

23  obesity, because the label ***expressly disclaims*** that it diagnoses, treats, cures, or prevents

24  any disease.  (UF D137; SAC, ¶ 20, p. 8.) *See*, *e.g.*, *McCrary v. Elations Co., LLC*, 2013

25  WL 6402217, at *4 (C.D. Cal. Apr. 24, 2013) (finding as a matter of law that glucosamine

26  product did not make implied health claim to treat osteoarthritis where packaging made

27  no reference to arthritis and instead "directly contradict[ed] any supposed reference or

28  inference to osteoarthritis by disclaiming that it treats any disease").

41

*Capaci v. Sports Research, Inc.,* No. 2:19-cv-03440-FMO-FFM
JOINT MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE PARTIES'
MOTION(S) FOR SUMMARY JUDGMENT

**I.      Plaintiff's Position: Defendant's Arguments Regarding Plaintiff's Breach of Express Warranty Claim Are Inapposite**

Defendant again argues that Plaintiff "did not detrimentally rely on the CLSs." This argument is flatly contradicted by Plaintiff's deposition testimony. *See* Ex. E-1, EA_799, 803-804 [Ford Dep. at 32:9-12; 42:23 – 43:1]. Defendant contends Plaintiff "was going to buy the SR Product" "[r]egardless of whether the Product had the CLSs or not." Defendant cites to no evidence in support of this conclusion, as this is not something Plaintiff testified to and in fact, is unsupported by Plaintiff's deposition testimony. *Id.*

Defendant cites to *McCrary* for the proposition that "[n]o reasonable consumer could understand the CLSs to imply the Product produced weight loss or is a treatment for obesity, because the Product label expressly disclaims that it diagnoses, treats, cures, or prevents any disease." 2013 WL 6402217, at *4. But Plaintiff does not claim that the CLSs imply a treatment for obesity. Plaintiff alleges that the CLSs imply a misleading weight loss message. Defendant cites to no authority showing that "weight loss" is considered a disease. As such, Defendant's citation to *McCrary* is inapposite. *See id.* (plaintiffs argued health claims implied treatment of arthritis disease).

Notably, Defendant does not argue that Plaintiff's claim for breach of express warranty fails due to the Product's express "appetite control" and "weight management" claims. These claims are unrefuted and cannot be dismissed.

**J.      Defendant's Position: The Breach of Implied Warranty Claim Fails.**

Implied warranty cases always require showing reliance. *Mezzadri v. Med. Depot, Inc.*, 2016 WL 5107163, at *9 (S.D. Cal. May 12, 2016) (finding breach of implied warranty claim elements include that "buyer relied on the seller's judgment to select suitable goods for [a particular] purpose") (internal quotations omitted). However, "vertical contractual privity" must exist for a breach of implied warranty claim; if a third party sold the product to the consumer, a claim cannot stand. *NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1023, 1034 (E.D. Cal. 2013). As discussed above, Plaintiff cannot show reliance. Further, Ford purchased the Product at a Vitamin Shoppe

42

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
JOINT MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE PARTIES'
MOTION(S) FOR SUMMARY JUDGMENT

store in Long Beach, California. (UF D112, D123, D132-133; SAC, ¶¶ 10, 14, 15, 56; Exh. B1, EA_365 [51:15-24]; Exh. C, EA_636, ¶ 8.) Thus, no vertical privity exists between Ford and SR, and her breach of implied warranty claim fails as a matter of law.

### K. Plaintiff's Position: Defendant's Argument Regarding Vertical Privity Does Not Preclude Plaintiff's Implied Warranty Claim

While Defendant argues that no vertical privity exists, "when the parties lack privity, Plaintiffs' reliance on a representation by a manufacturer can form the basis of an actionable implied warranty." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (describing several exceptions to the privity requirement for breach of warranty claims as follows: "The first arises when the plaintiff relies on written labels or advertisements of a manufacturer."). Here, Defendant's superior knowledge of garcinia cambogia gave rise to a duty of disclosure upon which Plaintiff was entitled to rely. And as she testified during her deposition, Plaintiff did in fact rely on Defendant's superior knowledge of garcinia cambogia to her detriment. *See* Ex. E-1, EA_793, 796, 799, 803-804 [Ford Dep. at 12:2-14; 21:11-16; 32:9-12; 35:4-14; 42:23 – 43:1]. Plaintiff's reliance is therefore sufficient to state a claim for breach of implied warranty.

