**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FRANK CAPACI, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SPORTS RESEARCH CORPORATION,<br><br>Defendant. | Case No. CV 19-3440 FMO (FFMx)<br><br>**ORDER RE: MOTION FOR CLASS CERTIFICATION** |

Having reviewed all the briefing filed with respect to Plaintiff's Motion for Class Certification (Dkt. 59, "Motion"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78(b); Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

**BACKGROUND**[1]

Cynthia Ford ("Ford" or "plaintiff"),[2] on behalf of herself and all others similarly situated, filed the operative Second Amended Complaint ("SAC") against Sports Research Corporation ("SR"

---

[1] Capitalization, quotation and alteration marks, and emphasis in record citations may be altered without notation.

[2] This action was brought by an additional plaintiff, Frank Capaci, whose individual claims have since been dismissed by the court pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). (See Dkt. 51, Court's Order of July 15, 2020).

or "defendant") asserting claims for: (1) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; (2) violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq.; (3) violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.; (4) breach of express warranties pursuant to Cal. Com. Code § 2313(1); (5) breach of implied warranties pursuant to Cal. Com. Code § 2314; and (6) negligent misrepresentation.[3]   (See Dkt. 44, SAC at ¶¶ 92-145).   Plaintiff alleges that SR "markets 'Sports Research Cambogia' ('Garcinia Cambogia' or the 'Product'), a dietary supplement that Defendant falsely claims is an effective aid in 'weight management' and 'appetite control,' despite the fact that the Product's only purportedly active ingredients, Hydroxycitric Acid ('HCA') and extra virgin organic coconut oil, are scientifically proven to be incapable of providing such weight loss benefits."   (Id. at ¶ 1).

Plaintiff seeks an order certifying the following classes or subclasses pursuant to Rules 23(b)(2) & (3) of the Federal Rules of Civil Procedure:[4]

> (1) All U.S. citizens who purchased the Product in their respective state of citizenship for personal and household use and not for resale from January 1, 2015 until the date class notice is disseminated ["Nationwide Class"]; (2) All [California] citizens who purchased the Product for personal and household use and not for resale from January 1, 2015 until the date class notice is disseminated.  ["California Sub-Class"].

(Dkt. 59, Motion at 1-2).  Plaintiff also seeks to be appointed class representative and to have her counsel, the Law Offices of Ronald A. Marron, appointed as Class Counsel.  (See id. at 2).

## LEGAL STANDARD

Rule 23 permits a plaintiff to sue as a representative of a class if:

> (1) the class is so numerous that joinder of all members is impracticable;

---

[3]  In addition, the SAC contains two claims for violations of New Jersey's Consumer Fraud Act and Truth-In-Consumer Contract, Warranty, and Notice Act, (see Dkt. 44, SAC at ¶¶ 146-67), for which plaintiff is not seeking class certification.  (See, generally, Dkt. 59, Motion at 1-2).

[4]  All "Rule" references are to the Federal Rules of Civil Procedure unless otherwise indicated.

1              (2) there are questions or law or fact common to the class;

2              (3) the claims or defenses of the representative parties are typical of the

3              claims or defenses of the class; and

4              (4) the representative parties will fairly and adequately protect the interests

5              of the class.

6  Fed. R. Civ. P. 23(a).  Courts refer to these requirements by the following shorthand: "numerosity,

7  commonality, typicality and adequacy of representation[.]"  Mazza v. Am. Honda Motor Co., 666

8  F.3d 581, 588 (9th Cir. 2012).  In addition to fulfilling the four prongs of Rule 23(a), the proposed

9  class must meet at least one of the three requirements listed in Rule 23(b).  See Wal-Mart Stores,

10  Inc. v. Dukes, 564 U.S. 338, 345, 131 S.Ct. 2541, 2548 (2011).

11       Rule 23 requires the party seeking class certification to "affirmatively demonstrate . . .

12  compliance with the Rule[.]"  Dukes, 564 U.S. at 350, 131 S.Ct. at 2551.  A court must conduct

13  a "rigorous" class certification analysis.  Id. at 351, 131 S.Ct. at 2551 (internal quotation marks

14  omitted).  On occasion, this analysis "will entail some overlap with the merits of the plaintiff's

15  underlying claim[,]" and "sometimes it may be necessary for the court to probe behind the

16  pleadings[.]" Id. at 350-51, 131 S.Ct. at 2551 (internal quotation marks omitted).  However, courts

17  must remember that "Rule 23 grants courts no license to engage in free-ranging merits inquiries

18  at the certification stage."  Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 466, 133

19  S.Ct. 1184, 1194-95 (2013); see id., 133 S.Ct. at 1195 ("Merits questions may be considered to

20  the extent – but only to the extent – that they are relevant to determining whether the Rule 23

21  prerequisites . . . are satisfied."); Ellis v. Costco Wholesale Corp., 657 F.3d 970, 983 n. 8 (9th Cir.

22  2011) (The court examines the merits of the underlying claim "only inasmuch as it must determine

23  whether common questions exist; not to determine whether class members could actually prevail

24  on the merits of their claims. . . . To hold otherwise would turn class certification into a mini-trial.")

25  (citations omitted).  Finally, a court has "broad discretion to determine whether a class should be

26  certified, and to revisit that certification throughout the legal proceedings before the court."  United

27  Steel, Paper & Forestry, Rubber Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO,

28  CLC v. ConocoPhillips Co., 593 F.3d 802, 810 (9th Cir. 2010) (internal quotation marks omitted).

**DISCUSSION**

I.    EVIDENTIARY OBJECTIONS

Defendant challenges plaintiff's experts, Charlene L. Podlipna ("Podlipna") and Dr. David B. Allison ("Dr. Allison") under Federal Rule of Evidence 702 and <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579, 113 S.Ct. 2786 (1993).  (<u>See</u> Dkt. 68, Motion to Exclude Expert Report and Testimony of Plaintiff's Expert Charlene L. Podlipna); (Dkt. 70, Motion to Exclude Expert Report and Testimony of Plaintiff's Expert Dr. David B. Allison); (<u>see also</u> Dkt. 59-1, Joint Brief Re: Plaintiff Cynthia Ford's Motion for Class Certification [] ("Joint Br.") at 15-17, 31, 37-42).

A court "evaluating challenged expert testimony in support of class certification . . . should evaluate admissibility under the standard set forth in <u>Daubert</u>."  <u>Sali v. Corona Reg'l Med. Ctr.</u>, 909 F.3d 996, 1006 (9th Cir. 2018).  "Under <u>Daubert</u>, the trial court must act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards by making a preliminary determination that the expert's testimony is reliable."  <u>Ellis</u>, 657 F.3d at 982. At the class certification stage, however, "admissibility must not be dispositive.  Instead, an inquiry into the evidence's ultimate admissibility should go to the weight that evidence is given at th[is ] stage."  <u>Sali</u>, 909 F.3d at 1006.  The court's "analysis [is] tailored to whether an expert's opinion was sufficiently reliable to admit for the purpose of proving or disproving Rule 23 criteria, such as commonality and predominance."  <u>Tait v. BSH Home Appliances Corp.</u>, 289 F.R.D. 466, 495 (C.D. Cal. 2012).  In doing so, the "requirements of relevance and reliability set forth in <u>Daubert</u> . . . serve as useful guideposts but the court retains discretion in determining how to test reliability as well as which expert's testimony is both relevant and reliable."  <u>Id.</u> (internal  quotation marks omitted).  At this stage, the court considers only "if expert evidence is useful in evaluating whether class certification requirements have been met."  <u>Id.</u> (internal quotation marks omitted).

A.    <u>Podlipna</u>.

Podlipna is the Vice President and shareholder of Freeman & Mills, an accounting and economics consulting firm.  (Dkt. 59-3, Exh. 5, Expert Report of Charlene L. Podlipna, CPA ("Podlipna Rpt.") at EA_225).  She is a licensed Certified Public Accountant and is an officer in the California Society of Certified Public Accountants' Economic Damages section.  (<u>See</u> <u>id.</u>).  She

has over 15 years of experience providing financial consulting services in connection with litigation, including analyzing damages in a variety of actions, including false advertising, intellectual property, breach of contract, professional malpractice, and other areas.  (See id.). Plaintiff primarily relies on Podlipna's opinion with respect to plaintiff's proposed damages model. (See Dkt. 59-1, Joint Br. at 34-37).

Defendant raises several objections to Podlipna's testimony.  First, defendant asserts that she "is not qualified to render an expert opinion on the product's efficacy."  (Dkt. 68-1, Memorandum of Points and Authorities [] ("Podlipna Memo.") at 8) (formatting omitted).  But Podlipna was retained to calculate damages, (see Dkt. 59-3, Exh. 5, Podlipna Rpt. at EA_226), and does not purport to opine on the product's efficacy.  (See, generally, id.).

Second, defendant contends that Podlipna's "opinions regarding the value of the product" and "measure of damages and restitution are irrelevant."  (Dkt. 68-1, Podlipna Memo at 9-10) (formatting omitted).  However, defendant's argument relies on the mistaken contention that Podlipna's full refund damages model "is not an allowable remedy."  (See id. at 10).  Indeed, courts have allowed reliance on the full refund model "when plaintiffs prove the product had no value to them."[5]  Farar v. Bayer AG, 2017 WL 5952876, *10 (N.D. Cal. 2017) (internal quotation marks omitted) (emphasis in original); see, e.g., id. at *11 (permitting full restitution damages model where plaintiffs' theory was that defendant's multivitamin products "do not provide any value or worth to the average American"); Allen v. Hyland's Inc., 300 F.R.D. 643, 671 (C.D. Cal. 2014) ("Plaintiffs' contention that they are entitled to full restitution is linked to their theory that the products they paid for are worthless because they did not provide any of the advertised benefits and had no ancillary value.").