Further, the controversy over privity "exists only in the case of the implied warranty of merchantability, which arises automatically in every sale of goods by one who is a merchant in those goods." *Abraham v. Volkswagen of America, Inc.*, 795 F.2d 238, 249 (2nd Cir. 1986). "[T]he implied warranty of fitness for a particular purpose, U.C.C. § 2–315, does not arise in every consumer sale, but only when a seller knows or has reason to know the particular purpose for which a buyer requires goods, and also knows or should know that the buyer is relying on his special knowledge." *Id.* In other words, privity exists because the creation of the implied warranty of fitness for a particular purpose necessarily requires a direct exchange between buyer and manufacturer. *Id.* Since the ordinary and intended purpose of the Product was to aid in appetite control, weight management, and weight loss, Plaintiff's allegation that the Product cannot serve its intended purpose satisfies the pleading requirements to state a

43

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
JOINT MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE PARTIES'
MOTION(S) FOR SUMMARY JUDGMENT

1   claim for breach of the implied warranty.

2   Finally, "[t]here are recognized exceptions to the privity requirement for cases such

3   as foodstuffs, pesticides, and drugs." *Jones v. ConocoPhillips*, 198 Cal. App. 4th 1187,

4   1201 (2011); *Dunson v. Cordis Corp.,* 2016 WL 3913666, at *8 (N.D. Cal. July 20, 2016).

5   The Product is meant for human consumption and may be properly be characterized as

6   "foodstuff." *See Bland v. Sequel Nat. Ltd.*, 2019 WL 4674337, at *1, 3 (N.D. Cal. Aug.

7   2, 2019) (holding that protein powders and shakes qualify "for the foodstuffs exception"

8   based on claims of purely economic harm); *Williams v. Union Carbide Corp.*, 17 A.D.2d

9   661, 661, 230 N.Y.S.2d 476, 478 (1962). Defendant's Motion should therefore be denied.

10   **L.     Defendant's Position:  Plaintiff Has No Standing for Injunctive Relief.**

11   Plaintiff seeks injunctive relief in the form of a "corrective advertising campaign"

12   and destruction and removal of "all misleading and deceptive advertising materials and

13   product labels." (UF D201, SAC, ¶ 168(e), (f).)  But, the CLSs have been permanently

14   removed from the Product labels as of January 2020, pursuant to a company-wide

15   decision that went into play before this lawsuit was instituted. (UF D202-204, Exh. C,

16   EA_636, ¶¶ 10-12.)  Further, SR does not advertise the Product other than to pay Amazon

17   to push the existing Product webpage higher on an Amazon search page if a consumer

18   searched Amazon for garcinia cambogia. (UF D205, Exh. C, EA_636, ¶ 7.)

19   To establish standing to seek a particular type of relief, a plaintiff "must show,"

20   among other things, "a 'substantial likelihood' that the relief sought would redress the

21   injury." *Mayfield v. United States*, 599 F.3d 964, 971 (9th Cir. 2010).  A plaintiff's claim

22   for prospective relief becomes moot when she can no longer benefit from such relief.

23   *Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1048 (9th Cir. 2014); *see*

24   *also O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct

25   does not in itself show a present case or controversy regarding injunctive relief...if

26   unaccompanied by any continuing, present adverse effects.").