---

[5]  Defendant's argument that Podlipna's "opinions are not the product of reliable principles and methods, nor their reliable application[,]" similarly relies on the argument that the full refund damages model is improper here.  (See Dkt. 68-1, Podlipna Memo. at 18).  In addition, defendant's contention that "Podlipna did not use any sort of theory or methodology to determine whether the [full refund model] is appropriate[,]" (id.), is similarly unavailing.  As explained further below, see infra at § III.A.4., Podlipna's expert report presents an appropriate damages model that is consistent with plaintiff's theory of liability.

B.    Dr. Allison.

Dr. Allison is the Dean of the Indiana University-Bloomington School of Public Health, where he is a professor in the Department of Epidemiology and Biostatistics.  (Dkt. 59-3, Exh. 3, Declaration of Dr. David B. Allison ("Allison Decl.") at EA_030).   For over 25 years, he has consulted with state and federal government agencies, including the Federal Trade Commission, regarding research concerning weight-loss products.  (Id. at EA_030-31).   He has published hundreds of articles in peer-reviewed journals, including many that address dietary supplements, nutrition, and weight-loss programs.  (Id. at EA_032).   He has also been retained as an expert by both plaintiffs and defendants in over 20 cases involving supplements, food additives, and weight loss products.  (Id. at EA_033).   Plaintiff relies on Dr. Allison's opinion to support her position that the contested label statements relating to "weight management" and "appetite control" (collectively, the "CLS") are false and misleading.  (See Dkt. 59-1, Joint Br. at 6-7, 13).

Defendant objects to Dr. Allison's testimony, asserting that he "never evaluated the SR Product or anything related to the facts of this case to make his findings."  (Dkt. 70-1, Memorandum of Points & Authorities ("Allison Memo.") at 2).  However, defendant overlooks the fact that Dr. Allison's report states that he reviewed "copies of labels from the product packaging for the 'Sports Research Garcinia Cambogia[,]'" (Dkt. 59-3, Exh. 3, Allison Decl. at EA_033), and specifically identified the challenged labels at issue here – "weight management" and "supports appetite control[.]"  (Id. at EA_043).

Defendant also contends that Dr. Allison's opinion is unreliable and irrelevant because the challenged label statements do not specifically mention "weight loss."  (See, e.g., Dkt. 70-1, Allison Memo. at 2) ("Sports Research makes absolutely no claims on the SR Product label as to either weight loss or that the SR Product is scientifically proven to reduce weight.") (internal quotation marks omitted).   But plaintiff contends that the label statements at issue here ("weight management" and "appetite control") are misleading in part because they suggest weight loss benefits.  (See, e.g., Dkt. 59-1, Joint Br. at 1).  Moreover, Dr. Allison's opinion discusses evidence regarding Garcinia Cambogia's effect on weight management and appetite control more broadly. For example, he identifies studies of Garcinia Cambogia that have found "no statistically significant

1   evidence of an effect on BMI or body weight[,]" "[l]ittle to no effect on body weight[,]" and no

2   "satiety effect[.]"   (Dkt. 59-3, Exh. 3, Allison Decl. at EA_049-50) (internal quotation marks

3   omitted).

4          As for defendant's contention that "Dr. Allison improperly bases his opinions on irrelevant

5   scientific studies that do not take into account the SR Product or the named plaintiff's actual

6   claims[,]" (Dkt. 70-1, Allison Memo. at 11) (formatting omitted), the court is satisfied that Dr.

7   Allison's opinion is supported by relevant research.   Specifically, Dr. Allison reviewed scientific

8   literature investigating the effects of Garcinia Cambogia on weight management, appetite, and

9   related claims.   (See Dkt. 59-3, Exh. 3, Allison Decl. at EA_034-50) (summarizing research

10  supporting his opinion).  Also, defendant cites no authority supporting its argument that scientific

11  studies investigating the effect of Garcinia Cambogia on weight management are relevant only if

12  they examined defendant's specific product or persons with plaintiff's specific characteristics.

13  (See, generally, Dkt. 70-1, Allison Memo. at 11-13).

14         Finally, defendant's contention that Dr. Allison "attempt[s] to shift the burden to Sports

15  Research to substantiate its claims as to the efficacy of the SR Product[,]" (Dkt. 70-1, Allison

16  Memo. at 15), is unavailing.  Dr. Allison opines that defendant's product claims "are refuted by the

17  scientific literature and are false and misleading[.]"   (Dkt. 59-3, Exh. 3, Allison Decl. at EA_050).

18  Moreover, plaintiff is not asserting a lack of substantiation label claim.  (See, generally, Dkt. 59-1,

19  Joint Br.); see also Capaci v. Sports Research Corp., 445 F.Supp.3d 607, 621-22 (C.D. Cal. 2020)

20  (discussing the distinction between false advertising claims and lack of substantiation claims).

21         In short, the court finds that Podlipna and Dr. Allison's expert reports and testimony are

22  admissible to the extent the court relies on them in determining class certification.

23  II.    RULE 23(a) REQUIREMENTS.

24         A.    Numerosity.

25         A putative class may be certified only if it "is so numerous that joinder of all members is

26  impracticable[.]"  Fed. R. Civ. P. 23(a)(1).  Although impracticability does not hinge only on the

27  number of members in the putative class, joinder is usually impracticable if a class is "large in

28  numbers[.]"  See Jordan v. Cty. of Los Angeles, 669 F.2d 1311, 1319 (9th Cir.), vacated on other

grounds by Cty. of Los Angeles v. Jordan, 459 U.S. 810 (1982) (class sizes of 39, 64, and 71 are sufficient to satisfy the numerosity requirement).  "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members[.]"  Slaven v. BP Am., Inc., 190 F.R.D. 649, 654 (C.D. Cal. 2000); see Tait, 289 F.R.D. at 473-74 (same).

Defendant contends that plaintiff attempts to satisfy the numerosity requirement with "nothing but speculation" by relying on sales numbers that "reflect only wholesale Product units [ ] sold to Retailers, not units . . . actually purchased [ ] by customers."  (Dkt. 59-1, Joint Br. at 11). Having reviewed the sales data submitted under seal, the court is persuaded that plaintiff easily satisfies the numerosity threshold.  (See id. at 10); (Dkt. 59-3, Exh. 5, Podlipna Rpt. at EA_229). Even if these numbers reflect wholesale units sold to retailers, "common sense" indicates that retailers likely sold enough units such that each class contains at least 40 members.  See Turcios v. Carma Labs., Inc., 296 F.R.D. 638, 645 (C.D. Cal. 2014) ("Where the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.") (cleaned up).

B.      Commonality.

Commonality is satisfied if "there are common questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  It requires plaintiffs to demonstrate that their claims "depend upon a common contention . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Dukes, 564 U.S. at 350, 131 S.Ct. at 2551; see also Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1172 (9th Cir. 2010) (explaining that the commonality requirement demands that "class members' situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief") (internal quotation marks omitted).  "The plaintiff must demonstrate the capacity of classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation."  Mazza, 666 F.3d at 588 (internal quotation marks omitted).  "This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question of law or fact."  Abdullah v. U.S. Sec. Assocs., Inc., 731 F.3d 952, 957 (9th Cir. 2013) (emphasis and internal quotation

marks omitted); see Mazza, 666 F.3d at 589.  Proof of commonality under Rule 23(a) is "less rigorous" than the related preponderance standard under Rule 23(b)(3).  See Mazza, 666 F.3d at 589 (characterizing commonality as a "limited burden[,]" stating that it "only requires a single significant question of law or fact[,]" and concluding that it remains a distinct inquiry from the predominance issues raised under Rule 23(b)(3)); Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019-20 (9th Cir. 1998).  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  Hanlon, 150 F.3d at 1019.

Here, plaintiff maintains that the subject product label "contained false and misleading claims that the Product supported 'weight management' and 'appetite control'" because the product was actually "ineffective at weight management and appetite control."  (See Dkt. 59-1, Joint Br. at 12-13).  Accordingly, plaintiff contends there are common questions, including:  (1) "whether Defendant's 'weight management' and 'appetite control' claims are likely to deceive a reasonable consumer"; (2) "whether Defendant communicated representations . . . that the Product was effective as a weight-management and appetite control aid"; (3) "if so, whether the representations were material to individuals purchasing the Product"; and (4) "if the representations were material, whether they were truthful."  (Id. at 13).

Defendant argues that plaintiff cannot satisfy the commonality requirement because she failed to provide "evidence showing proposed class members were uniformly exposed to the same representations or suffered the same injury."  (Dkt. 59-1, Joint Br. at 14-15).  Specifically, defendant argues that consumers were not uniformly exposed to the CLS because the product labels varied during the class period, and thus, an individualized inquiry would be required to determine which labels consumers were exposed to.  (See id. at 15).  However, the evidence shows that defendant's product labels contained one or both of the CLS from the beginning of the Class Period on April 26, 2015, through at least February 2019.  (See Dkt. 59-3, Exh. 17, Expert Report of Daniel P. Werner ("Werner Rpt.") at EA_507-08).  Under the circumstances here, a consumer would not need to have been exposed to both CLS at once to be misled.