27   In *Shanks*, the court found that there was no threat of future injury and the plaintiff

28   lacked standing to seek injunctive relief on his UCL unlawful claims, "because Plaintiff

44

*Capaci v. Sports Research, Inc.,* No. 2:19-cv-03440-FMO-FFM
JOINT MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE PARTIES'
MOTION(S) FOR SUMMARY JUDGMENT

1  can easily figure out whether Defendant's coconut oil still contains coconut oil and fat

2  simply looking at Defendant's label."  2019 WL 7905745, at *5.

3       As part of a 2018 company-wide decision to rely on its brand strength rather than

4  label statements, no Product units with appetite control claims have been released into

5  the market by SR since October 2018, at least 8 months after Ford discovered that the

6  Product did not work for her, 6 months before this lawsuit was filed in April 2019, and 8

7  months before Ford was added to the FAC.  (UF D203, Exh. C, EA_636, ¶ 10.)  In a

8  second round of label revamps, weight management claims began to be removed in

9  August 2019 and no Product units with weight management claims have been released

10  into the market since December 2019.  (UF D204, Exh. C, EA_636, ¶ 11.)

11       Ford testified she would consider purchasing the Product again once the CLSs were

12  removed (which they now have been), without reformulation and for full price, for liver

13  benefits.  (UF D179, Exh. B1, EA_364 [49:3-18].)  Like in *Shanks*, she has no threat of

14  injury.  The Product remains a GCE product without reformulation, which she can choose

15  to purchase or not.  Thus, Plaintiff's injunctive relief claim fails as a matter of law.

16  **M.    Plaintiff's Position: Plaintiff Has Standing For Injunctive Relief**

17       Defendant argues that Plaintiff has no standing because "the CLSs have been

18  permanently removed from the Product labels as of January 2020…."  But "an action for

19  an injunction does not become moot merely because the conduct complained of has

20  terminated, if there is a possibility of recurrence, since otherwise the defendants would

21  be free to return to their old ways." *Torres v. Nutrisystem, Inc.*, 289 F.R.D. 587, 595 (C.D.

22  Cal. Apr. 8, 2013) (citation omitted). While Defendant would like for this Court to believe

23  that it "made a company-wide decision" to remove all CLSs "before this lawsuit was

24  instituted," the "weight management" claim remained on the Product's label until January

25  2020 – over a year after the lawsuit was first initiated and almost two years after

26  Defendant was notified with a CLRA warning letter. *See* Dkt. No. 57-3 at EA_738

27  [Pederson Decl., at ¶ 39]; SAC at Ex. 1 [CLRA Letter]. The evidence in this case also

28  shows that Defendant has made changes to the Product's label and the CLSs several times

throughout the years. *See* Ex. B8 at EA_525-526 [Werner Rpt. at Figures 8-9 (variations in Product labels)]. A threat of future injury remains because Defendant can simply place the false CLSs back on the Product. Because there is a possibility of recurrence, an injunction is necessary to ensure Defendant does not revert back to misleading labeling.

Moreover, in addition to an order compelling Defendant to "cease marketing the Product using the misleading and unlawful tactics complained of herein," Plaintiff's SAC also seeks an order compelling Defendant to "destroy all misleading, deceptive, and unlawful materials," and "conduct a corrective advertising campaign." SAC ¶ 4. Defendant has not produced any evidence showing that it destroyed the remaining misleading Products, retrieved from retailers any of its Products that contained the false and misleading CLSs, or conducted a corrective advertising campaign disclosing that the Product cannot provide appetite control, weight management, or weight loss benefits. As such, Plaintiff's injunctive relief claim is not moot. Defendant's Motion must be denied.

## N.     Defendant's Position:  Plaintiff's Pursuit of Public Injunctive Relief Does Not Permit Circumvention of Article III Standing Requirements.

In order to have standing to pursue public injunctive relief, Plaintiff must establish Article III standing and demonstrate she is likely to suffer injury.  *Circle Click Media, LLC v. Regus Mgmt. Grp., LLC*, 743 F. App'x 883, 884-85 (9th Cir. 2018) (If "there is no evidence that the plaintiffs intend to do any business with the defendants again in the future[,]" then "the plaintiffs fail to demonstrate that they are likely to suffer the future injury necessary to establish Article III standing.").