Defendant also contends that it has no control over the "presentation, price, or representation" of wholesale products sold to retailers, (see Dkt. 59-1, Joint Br. at 15), although defendant provides no argument or evidence that retailers made any changes to the product's label. (See, generally, Dkt. 59-1, Joint Br.); (Dkt. 59-3, Joint Evidence). By contrast, plaintiff offers evidence that third-party retailers presented and sold the product with the CLS. (See Dkt. 59-3, Exh. 2, Screenshots of Product Page on Retailer Websites at EA_025-27). Under the circumstances, the court is persuaded that plaintiff has sufficiently shown that consumers were exposed to substantially similar product labels such that there are common legal or factual issues to be determined for the proposed classes. See, e.g., In re Arris Cable Modem Consumer Litig., 327 F.R.D. 334, 366 (N.D. Cal. 2018) (finding common questions predominated where there was evidence that "representations on the product's packaging were substantially similar throughout the class period, and in turn that Defendant's website and third party retailers' websites contained statements that were the same as or similar to the statements on the packaging").

Defendant also argues that issues of materiality require individualized inquiries that defeat commonality because plaintiff has "fail[ed] to show the CLS definitions are uniform across the class and not subjective." (Dkt. 59-1, Joint Br. at 15). Defendant points to its expert's survey findings that most consumers of the subject product were influenced by third-party recommendations, not the CLS. (See Dkt. 88, Defendant's Supplemental Brief [ ] ("Def. Supp. Br.") at 3). However, "[h]ow consumers first learned about [defendant's product] . . . does not matter if they nonetheless decided to purchase the product only for its purported health benefits." Mullins v. Premier Nutrition Corp., 2016 WL 1535057, *3 (N.D. Cal. 2016) (internal quotation marks omitted); see, e.g., Alvarez v. NBTY, Inc., 331 F.R.D. 416, 424 n.2 (S.D. Cal. 2019) ("Defendants also argue the class members differ because they may have received a recommendation from a third party to purchase the Product. This argument is a non-starter. No matter what prompted a consumer to go to the store to buy the Product, that consumer was still subjected to the same advertising on the label."). Here, questions of materiality are "amenable to common proof: reviewing the advertisements, labels, and then asking the jury how they understand the message." Mullins, 2016 WL 1535057, at *5.

1    Defendant also disputes the argument that "common answers as to [ ] defendant's efficacy

2  claims can be generated by and through medical studies." (Dkt. 59-1, Joint Br. at 15); (see id. at

3  15-17). Defendant contends "there is a mismatch between the case subjects in Plaintiff's cited

4  studies and the Product's actual consumers" because the studies "all focus on specific population

5  subsets consisting of overweight or obese individuals" rather than "people looking to maintain their

6  current healthy weight like Ford[.]"[6] (Id. at 16). Defendant relies on Moheb v. Nutramax Lab'ys

7  Inc., 2012 WL 6951904 (C.D. Cal. 2012) in arguing that plaintiff's claims are not susceptible to

8  common proof via medical studies because the studies tested different populations. (See Dkt. 59-

9  1, Joint Br. at 15-17). In Moheb, the plaintiff could not show commonality because the "proof by

10  medical studies that Plaintiff propose[d] to present on behalf of the entire class [was], at best, only

11  relevant to the truth of Defendant's representations as to some class members (i.e., those

12  comparable to the populations studied)." 2012 WL 6951904, at *4. Also, as the Moheb court

13  noted, "[s]cientific data suggest[ed] that [the product] works for some, but may not work as well

14  for others, [and] the proposed class [did] not differentiate between these groups." Id. Here, while

15  the scientific evidence cited by plaintiff's expert may not have tested persons in every conceivable

16  consumer population, the studies, according to plaintiff's expert, uniformly show that "the claim that

17  Garcinia Cambogia and HCA produce weight loss in humans . . . [is] false and misleading." (Dkt.

18  59-3, Exh. 3, Allison Decl. at EA_050). In other words, defendant's criticism, at most, goes to the

19  weight, not the admissibility, of plaintiff's expert opinion. See Sali, 909 F.3d at 1006 ("[A]n inquiry

20  into the evidence's ultimate admissibility should go to the weight that evidence is given at the class

21  certification stage.").

22

23

---

24    [6] Defendant also argues that the studies cited by plaintiff did not specifically test defendant's
    product, and thus they are not probative of the efficacy of the product at issue here. (See Dkt. 59-
25  1, Joint Br. at 16). However, as noted earlier, see supra at § I.B., the court is satisfied that Dr.
    Allison's opinion is supported by relevant research relating to the effects of Garcinia Cambogia
26  on weight management, appetite, and related claims, (see Dkt. 59-3, Exh. 3, Allison Decl. at
    EA_034-50), and defendant cites no authority supporting its argument that scientific studies
27  investigating the effect of Garcinia Cambogia on weight management are relevant only if they
28  examined defendant's specific product. (See, generally, Dkt. 70-1, Allison Memo. at 11-13).

Finally, defendant's contention that an individualized inquiry into "whether the product was effective" for consumers cuts against a finding of commonality, (Dkt. 59-1, Joint Br. at 17), also fails because plaintiff's "claims do not rise or fall on whether individual consumers experienced health benefits, due to the placebo effect or otherwise." Mullins v. Direct Digital, 795 F.3d 654, 673 (7th Cir. 2015); see also Korolshteyn, 2017 WL 1020391, at *6 (same). In short, the court is satisfied that the commonality requirement has been met given the existence of common questions relating to the likelihood of consumers being deceived by defendant's representation, the materiality of those representations, and their veracity. See, e.g., McCrary v. Elations Co., LLC, 2014 WL 1779243, *10 (C.D. Cal. 2014) ("Plaintiff has identified legal issues common to the putative class claims, namely whether the claims on Elations' packaging that it contains a 'clinically-proven combination' and/or a 'clinically-proven formula' are material and false. By definition, class members were exposed to these labeling claims, creating a 'common core of salient facts.'") (citation omitted).

C.  Typicality.[7]

Typicality requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). The purpose of this requirement "is to assure that the interest of the named representative aligns with the interests of the class." Wolin, 617 F.3d at 1175 (internal quotation marks omitted). "The requirement is permissive, such that representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical." Just Film, Inc. v. Buono, 847 F.3d 1108, 1116 (9th Cir. 2017) (internal quotation marks omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Wolin, 617 F.3d at 1175 (internal quotation marks omitted). The

---

[7] Because the Supreme Court has noted that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge[,]" General Tel. Co. of the SW v. Falcon, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2371 n. 13 (1982), the court hereby incorporates the Rule 23(a) commonality discussion set forth above. See supra at § II.B.

1   typicality requirement is "satisfied when each class member's claim arises from the same course

2   of events, and each class member makes similar legal arguments to prove the defendant's

3   liability." Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1019 (9th Cir. 2011), abrogated on other

4   grounds in Comcast Corp. v. Behrend, 569 U.S. 27, 133 S.Ct. 1426 (2013) (internal quotation

5   marks omitted).

6           Here, defendant argues that plaintiff's claims are atypical because there are "different

7   combinations of CLSs that proposed class members could be exposed to" and because plaintiff

8   purportedly testified during her deposition that she would "purchase the Product again for GCE's

9   liver benefits without any reformulation at the same price as [ ] previously purchased." (See Dkt.

10  59-1, Joint Br. at 19-20).  As noted above, however, defendant's labeling contained one or both

11  of the CLS from the beginning of the class period through at least February 2019, and all putative

12  class members who purchased defendant's product during this time period would have been

13  exposed to one of the CLS and therefore could have been misled.  (See Dkt. 59-3, Exh. 17,

14  Werner Rpt. at EA_507-08); see, e.g., Lilly v. Jamba Juice Co., 308 F.R.D. 231, 240 (N.D. Cal.

15  2014) ("Named Plaintiffs . . . clearly have a similar alleged injury as the rest of the proposed class,

16  since they purchased products that are the same as, or very similar to, the products challenged

17  by the rest of the proposed class.  Their claims are not based on any conduct that is unique to

18  them.").  And while plaintiff did testify that she would "consider" purchasing the product again for

19  its purported liver benefits, her testimony makes clear that she bought the product for "weight

20  management and [as an] appetite suppressant" and that she would not buy it again for those

21  purposes.  (See Dkt. 59-3, Exh. 12, Excerpts from Deposition of Cynthia Ford ("Ford Depo.") at

22  EA_288 & EA_299).  In short, the court finds that this factor is satisfied because plaintiff's claims

23  are based on the same facts, i.e., that she made her purchases "in reliance on the Product's

24  misleading dietary claims," and the same  legal and remedial theories as the claims of the rest of

25  the class members.[8]  (Dkt. 44, SAC at ¶ 56); see, e.g., Hilsley v. Ocean Spray Cranberries, Inc.,

26  _____

27      [8]  Defendant also argues that "among the class as a whole, there is no typicality" because other
    factors may have influenced purchasing decisions.  (See Dkt. 59-1, Joint Br. at 20).  Even if true,
28  this would not defeat typicality.  See, e.g., Brown v. Hain Celestial Grp., Inc., 2014 WL 6483216,

1   2018 WL 6300479, *6 (S.D. Cal. 2018) ("Plaintiff has demonstrated that her claims are typical as

2   the Complaint alleges that she and all class members purchased the Products, were deceived by

3   the false and deceptive labeling and lost money as a result.").

4           D.      Adequacy of Representation.

5           Rule 23(a)(4) permits certification of a class action if "the representative parties will fairly

6   and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The Ninth Circuit uses

7   a two-prong test to determine whether the representative parties meet this standard:  "(1) do the

8   named plaintiffs and their counsel have any conflicts of interest with other class members and (2)

9   will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"

10  Ellis, 657 F.3d at 985 (internal quotation marks omitted).  "Adequate representation depends on,

11  among other factors, an absence of antagonism between representatives and absentees, and a

12  sharing of interest between representatives and absentees."  Id.  The adequacy of counsel is also

13  considered under Rule 23(g).