Plaintiff seeks public injunctive relief under the UCL, FAL, and CLRA.  (UF D206, SAC, ¶¶ 90, 97, 107, 116, 124.)  Plaintiff, however, "may not invoke state law to use the federal courts merely to pursue a generalized public grievance.  'No matter its reasons, the fact that a State thinks a private party should have standing to seek relief for a generalized grievance cannot override' the baseline requirements of Article III."  *Rogers v. Lyft, Inc.*, 2020 WL 1684151, at *9 (N.D. Cal. Apr. 7, 2020) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013)).

*Capaci v. Sports Research, Inc.,* No. 2:19-cv-03440-FMO-FFM
JOINT MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE PARTIES'
MOTION(S) FOR SUMMARY JUDGMENT

1    Judicial power under Article III "exists *only* to redress or otherwise protect against

2    injury to the complaining party, even though the court's judgment may benefit others

3    collaterally." *Rogers*, 2020 WL 1684151, at *9 (quoting *Warth v. Seldin*, 422 U.S. 490,

4    499 (1975)) (emphasis added). "[T]he purpose of a public injunction 'is not to resolve a

5    private dispute but to remedy a public wrong.'" *Rogers*, 2020 WL 1684151, at *9

6    (quoting *Broughton v. Cigna Healthplans of California*, 21 Cal. 4th 1066, 1080 (1999)).

7    "Thus, even if state law authorizes a plaintiff to seek a public injunction on behalf of the

8    general public, that authorization, standing alone, does not confer standing in federal

9    court." *Rogers*, 2020 WL 1684151, at *9. Thus, Plaintiff's public injunctive relief claim

10   is a standalone claim which does not confer standing.

11   **O.      Plaintiff's Position: Plaintiff Has Article III Standing**

12   Defendant cites to *Rogers v. Lyft, Inc.* for the proposition that "Plaintiff's public

13   injunctive relief claim is a standalone claim which does not confer standing." 2020 WL

14   1684151, at *9 (N.D. Cal. Apr. 7, 2020). But *Rogers* distinguished class actions cases

15   and explained that, "[u]nlike a class action, the plaintiff [seeking public injunction] sues

16   in an individual capacity, not a representative capacity." *Id*. at *8. The *Rogers* court

17   explained that "[t]he plaintiffs clearly would have standing to assert claims [] premised

18   on their own injuries, had they not agreed to arbitrate their entitlement to individualized

19   relief[] [a]nd the plaintiffs clearly would have standing to assert claims [] on behalf of a

20   class of Lyft drivers, had they not waived the right to seek class relief." *Ibid.* Because the

21   only remaining claim in *Rogers* was a public injunctive relief claim, *Rogers* remanded

22   the case to state court. By contrast, Plaintiff is suing Defendant in a representative

23   capacity, as this is a class action. Plaintiff has standing premised on her own injuries and

24   on behalf of the class; she is not merely seeking public injunction as a "standalone" claim.

25   The *Rogers* court further held, "Plaintiffs may sometimes request public injunctive

26   relief in the course of combating an actual and imminent threat of future harm to

27   themselves." *Id*. at *8 (citing *Davidson v. Kimberly-Clark Corp*., 889 F.3d 956, 969–70

28   (9th Cir. 2018)). In *Davidson v. Kimberly-Clark Corp*., the Ninth Circuit held that "a

47

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
Joint Memorandum of Points and Authorities Regarding the Parties'
Motion(s) for Summary Judgment

previously deceived consumer may have standing to seek an injunction against false advertising or labeling … because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018). To demonstrate that threat of future harm, a plaintiff must make "plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to" or "that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Davidson*, 889 F.3d at 969– 70 (citations omitted).