14          Defendant contends that plaintiff is an inadequate representative because "she did not

15  know anything about [her co-plaintiff]" and because she reviewed the First Amended Complaint

16  and the SAC shortly before her deposition.  (See Dkt. 59-1, Joint Br. at 21).  Whether plaintiff was

17  familiar with the other now-dismissed plaintiff or whether she reviewed the amended complaints

18  or other case-related documents prepared by her lawyers has little, if anything, to do with the

19  adequacy requirement.  The adequacy requirement is concerned with whether plaintiff has any

20  conflict of interest with any of the other class members and whether she will vigorously prosecute

21  the case on behalf of the class.  See Ellis, 657 F.3d at 985.  Here, defendant does not contend

22  or raise any issue as to whether plaintiff has any conflicts of interest with other class members.

23  (See, generally, Dkt. 59-1, Joint Br. at 21-22); (Dkt. 88, Def. Supp. Br.).  Further, the record

24  indicates that plaintiff is familiar with the facts and claims of her case, (see, e.g., Dkt. 59-3, Ford

25  Decl., Exh. A at EA_258-70), and that plaintiff has remained in contact with her counsel "since the

26  _____

27  *12 (N.D. Cal. 2014) ("Different plaintiffs may have found different label statements material, and, in deciding to buy a product, may have relied on something other than the 'organic' claim alone.

28  This does not make the named plaintiffs' claims atypical.").

onset of this case," has "kept [herself] informed of its status[,]" submitted to a full-day deposition, and will testify at trial if necessary. (See Dkt. 59-3, Declaration of Cynthia Ford ("Ford Decl.") at ¶¶ 3, 11-12).  In short, the court finds plaintiff is an adequate representative.  See, e.g., Trosper v. Stryker Corp., 2014 WL 4145448, *13 (N.D. Cal. 2014) (plaintiff found adequate where he "display[ed] a basic understanding of the facts and the legal theories underlying th[e] case" despite his testimony that "the first time he reviewed the Complaint was in preparation for his deposition") (internal quotation marks omitted).

Defendant also challenges the adequacy of plaintiff's counsel, claiming that "counsel created a theory of the case [based on weight loss] prior to Ford's addition" to the case, and counsel seeks to move forward with the case despite plaintiff's purported testimony that she never purchased the product for weight loss.  (See Dkt. 59-1, Joint Br. at 22).  As with the adequacy of the proposed class representative, defendant's argument as to plaintiff's counsel does not address the applicable standard.  Adequacy of counsel depends on the qualifications of counsel.  See In re N. Dist. Cal., Dalkon Shield IUD Prods. Liab. Litig., 693 F.2d 847, 855 (9th Cir. 1982).  "[T]he named representative's attorney [must] be qualified, experienced, and generally capable to conduct the litigation[.]"  Jordan, 669 F.2d at 1323.

Here, defendant does not raise any issues as to plaintiff's counsel's qualifications, ability to prosecute the action vigorously or whether there are any conflicts between plaintiff's counsel and members of the class.  (See, generally, Dkt. 59-1, Joint Br. at 21-22).  Further, the testimony cited by defendant – aside from being irrelevant for assessing adequacy of counsel – indicates only that plaintiff never saw the product label state that it would "help[] reduce belly fat and achieve weight loss."  (Dkt. 59-3, Exh. 12, Ford Depo. at EA_295).  Also, defendant's contention that the theory of the case centers solely on weight loss – as opposed to weight management – is unavailing given the SAC's repeated allegations that the product's labeling statements, including "weight management," were false and misleading.  (See, e.g., Dkt. 44, SAC at ¶¶ 1, 10, 26, 28, 43, 57, 113, 127, 133).  In short, the court finds that neither plaintiff's counsel nor Ford have any conflicts of interest with class members, and that counsel and Ford have established that they will

prosecute the action vigorously on behalf of the classes.  (See Dkt. 59-3, Declaration of Ronald A. Marron [ ] ("Marron Decl.") at ¶¶ 7-36); (Dkt. 59-3, Exh. 6, Firm Resume at EA_238-48).

III.    RULE 23(b)(3) REQUIREMENTS.

Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can be served best by settling their differences in a single action." Hanlon, 150 F.3d at 1022 (internal quotation marks omitted).  Fed. R. Civ. P. 23(b)(3) requires two different inquiries, specifically a determination as to whether (1) "questions of law or fact common to class members predominate over any questions affecting only individual members[;]" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

A.    Predominance.[9]

"Though there is substantial overlap between [the Rule 23(a)(2) commonality test and the Rule 23(b)(3) predominance test], the 23(b)(3) test is far more demanding[.]" Wolin, 617 F.3d at 1172 (internal quotation marks omitted).  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623, 117 S.Ct. 2231, 2249 (1997).  "This calls upon courts to give careful scrutiny to the relations between common and individual questions in a case." Tyson Foods, Inc. v. Bouaphakeo, 136 S.Ct. 1036, 1045 (2016).  "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.  When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." Id. (citations and internal quotation marks omitted); see Wang v. Chinese Daily News, Inc., 737 F.3d 538, 545 (9th Cir. 2013) ("The predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case and tests whether the

_____

[9]    Given the substantial overlap between Rule 23(a) and Rule 23(b)(3), and to minimize repetitiveness, the court hereby incorporates the Rule 23(a) discussion set forth above. See supra at § II.B.

proposed classes are sufficiently cohesive to warrant adjudication by representation.") (internal quotation marks omitted); In re Wells Fargo Home Mortg. Overtime Pay Litig., 571 F.3d 953, 957 (9th Cir. 2009) ("The focus is on the relationship between the common and individual issues.") (internal quotation marks omitted). The class members' claims do not need to be identical. See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1163 (9th Cir. 2001) (allowing "some variation" between class members); Abdullah, 731 F.3d at 963 (explaining that "there may be some variation among individual plaintiffs' claims") (internal quotation marks omitted). The focus is on whether the "variation [in the class member's claims] is enough to defeat predominance under Rule 23(b)(3)." Local Joint Exec. Bd. of Culinary/Bartender Trust Fund, 244 F.3d at 1163; see Blackie v. Barrack, 524 F.2d 891, 902 (9th Cir. 1975) ("[C]ourts have taken the common sense approach that the class is united by a common interest in determining whether defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions[.]").

The court now turns to the elements of the claims at issue to determine whether common questions of law or fact predominate. See Abdullah, 731 F.3d at 957 (Where a plaintiff's claims arise under state law, the court must "look[] to state law to determine whether the plaintiffs' claims – and [defendant's] affirmative defenses – can yield a common answer that is 'apt to drive the resolution of the litigation.'") (quoting Dukes, 564 U.S. at 350, 131 S.Ct. at 2551); Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. 804, 809, 131 S.Ct. 2179, 2184 (2011) ("Considering whether questions of law or fact common to class members predominate begins . . . with the elements of the underlying cause of action.") (internal quotation marks omitted).

### 1.   UCL, FAL, and CLRA Claims.

"For purposes of class certification, the UCL, FAL, and CLRA are materially indistinguishable." Townsend v. Monster Beverage Corp., 303 F.Supp.3d 1010, 1043 (C.D. Cal. 2018) (internal quotation marks omitted). The UCL prohibits "unfair competition," broadly defined as "any unlawful, unfair or fraudulent business act or practice[.]" Cal. Bus. & Prof. Code § 17200; see Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal.4th 163, 180 (1999). The FAL

prohibits the dissemination of advertising that is deceptive, untrue, or misleading.  See Cal. Bus. & Prof. Code at § 17500.  The language in the UCL and FAL "is broad and sweeping to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services."  Pulaski & Middleman, LLC v. Google, Inc., 802 F.3d 979, 985 (9th Cir. 2015) (internal quotation marks omitted).  Finally, the CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices" in transactions for the sale or lease of goods to consumers. Cal. Civ. Code § 1770(a); see Daugherty v. Am. Honda Motor Co., Inc., 144 Cal.App.4th 824, 833 (2006).  Unlawful practices include "[r]epresenting that goods or services have . . . characteristics . . . [and] benefits . . . which they do not have[,]" Cal. Civ. Code § 1770(a)(5), and "[r]epresenting that goods . . . are of a particular standard, quality, or grade . . . if they are of another."  Id. at § 1770(a)(7).

"To state a claim under the UCL or the FAL based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived." Pulaski, 802 F.3d at 985 (internal quotation marks omitted); see Berger v. Home Depot USA, Inc., 741 F.3d 1061, 1068 (9th Cir. 2014), abrogated on other grounds by Microsoft Corp. v. Baker, 137 S.Ct. 1702 (2017) ("Unlike common-law fraud claims that focus on the victim's reliance or damages, the UCL [and FAL] focus[] on the perpetrator's behavior: 'to state a claim under either the UCL or the false advertising law . . . it is necessary only to show that members of the public are likely to be deceived.'") (quoting In re Tobacco II Cases, 46 Cal.4th 298, 312 (2009)).  "This inquiry does not require `individualized proof of deception, reliance and injury.'" Pulaski, 802 F.3d at 986 (quoting In re Tobacco II Cases, 46 Cal.4th at 320); see Berger, 741 F.3d at 1068 ("Actual falsehood, the perpetrator's knowledge of falsity, and perhaps most importantly, the victim's reliance on the false statements – each of which are elements of common-law fraud claims – are not required to show a violation of California's UCL.").  "However, the question of likely deception does not automatically translate into a class-wide question."  Berger, 741 F.3d at 1068; see also Stearns, 655 F.3d at 1020 ("We do not, of course, suggest that predominance would be shown in every California UCL case.").  Rather, "class certification of UCL claims is available only to those

1    class members who were actually exposed to the business practices at issue." Berger, 741 F.3d

2    at 1068; Stearns, 655 F.3d at 1020-21.