Here, Plaintiff has demonstrated a "concrete, particularized, and actual or imminent" injury, as is amply demonstrated by the allegations in the SAC and excerpts from Plaintiff Ford's deposition testimony. In the SAC, Plaintiff alleges that she "would like to, and would consider purchasing the Product again when [she] can do so with the assurance that the Product's label … is truthful and consistent with the Product's active ingredients" and she "will be unable to rely on the Product's advertising or labeling in the future, and so will not purchase the product again although [she] would like to." (*See* SAC ¶¶ 73-74). During her deposition, Plaintiff similarly testified that she would like to purchase the Sports Research product again "[i]f the labeling were changed." *See* Ex. E-1, EA_792 [Ford Dep. at 11:22-25]; *see also id.*, [Ford Dep. at 13:3-10; 21:5-10; 48:11-21]; *see also* Dkt. No. 53-2 at EA_253 [Ford Decl. iso MCC at ¶ 10]. Under the *Davidson* standard, these allegations are sufficient to establish standing. *Davidson*, 889 F.3d at 969.

**P.    Defendant's Position:  Plaintiff Has No Right to Equitable Restitution.**

The Ninth Circuit just held that a plaintiff in federal court "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA." *Sonner*, 2020 WL 4882896, at *7.  In *Sonner*, the Ninth Circuit affirmed the dismissal of the plaintiff's equitable restitution claim because the plaintiff did not allege an inadequate remedy at law and more importantly, sought the same sum in the form of actual damages (before voluntarily dismissing such claim for strategic

*Capaci v. Sports Research, Inc.,* No. 2:19-cv-03440-FMO-FFM
JOINT MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE PARTIES'
MOTION(S) FOR SUMMARY JUDGMENT

reasons).  *Id.*, at \*8.  Similarly, here, Plaintiff did not allege an inadequate remedy at law and seeks the same sum in equitable restitution—a full refund of the purchase price—as she requests in actual damages for the same past harm.  (UF D207, SAC, ¶ 168(h).)  Thus, equitable restitution is unavailable to Plaintiff.

### Q.    Plaintiff's Position: Plaintiff Is Entitled to Equitable Restitution

Defendant's analysis of the *Sonner* opinion is misguided. The plaintiff in *Sonner* voluntarily dropped her CLRA damages claim on eve of trial and only pursued restitution in order "to try the class action as a bench trial rather than to a jury." *See Sonner*, 2020 WL 4882896, at \*1. The Ninth Circuit affirmed dismissal of the plaintiff's equitable restitution claims at the trial stage because plaintiff had an adequate remedy at law, but voluntarily chose to forego that remedy for strategic purposes. *See id*. Here, Plaintiff pleads damages and restitution in the alternative. Courts have found that claims for equitable relief may proceed as an alternative remedy at the pleading stage based upon the broad remedial purposes of the California consumer protection statutes. *See Luong v. Subaru of America, Inc.*, 2018 WL 2047646, at \*7, n. 6 (N.D. Cal. May 2, 2018).[9]

Moreover, *Sonner* only dealt with "past harm" under the UCL, and not future harm. *See Sonner*, 2020 WL 4882896 at \*7. Notably, "[i]njunctive relief [wa]s not at issue" in *Sonner*. *Id*. at \*6. Here, Plaintiff seeks injunctive relief under the FAL and CLRA to protect against future harm. Such claims are not precluded by the ruling in *Sonner*.

### R.    Defendant's Position:  Plaintiff Has No Right to Punitive Damages.

California allows punitive damages only for wrongdoing that is intentional or "despicable." Cal. Civ. Code § 3294(a), (c).  A plaintiff seeking punitive damages against a business entity must show such misconduct by "an officer, director, or managing agent of [the] Defendants." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 1113, 1147-48 (N.D. Cal. 2018).  This must be "proven by clear and convincing evidence." Cal. Civ. Code § 3294(a).  Plaintiff has submitted ***no evidence*** of any

---

[9] *See also Estakhrian v. Obenstine*, 233 F. Supp. 3d 824, 846 (C.D. Cal. 2017) ("plaintiffs may seek injunctive and/or restitutionary equitable relief separate and apart from the same underlying claims") (citing *Cortez v Purolator Air Filtration*, 23 Cal.4th 163, 179 (2000).