3         Analysis under California's CLRA is similar.  To establish a CLRA claim, the plaintiff must

4    show that:  (1) the defendant's conduct was deceptive; and (2) the deception caused plaintiff

5    harm.  See Stearns, 655 F.3d at 1022; In re Vioxx Class Cases, 180 Cal.App.4th 116, 129 (2009).

6    In the class context, a CLRA claim "requires each class member to have an actual injury caused

7    by the unlawful practice."  Stearns, 655 F.3d at 1022; Edwards v. Ford Motor Co., 603 F.Appx.

8    538, 541 (9th Cir. 2015).  As with UCL and FAL claims, courts often find predominance satisfied

9    in CLRA cases because "causation, on a classwide basis, may be established by materiality," so

10   that "if the trial court finds that material misrepresentations have been made to the entire class,

11   an inference of reliance arises as to the class."  Stearns, 655 F.3d at 1022 (cleaned up); see Tait,

12   289 F.R.D. at 480 (same); In re Vioxx Class Cases, 180 Cal.App.4th at 129 (same).   A

13   misrepresentation is material if "a reasonable [person] would attach importance to its existence

14   or nonexistence in determining his choice of action in the transaction in question[.]"  Stearns, 655

15   F.3d at 1022 (internal quotation marks omitted); see Williams v. Gerber Prod. Co., 552 F.3d 934,

16   938 (9th Cir. 2008) (CLRA claims are "governed by the reasonable consumer test[,]" under which

17   plaintiffs "must show that members of the public are likely to be deceived") (internal quotation

18   marks omitted).  "If the misrepresentation . . . is not material as to all class members, the issue

19   of reliance would vary from consumer to consumer and the class should not be certified."  Stearns,

20   655 F.3d at 1022-23 (internal quotation marks omitted); see also In re Vioxx Class Cases, 180

21   Cal.App.4th at 129 ("[I]f the issue of materiality or reliance is a matter that would vary from

22   consumer to consumer, the issue is not subject to common proof, and the action is properly not

23   certified as a class action.").  However, "a plaintiff is not required to show that the challenged

24   statement is the 'sole or even the decisive cause' influencing the class members' decisions to buy

25   the challenged products."  Bailey, 338 F.R.D. at 403 (quoting Kwikset Corp. v. Superior Ct., 51

26   Cal.4th 310, 327 (2011)).

27        Here, defendant contends that "individual issues predominate plaintiff's UCL, FAL, and

28   CLRA claims, so plaintiff is not entitled to [a] presumption of reliance."  (Dkt. 59-1, Joint Br. at 27)

(formatting omitted); (see id. at 27-32).  According to defendant, plaintiff "provides no evidence to support [ ] a presumption [of reliance], such as consumer surveys or other market research showing classwide reliance based upon the materiality of the CLSs." (Id. at 28).  Also, defendant points to its expert's survey that it claims establishes a "lack of homogeneity as to what was material to SR purchasers."[10]  (Id.).  Defendant's arguments are unavailing.

As an initial matter, California courts have "expressly rejected the 'view that a plaintiff must produce a consumer survey or similar extrinsic evidence to prevail on a claim that the public is likely to be misled by a representation.'"  Mullins, 2016 WL 1535057, at *5 (quoting Colgan v. Leatherman Tool Grp., Inc., 135 Cal.App.4th 663, 681 (2006)).  In other words, "the lack of extrinsic evidence of reliance does not automatically prevent class certification."  Id.; see also Johns v. Bayer Corp., 280 F.R.D. 551, 558 (S.D. Cal. 2012) (noting, in response to defendant's argument in mislabeling case that "people buy multivitamins for various reasons," that "California's consumer protection laws evaluate materiality under a reasonable person standard, not on an individualized basis").  Plaintiff's claims are based on allegations that defendant's product claims to be "an effective aid in 'weight management' and 'appetite control', despite the fact that the Product's only purportedly active ingredients . . . are scientifically proven to be incapable of providing such weight-loss benefits." (Dkt. 44, SAC at ¶ 1).  Plaintiff testified that she "bought [defendant's product] for weight management and appetite suppressing.  And after two months of not getting that, [she] did not get the results that [she] was hoping for which was advertised on the bottle." (Dkt. 59-3, Ford Decl., Exh. A at EA_260).  Plaintiff's claims of falsity "concern the efficacy of the product and thus go to the heart of a customer's purchasing decision. Defendant cannot reasonably argue that a putative class member would purchase a product that does not work, regardless of who recommended it [or other influencing factors]."  McCrary, 2014 WL 1779243, at *14.

---

[10]  Although defendant's expert quizzed her survey population about why they purchased a Garcinia Cambogia product, (see Dkt. 59-3, Exh. 16, Iyengar Rpt. at EA_413), she failed to quantify the number of persons who responded that they purchased the product for "weight loss, appetite suppression, or other perceived benefits." (See, generally, id.).

1    Defendant relies on Shanks v. Jarrow Formulas, Inc., 2019 WL 4398506, *4 (C.D. Cal.

2    2019), to support its argument that plaintiff has failed to show materiality.  (See Dkt. 59-1, Joint

3    Br. at 29).  In Shanks, the court found the following statements on a coconut oil product to be

4    immaterial: "source of medium chain triglycerides"; "no trans fatty acids"; "no hydrogenation"; and

5    "coconut oil is a source of medium chain triglycerides[.]"  2019 WL 4398506, at *1.  Plaintiff's

6    theory in that case was that the labeling claims were misleading and deceptive because "the

7    products [were] not healthy, but rather detrimental to health when consumed."  Id. (cleaned up).

8    In finding that plaintiff failed to show materiality, the court credited the defendant's expert survey

9    evidence that consumers did not typically "conclude based on the challenged statements that

10   Defendant's coconut oil is healthy, and then purchase Defendant's coconut oil based on that

11   belief."  Id. at *6-*7.

12   Here, plaintiff is challenging statements about what the product is meant to accomplish,

13   namely whether it is true that SR's product aids "weight management" and "appetite control." (See

14   Dkt. 44, SAC at ¶ 1).  By contrast, the Shanks plaintiff did not challenge the veracity of the labeling

15   statements themselves, which simply listed ingredients that were or were not present in the

16   product, and made no claims about their effectiveness.  See 2019 WL 4398506, at *1.  Nor did

17   plaintiff in that case argue that the labels made false claims about what the product did or did not

18   do.  See, generally, id.  Rather, the Shanks plaintiff argued that by listing certain ingredients on

19   the labels, the defendant misled consumers into thinking the product was healthy.  See id. at *5

20   ("The Court is not convinced that the label statements – 'Source of Medium Chain Triglycerides';

21   'No Trans Fatty Acids'; 'No Hydrogenation' . . . – would lead a significant portion of the public to

22   believe that Defendant's coconut oil is a healthier fat than other alternatives.").  Indeed, the

23   Shanks court recognized that labeling statements could be material where the plaintiff's challenge

24   bears on the efficacy of the product.[11]  See id. ("This Court agrees that on its face, a label that

25

26       [11]  Defendant's other authorities are inapposite for similar reasons.  See, e.g., Pierce-Nunes
         v. Toshiba Am. Info. Sys., Inc., 2016 WL 5920345, *8 (C.D. Cal. 2016) (finding that materiality of
27       representations on television boxes were not susceptible to classwide proof where they did not
         bear on the purpose motivating consumers' purchases); Algarin v. Maybelline, LLC, 300 F.R.D.
28       444, 457 (S.D. Cal. 2014) (finding that makeup and lipcolor label claims, including "No Transfer"

1  says 'Helps Maintain a Healthy Heart' could be considered material and likely to lead a significant

2  portion of the public to believe that the product does in fact help maintain a healthy heart.  The

3  same cannot be said of the challenged statements here.").

4         Defendant makes an additional argument against materiality, based on its expert's survey

5  evidence and plaintiff's deposition testimony, that consumers buying defendant's product were

6  influenced by factors other than the claims on the label.  (See Dkt. 59-1, Joint Br. at 30-31).

7  However, as discussed above, see supra at § II.B., contested labeling claims that go to the

8  efficacy of the product would nonetheless remain material.  See Mullins, 2016 WL 1535057, at *6

9  ("[T]he question of materiality remains a common one if a jury decides that a reasonable man

10  would attach importance to the existence or nonexistence of [the stated] benefits in [the

11  product].").  Defendant's other contentions that materiality is not susceptible to common proof

12  because plaintiff has not "offered [ ] evidence that any one definition" of "weight management" and

13  "appetite control" prevails among consumers, and because "there was no uniform exposure to

14  CLSs across the class," are also unavailing.  (Dkt. 59-1, Joint Br. at 30-31).  As noted above,

15  plaintiff put forth evidence that shows that consumers were exposed to claims of either "weight

16  management" or "appetite control" during the relevant time period.  See supra at § II.B.; (Dkt. 59-3,

17  Exh. 17, Werner Rpt. at EA_507-08).  Also, the court is persuaded that a consumer's

18  understanding of the phrases "weight management" and "appetite control" is susceptible to

19  common proof.  See, e.g., Mullins, 2016 WL 1535057, at *5 ("Whether an ordinary consumer

20  reasonably believes Premier advertises Joint Juice as a way to improve joint health is amenable

21  to common proof: reviewing the advertisements, labels, and then asking the jury how they

22  understand the message.").