49

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
JOINT MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE PARTIES'
MOTION(S) FOR SUMMARY JUDGMENT

wrongdoing on the part of any SR officer or director, only unsupported allegations. (*See* UF D208, SAC, ¶ 77.)  Thus, Plaintiff's claim for punitive damages fails as a matter of law.  *See Pac. Gas & Elec. Co. v. Super. Ct.*, 24 Cal. App. 5th 1150, 1171-72 (2018) (granting summary judgment on punitive damages where plaintiff's evidence amounted to mere criticisms of defendant's risk management system); *Am. Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton*, 96 Cal. App. 4th 1017 (2002) (granting summary judgment on punitive damages when defendant "did not willfully and deliberately fail to avoid" harmful consequences of conduct).

### S.   Plaintiff's Position: Plaintiff Is Entitled To Punitive Damages

Plaintiff's SAC alleges that "Defendant intentionally placed [the CLSs] on the Product's label and packaging with the intent to induce average consumers into purchasing it." SAC ¶ 63. Further, "Defendant knew the contents and ingredients in the Product and knew that [the] Product was nothing more than a placebo. Nonetheless, Defendant knowingly concealed, suppressed, and/or omitted the true capabilities of the Product, given consumers' desire for breakthrough weight-loss supplements." *Id*. ¶ 155. Plaintiff has presented overwhelming evidence demonstrating that the Product cannot provide appetite control, weight management, or weight loss benefits, and Defendant failed to rebut Plaintiff's evidence. Because it is undeniably clear that the Product cannot provide the touted benefits, Defendant acted despicably when it intentionally advertised that the Product could provide benefits that it cannot provide. Because Defendant intentionally induced consumers to purchase a product that is no more effective than a placebo, Plaintiff is entitled to punitive damages and Defendant's Motion must be denied.

## VI.   **PLAINTIFF'S CONCLUSION**

For all of the above reasons, Plaintiff respectfully requests that summary judgment be entered in favor of Plaintiff and against Defendant Sports Research Corporation.

## VII.   **DEFENDANT'S CONCLUSION**

SR respectfully requests that the Court grant its motion for summary judgment in its entirety and dismisses all of Plaintiff's claims with prejudice.

50

*Capaci v. Sports Research, Inc.*, No. 2:19-cv-03440-FMO-FFM
JOINT MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE PARTIES'
MOTION(S) FOR SUMMARY JUDGMENT

Respectfully Submitted,

Dated:  September 10, 2020

/s/ Ronald A. Marron
RONALD A. MARRON

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON
MICHAEL HOUCHIN
LILACH HALPERIN
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
***Attorneys for Plaintiff and the Proposed Class***

Dated:     September 11, 2020

/s/ Jeffrey M. Blank
JEFFREY M. BLANK

GARCIA RAINEY BLANK & BOWERBANK LLP
JEFFREY M. BLANK
jblank@garciarainey.com
NORMA V. GARCIA
ngarciaguillen@garciarainey.com
695 Town Center Drive, Suite 700
Costa Mesa, California 92626
Telephone 714.382.7000
Facsimile: 714.784.0031
***Attorneys for Defendant Sports Research Corporation***

1
2

## ELECTRONIC SIGNATURE CERTIFICATION

3
4
5

   I, Jeffrey M. Blank, hereby attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized this electronic filing.

6
7

_/s/ Jeffrey M. Blank_

8

Jeffrey M. Blank

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

52

*Capaci v. Sports Research, Inc.,* No. 2:19-cv-03440-FMO-FFM
JOINT MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE PARTIES'
MOTION(S) FOR SUMMARY JUDGMENT