23         Finally, defendant argues that because plaintiff "seeks to certify a class dating back to

24  January 1, 2015, which is beyond the furthest applicable statute of limitations[,] . . . [plaintiff's

25

26

27

28  and "Up to 24HR Wear," were immaterial where evidence showed that consumers had purchased
    the products for purposes unrelated to the contested claims).

claims] would require significant further individualized inquiry[.]"[12]  (Dkt. 59-1, Joint Br. at 31). Plaintiff does not dispute that the longest statute of limitations is four years for her UCL claim. (See, generally, Dkt. 59-1, Joint Br.);  (Dkt. 81, Plaintiff's Memorandum of Points and Authorities in Support of Reply [ ] ("Plf. Supp. Br.")); see also Cal. Bus. & Prof. Code § 17208 (listing four-year limitation period for UCL claims).  Defendant relies on Saulsberry v. Meridian Fin. Servs., Inc., 2016 WL 3456939 (C.D. Cal. 2016) to argue that "significant further individualized inquiry" is necessary to determine whether a putative class member's claim would be barred by the statute of limitations.  (See Dkt. 59-1, Joint Br. at 31-32.  In Saulsberry, the court declined to modify the proposed class definition past the one-year statute of limitations that applied to the asserted claim, and then denied class certification in part based on a finding that the named plaintiff – who was injured outside the statute of limitations period – was not a typical representative.  See 2016 WL 3456939, at *16 n. 5.  It was in the context of addressing possible statute of limitations defenses that the court found "such an argument would depend on a number of individual factual circumstances" that would "render[] the modified class unsuitable for classwide resolution."  Id. Here, a different situation presents itself and, in any event, the court will exercise its discretion to modify the beginning of the class period to four years prior to the filing of this action.  See Mazur v. eBay, Inc., 257 F.R.D. 563, 568 (N.D. Cal. 2009) (noting that "the court has the power to modify proposed class definitions to make them sufficiently definite").

In short, the court finds that plaintiffs have met their burden of showing that common questions of fact and law predominate over individuals ones with respect to the UCL, FAL, and CLRA claims.  See also supra at § II.B.

## 2.   **Negligent Misrepresentation.**

The elements of plaintiff's negligent misrepresentation claim are:  (1) "a misrepresentation of fact by a person who has no reasonable grounds for believing it to be true"; (2) "intent to induce reliance"; (3) "actual and justifiable reliance"; and (4) "resulting damage."  Chapman v. Skype Inc.,

---

[12]  Defendant's arguments relating to damages, (see Dkt. 59-1, Joint Br. at 30-31), will be addressed below.

220 Cal.App.4th 217, 230-31 (2013).  A negligent misrepresentation claim "requires a showing of a misrepresentation that was material, as well as reasonable reliance on that represntation[,] . . . [and] resolution of each of these elements is common to the class." Broomfield v. Craft Brew All., Inc., 2018 WL 4952519, *13 (N.D. Cal. 2018).

As with her UCL, FAL, and CLRA claims, plaintiff has met her predominance burden with respect to her negligent misrepresentation claim because there are classwide questions as to whether defendant's CLS were material misrepresentations.[13] See, e.g., Broomfield, 2018 WL 4952519, at *13 ("Each of these claims [ ] requires a showing of a misrepresentation that was material, as well as reasonable reliance on that misrepresentation.  As with Plaintiffs' consumer law claims, resolution of each of these elements [for negligent misrepresentation] is common to the class.").  With respect to the scienter element, the question of defendant's state of mind is also common to the class.  See, e.g., id. (finding that defendant's state of mind was common to the class and collecting cases).

### 3.   **Breach of Express and Implied Warranty.**

"[T]o prevail on a breach of express warranty claim, the plaintiff must prove (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." Weinstat v. Dentsply Int'l, Inc., 180 Cal.App.4th 1213, 1227 (2010) (internal quotation marks omitted).  Unlike the claims described above, "no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement. . . .  The [California Uniform Commercial Code] thus creates a presumption that the seller's affirmations go to the basis of the bargain." Id. (internal quotation marks and citation omitted); see also Dei Rossi v. Whirlpool Corp., 2015 WL 1932484, *9 (E.D. Cal. 2015) ("[I]n actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the

---

[13]   Defendant does not raise any new arguments in opposition to plaintiff's negligent misrepresentation claim.  (See Dkt. 59-1, Joint Br. at 33).

agreement. Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof.") (internal quotation marks omitted); Rosales v. FitFlop USA, LLC, 882 F.Supp.2d 1168, 1178 (S.D. Cal. 2012) ("Product advertisements, brochures, or packaging can serve to create part of an express warranty.  While this does not require that plaintiff relied on the individual advertisements, it does require that plaintiff was actually exposed to the advertising.") (citations omitted).

        As with her state law consumer claims, plaintiff has shown that "[b]ecause each of the elements are subject to common proof, common issues predominate over individual issues on the . . . breach of express warranty."  Hilsley, 2018 WL 6300479, at *11 (finding common issues predominated for UCL, FAL, CLRA, and breach of express warranty claims); see, e.g., Allen, 300 F.R.D. at 669 (common issues predominated breach of express warranty claim where the alleged misrepresentations "on the product packaging formed part of the basis of the bargain").  Defendant's contention that "[c]ourts repeatedly find detrimental reliance is required to prevail" on a breach of express warranty claim, (see Dkt. 59-1, Joint Br. at 34), is at odds with the case law discussed above.[14]

        With respect to plaintiff's breach of implied warranty claim, defendant argues that individual questions predominate because "vertical contractual privity must exist" such that "if a third party sold the product to the consumer, a claim [for breach of implied warranty] cannot stand." (Dkt. 59-1, Joint Br. at 34).  Plaintiff responds that her failure to allege vertical privity is not fatal to implied warranty claims because "reliance on a representation by a manufacturer can form the basis of an actionable implied warranty."  (Dkt. 81, Plf. Supp. Br. at 6) (citing See Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1023 (9th Cir. 2008)).

        As courts have recognized, the exception to the vertical privity requirement "only applies to express warranty claims."  See, e.g., Izzetov v. Tesla Inc., 2020 WL 1677333, *4 (N.D. Cal. 2020); id. at *5 ("This Court is unable to create a new exception that would permit Plaintiffs' implied

---

        [14] Also, the court is not persuaded that determining whether qualifying language may "negate or limit" the warranty, (see Dkt. 59-1, Joint Br. at 34), is an individualized issue not amenable to common proof.

warranty to proceed."); Zeiger v. WellPet LLC, 304 F.Supp.3d 837, 853-54 (N.D. Cal. 2018) (explaining that "the exception to privity is 'applicable only to express warranties' and not implied ones") (quoting Burr v. Sherwin Williams Co., 42 Cal.2d 682, 696 (1954)).   Plaintiff does not dispute that putative class members include those who purchased defendant's product from third-party retailers.  (See, generally, Dkt. 59-1, Joint Br. at 33-34); (Dkt. 81, Plf. Supp. Br. at 6).   Thus, the court finds that common questions do not predominate with respect to plaintiff's implied warranty claims.  See, e.g., Hilsley, 2018 WL 6300479, at *11-12 ("[B]ecause Plaintiff and class members purchased the Products in retail stores, individual inquiries will [ ] predominate to determine if there is vertical privity between class members and Defendants.").

    4.    **Damages**.

Under Comcast, "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." Pulaski, 802 F.3d at 987-88 (internal quotation marks omitted); see Just Film, Inc., 847 F.3d at 1120 (same).   "To satisfy this requirement, plaintiffs must show that 'damages are capable of measurement on a classwide basis,' in the sense that the whole class suffered damages traceable to the same injurious course of conduct underlying the plaintiffs' legal theory." Just Film, Inc., 847 F.3d at 1120 (quoting Comcast, 569 U.S. at 34, 133 S.Ct. at 1433).   The Ninth Circuit has emphasized that an uncertain damages calculation should not defeat certification.  Leyva v. Medline Indus., Inc., 716 F.3d 510, 513-14 (9th Cir. 2013); Pulaski, 802 F.3d at 987 ("[D]amage calculations alone cannot defeat class certification.").   In other words, "the fact that the amount of damage may not be susceptible of exact proof or may be uncertain, contingent or difficult of ascertainment does not bar recovery." Pulaski, 802 F.3d at 989 (internal quotation marks omitted).

A plaintiff may seek restitution for UCL, FAL, and CLRA violations based on a full refund model "when a product is shown to be worthless," in which case "damages may be calculated by multiplying the average retail price by the number of units sold."  Lambert v. Nutraceutical Corp., 870 F.3d 1170, 1173-75 (9th Cir. 2017), rev'd on other grounds in Nutraceutical Corp. v. Lambert, 139 S.Ct. 710 (2019); see also Colgan, 135 Cal.App.4th at 694 ("The False Advertising Law, the Unfair Competition Law, and the CLRA authorize a trial court to grant restitution to private litigants

asserting claims under those statutes."). "The full refund model measures damages by presuming a full refund for each customer, on the basis that the product has no or only a de minimis value. 'Customers who purchased rhinestones sold as diamonds should have the opportunity to get all of their money back.'" Lambert, 870 F.3d at 1183 (quoting FTC v. Figgie Int'l, Inc., 994 F.2d 595, 606 (9th Cir. 1993)).

Here, plaintiff contends that she and the proposed class members were harmed by the "deceptive misrepresentations that [defendant's] product is effective at weight management and appetite control," and that defendant's product "has no inherent value and is 'worthless' if it is not effective for its advertised use[.]" (Dkt. 59-1, Joint Br. at 34-35). According to plaintiff, "there is no reason to purchase the Sports Research Garcinia Cambogia product except for its purported weight management and appetite control benefits." (Id. at 35); (see also Dkt. 44, SAC at ¶¶ 68, 72); (Dkt. 59-3, Ford Decl., Exh. A at EA_260) ("I bought it for weight management and appetite suppressing. And after two months of not getting that, I did not get the results that I was hoping for which was advertised on the bottle."). Accordingly, plaintiff contends that her full refund model is appropriate because it "measures only damages attributable to her theory of liability" that the product is worthless. (Dkt. 59-1, Joint Br. at 35); (see also Dkt. 81, Plf. Supp. Br. at 7). To that end, plaintiff asserts that "classwide damages can be established by Defendant's own actual pricing, its estimated average retail prices, and average retail prices obtained from retailers" or "through sales data produced by defendant." (Dkt. 59-1, Joint Br. at 36). Podlipna, plaintiff's damages expert, has opined, based on defendant's sales data, that damages can be calculated based on an estimated average retail price for defendant's product. (See id. at 36-37); (Dkt. 59-3, Exh. 5, Podlipna Rpt. at EA_228-32). According to Podlipna, restitution should be measured by "the out-of-pocket price paid by proposed class members for the Product, which is calculated by multiplying Defendant's number of units sold by the average retail price." (Dkt. 59-3, Exh. 5, Podlipna Rpt. at EA_227).

The court is satisfied that plaintiff has sufficiently shown that her full refund model is consistent with her theory of liability. See Comcast, 569 U.S. at 34, 133 S.Ct. at 1432-33; see, e.g., Farar, 2017 WL 5952876, at *10-11 (full refund model appropriate for class claims alleging

defendant's products were "literally pills, and [where] plaintiffs testified that they purchased the products only for their touted health benefits"); Mullins, 2016 WL 1535057, at *7 (allowing full refund model where plaintiff claimed "she and other putative class members would not have purchased Joint Juice had they known it would not benefit their joints" because the product was "nothing more than a liquid pill, which nobody would purchase unless they were concerned about joint health"); Allen, 300 F.R.D. at 671 ("Plaintiffs' contention that they are entitled to full restitution is linked to their theory that the products they paid for are worthless because they did not provide any of the advertised benefits and had no ancillary value."); Allen v. Similasan Corp., 306 F.R.D. 635, 649 (S.D. Cal. 2015) ("Here, restitution is the equivalent of out-of-pocket expenses because, under Plaintiffs' theory, the purchased Products are ineffective and therefore worthless."); Makaeff v. Trump Univ., 309 F.R.D. 631, 639 (S.D. Cal. 2015) (allowing full refund model where plaintiffs' theory of liability was that the students "received none of the advertised benefits of [Trump University]"); Rikos v. Procter & Gamble Co., 799 F.3d 497, 523–24 (6th Cir. 2015) (finding, in a putative class action involving UCL and CLRA claims, that "[a] full refund for each class member is appropriate because . . . there is no reason to buy [a probiotic nutritional supplement] except for its purported digestive benefits").[15]

Defendant contends that plaintiff's full refund model fails because "plaintiff must *prove* the product is 'valueless'" and that plaintiff's expert "cannot just assume a product is worth $0, but must justify the conclusion that such assumption is correct." (Dkt. 59-1, Joint Br. at 38) (emphasis

---

[15]   The court is not persuaded by defendant's contention that Ford's deposition testimony that she would consider buying the product again renders plaintiff's damages model unsuitable, (see Dkt. 59-1, Joint Br. at 5); (Dkt. 88, Opp. at 9), because, as noted earlier, see supra at § II.C., Ford's testimony is consistent with allegations in the operative complaint that she "would consider purchasing the Product again if the advertising statements made on the Product labels were, in fact, truthful and represented in a manner as not to deceive consumers." (Dkt. 44, SAC at ¶ 10). In other words, the court is not persuaded that Ford's deposition testimony precludes class certification under Rule 23(b)(3). Moreover, defendant's view suggests that a plaintiff can never seek both injunctive relief and a full refund under California's consumer protection laws. If Ford had no intention of ever buying the product again, then she may lack standing to pursue injunctive relief. Cf. Lanovaz v. Twinings N. Am., Inc., 726 F.Appx. 590, 591 (9th Cir. 2018) (concluding that plaintiff who had no intention of purchasing allegedly mislabeled product in the future lacked standing to seek injunctive relief).

in original).  Defendant suggests that its product has value outside of the benefits touted on its label, claiming that plaintiff "deliberately *ignores* the Product's true value absent the CLSs[.]" (See id. at 39) (emphasis in original); (Dkt. 88, Def. Supp. Br. at 9).  For example, plaintiff's damages expert does not account for the value of coconut oil in defendant's product, (see Dkt. 59-1, Joint Br. at 41); (Dkt. 88, Opp. at 9), which, according to defendant's damages expert, Dr. Daniel P. Werner, "is demonstrated by stand-alone supplements that are sold separately without any of the contested labeling claims of this case."  (Dkt. 59-3, Werner Rpt. at  EA_503).  Defendant's contentions are unpersuasive.

        As an initial matter, defendant does not point to evidence that coconut oil is capable of achieving the weight management claims on the CLS.  (See, generally, Dkt. 59-1, Joint Br. at 37-42); (Dkt. 59-3, Werner Rpt. at EA_503).  Rather, defendant simply notes that it "decided to use coconut oil . . . because it is fat soluble and thus makes [garciania cambogia] easier to absorb once ingested." (See Dkt. 54-4, Exh. 25, Declaration of Jeff Pedersen, Jr. at EA_730).  However, it is not necessary for plaintiff's damages model to account for an ingredient unrelated to the label's claims, especially where, as here, defendant added the coconut oil simply to improve absorption of the main ingredient that plaintiff contends is worthless.[16]  Further, plaintiff provided a separate expert report from Dr. Allison, (see Dkt. 59-3, Exh. 3, Allison Decl. at EA_028-50), who concluded that any claim Garcinia Cambogia and HCA "produce[s] weight loss in humans" is "false and misleading." (Id. at EA_050).  Dr. Allison's opinion is sufficient to support Ford's contention that she did not experience the advertised claims for which she bought the product. (See Dkt. 59-3, Exh. 12, Ford Depo. at EA_287 & EA_299).

---

[16]  Similarly, the court is not persuaded by defendant's argument that a price-premium model is the appropriate measure of damages.  (See Dkt. 59-1, Joint Br. at 38).  Defendant's argument misunderstands plaintiff's theory of liability, which is that the product "is 'worthless' if it is not effective for its advertised use[.]" (Id. at 35); see, e.g., Farar, 2017 WL 5952876, at *11 ("That the One A Day Products are made up of vitamins and nutrients does not change the conclusion here. Under plaintiffs' theory, the vitamins and nutrients do not provide any value or worth to the average American."); Allen, 300 F.R.D. at 671 ("Plaintiffs' theory is that the products are entirely ineffective and thus any purported 'benefit' customers experience can be attributed to the placebo effect.") (emphasis in original).

1    Defendant relies on cases, (see Dkt. 59-1, Joint Br. at 38-39), in which the court rejected

2    a full refund model after finding that consumers derived at least some benefit from the subject

3    products, all of which were beverages.  See, e.g., Ries v. Ariz. Beverages USA LLC, 287 F.R.D.

4    523, 527 (N.D. Cal. 2016) (plaintiffs challenged defendant's "All Natural" label and related

5    marketing for bottled iced tea); In re POM Wonderful LLC, 2014 WL 1225184, *1 (C.D. Cal. 2014)

6    (plaintiffs challenged defendant's advertising that its pomegranate juice products provided health

7    benefits); Khasin v. R.C. Bigelow, Inc., 2016 WL 1213767, *1 (N.D. Cal. 2016) (plaintiffs

8    challenged defendant's "Healthy Antioxidents" label on green tea products).  But unlike here, the

9    plaintiffs in Ries and In re POM "did not claim that the product they received was, in fact,

10   valueless" nor did they "contend that consumers never would have purchased the product absent

11   the claims on the label."  Mullins v. Premier Nutrition Corp., 178 F.Supp.3d 867, 899 (N.D. Cal.

12   2016); see also Mullins, 2016 WL 1535057, at *6 (similarly distinguishing Ries and In re POM).

13   And in Khasin, the court found it was "implausible" to assume that consumers of defendant's green

14   tea products "gain no benefit in the form of enjoyment, nutrition, caffeine intake, or hydration from

15   consuming the teas."  2016 WL 1213767, at *3; see also Farar, 2017 WL 5952876, at *11

16   (distinguishing Khasin because consumers "derived no such benefits" from defendant's

17   multivitamin products).  The beverage products in those cases stand in stark contrast to the

18   product at issue here, which "are literally pills" that plaintiff "testified that [she] purchased . . . only

19   for their touted health benefits."  Farar, 2017 WL 5952876, at *10.  In other words, the types of

20   cases relied upon by defendant "involve products that could provide some value to their

21   purchasers even if they did not perform as advertised and for which it strains credulity to argue

22   that no consumers would have purchased them if not for the allegedly false statement.  This is the

23   case with many food products, because if nothing else, they provide calories, hydration or good

24   taste to the consumer."[17]  Korolshteyn v. Costco Wholesale Corp., 2017 WL 1020391, *7 (S.D.

25

26      [17]  Defendant's reliance on Brazil v. Dole Packaged Foods, LLC, 660 F.Appx. 531 (9th Cir.
     2016), (see Dkt. 59-1, Joint Br. at 38), is unpersuasive for similar reasons. In Dole, the plaintiff
27   challenged defendant's "All Natural Fruit" label on its packed fruit. 660 F.Appx. at 531. The Ninth
     Circuit affirmed the district court's decision decertifying the class because the plaintiff had not
28   established a classwide price-premium method for calculation damages, which was necessary

Cal. 2017); see, e.g., Suchanek v. Sturm Foods, Inc., 2017 WL 3704206, *5 (S.D. Ill. 2017) ("[C]ourts have held that the full refund model is not appropriate in [mislabeled food and beverage] cases, because the model fails to take into account that consumers still received some benefit when they consumed the product – even though it did not have the advertised premium quality – and it also fails to take into account that consumers may have still purchased the product had they known the truth about the product.") (footnote omitted).

Unlike the cases cited by defendant, courts, in circumstances similar to those in this case, have accepted a full refund model as an appropriate measure of damages.  In Korolshteyn, for example, the plaintiff challenged labels claiming that defendants' Gingko product "supports alertness & memory" and provided similar benefits.  2017 WL 1020391, at *1.  In distinguishing In re Pom and similar cases, the court reasoned that "supplements like Gingko biloba are entirely distinct from food or televisions because consumers know generally the purpose of food and the function of a TV without reading a description on the label.  Consumers do not necessarily know what benefit a supplement like Gingko biloba provides without reading the label."  Id. at *7.  The Korolshteyn court found that plaintiff's full damages model was permissible under Comcast because it matched her theory of liability that the Gingko product was "valueless."  Id.

Finally, defendant contends that plaintiff's method of calculating damages constitutes impermissible "nonrestitutionary disgorgement" because it is based on "revenues Retailers received from consumers, not what SR received from Retailers[.]"  (Dkt. 59-1, Joint Br. at 40).  According to defendant, these amounts are "unknown as Retailers short-pay invoices for product return, often times without identifying which specific product is being short-paid." (Id.).  Defendant further contends that Podlipna's model cannot calculate the average retail price consumers paid. (Id. at 39-40) (under seal).  Defendant's contentions are unpersuasive.

---

because "[r]ecovery . . . [was] limited to the premium paid under a misunderstanding that Dole's fruit was indeed 'All Natural Fruit.'" Id. at 535.  As in the beverage cases defendant relies on, the court in Dole reasoned that consumers still benefitted from the fruit they purchased.  See id. ("The district court correctly limited damages to the difference between the prices customers paid and the value of the fruit they bought[.]").

"Class wide damages calculations under the UCL, FAL, and CLRA are particularly forgiving. California law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation." Lambert, 870 F.3d at 1183 (internal quotation marks omitted); see also Comcast, 569 U.S. at 35, 133 S. Ct. at 1433 (noting that damages "[c]alculations need not be exact" at the class-certification stage). Here, the court finds that plaintiff's full refund damages model matches her theory of liability, and that she has produced evidence supporting her claim. See, e.g., Korolshteyn, 2017 WL 1020391, at *7 ("If the finder of fact finds that [defendant's product] is in fact valueless then that justifies fully refunding the class for their purchases.") (internal quotation marks omitted).

B.   Superiority.

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." Wolin, 617 F.3d at 1175 (internal quotation marks omitted).  To determine superiority, the court must look at

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Defendant does not contest the superiority requirement, (see, generally, Dkt. 59-1, Joint Br. at 42-44), and the court is satisfied that it is met here.  Plaintiff represents that "[t]here is no other litigation pending concerning the class's claims."  (Id. at 42).  Moreover, as noted above, plaintiff's claims "concern[] simple claims for consumer fraud, based on a common advertising scheme, made uniformly" on defendant's product.  (Id.).  Having reviewed the estimated average retail price for the challenged product, (see Dkt. 59-3, Exh. 5, Podlipna Rpt. at EA_228) (under seal), the court finds that "individual prosecution of Plaintiff['s] claims is impractical because the

cost of litigating a single case would likely exceed the potential return." In re Brazilian Blowout Litig., 2011 WL 10962891, *9 (C.D. Cal. 2011) (finding superiority requirement met); see also Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund, 244 F.3d at 1163 (superiority requirement was "easily satisfied" where "case involve[d] multiple claims for relatively small individual sums" and there were "no individual actions [ ] pending").

IV.   ASCERTAINABILITY.

Defendant argues that "plaintiff cannot show an identifiable, ascertainable class." (Dkt. 59-1, Joint Br. at 43) (internal formatting omitted); (see id. at 43-44). According to defendant, plaintiff "has identified no method to confirm class membership [because] [c]lass members cannot be identified by affidavit or testimony, as self-identification has no indicia of accuracy." (Id. at 43). Moreover, defendant contends that plaintiff has failed to present "counter-survey evidence to ascertain if consumers were exposed to or deceived by" the contested labeling statements. (Id. at 44). Finally, defendant argues that the class definitions are overbroad because they "pull[] in consumers who were not exposed to CLSs, who received a benefit from the Product, and who utilized SR's 90-Day Satisfaction Guarantee refund or returned the Product to a Retailer." (Id.).

As an initial matter, the Ninth Circuit has declined to "impose a freestanding administrative feasibility prerequisite to class certification." Briseno v. ConAgra Foods, Inc., 844 F.3d 1121, 1126 (9th Cir. 2017); see Hilsley, 2018 WL 6300479, at *18 n.18 ("[T]he Ninth Circuit has declined to adopt an ascertainability and/or administrative feasibility requirement[.]"). Further, with respect to defendant's contention that plaintiff must identify a method to "confirm" class membership at this stage, defendant is mistaken because "[t]here is no requirement that the identity of class members . . . be known at the time of certification." Ries, 287 F.R.D. at 535 ("If there were [an identification requirement], there would be no such thing as a consumer class action."). To the extent defendant again raises a concern about consumers who were not exposed to a CLS, the court has already addressed this issue and found that defendant's product contained at least one CLS at all times from the beginning of the class period through February 2019, and the court will amend the class definition to remedy any such concerns. See supra at § II.B. Defendant's concern about including consumers "who received a benefit from the Product" is similarly unavailing because

"consumer satisfaction is irrelevant" where a plaintiff's theory is that defendant's product provided no benefit to any consumer despite its advertised messages.  See Mullins, 2016 WL 1535057, at *7 (finding class sufficiently ascertainable for similar consumer class action claims).

Finally, with respect to defendant's argument that the class definition is overbroad because it captures consumers who may have utilized defendant's refund program or returned the product to a retailer, the court is not persuaded that this concern defeats class certification because the court can simply modify the proposed class to exclude any consumer who may have received a refund or returned the product.  See Mazur, 257 F.R.D. at 568 (noting that "the court has the power to modify proposed class definitions to make them sufficiently definite"); see, e.g, Hamm v. Mercedez-Benz USA, LLC, 2021 WL 1238304, *6-7 (N.D. Cal. 2021) (modifying class definition to exclude consumers who received a free repair or replacement of defective part in order to cure "overbreadth of the putative class").

V.      RULE 23(b)(2) CLASS.

Plaintiff also seeks to certify a Rule 23(b)(2) Class pursuant to the same definitions of her proposed Rule 23(b)(3) classes.  (Dkt. 59, Motion at 1-2).  A Rule 23(b)(2) class may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]"  Fed. R. Civ. P. 23(b)(2).  This provision applies "only when a single injunction or declaratory judgment would provide relief to each member of the class."  Dukes, 564 U.S. at 360, 131 S.Ct. at 2557.  "It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant."  Id. (emphasis omitted).  "Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." Id. at 360-61, 131 S.Ct. 2557.  Under the circumstances, it is unnecessary for the court to address whether certification under Rule 23(b)(2) is appropriate here since the court is certifying the classes under Rule 23(b)(3).

**CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1.  Plaintiff's Motion for Class Certification **(Document No. 59)** is **granted in part** and **denied in part**.  The court certifies the following classes pursuant to Rule 23(b)(3) with respect to plaintiff's claims under the CLRA, FAL, UCL, breach of express warranty and negligent misrepresentation:

> Nationwide Class: All persons who purchased Sports Research Cambogia that was labeled "weight management" and/or "appetite suppression" ("Product") in the United States since April 26, 2015.  The class is limited to those who purchased the Product for personal and household use, and not for resale, and who did not received a refund or return the Product.

> California Sub-Class: All persons who purchased Sports Research Cambogia ("Product") that was labeled "weight management" and/or "appetite suppression" ("Product") in the State of California since April 26, 2015.  The class is limited to those who purchased the Product for personal and household use, and not for resale, and who did not receive a refund or return the Product.

Excluded from the class are defendant, as well as its officers, employees, agents or affiliates, and any judge who presides over this action, as well as all of defendant's past and present employees, officers and directors.

2.  The court hereby appoints Cynthia Ford as the representative of the certified class.

3.  The court hereby appoints the Law Offices of Ronald A. Marron as class counsel.

4.  The Motion is **denied without prejudice** as to the Rule 23(b)(2) class and **denied with prejudice** as to plaintiff's implied warranty claim.

5.  Defendant's Motion to Exclude [] Plaintiff's Expert Charlene L. Podlipna (**Document No. 68**) and Motion to Exclude [] Plaintiff's Expert Dr. David B. Allison (**Document No. 70**) are **denied**.  Dated this 14th day of April, 2022.

/s/

Fernando M. Olguin

United States District Judge
