# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK CAPACI, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SPORTS RESEARCH CORPORATION,<br><br>Defendant. | Case No. CV 19-3440 FMO (PDx)<br><br>**ORDER RE: FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

Having reviewed and considered all the briefing filed with respect to plaintiff's Motion for Final Approval of Class Action Settlement (Dkt. 195, "Motion"), and Motion for Attorney's Fees, Costs, and Incentive Award (Dkt. 191, "Fee Motion"), and the oral argument presented during the final fairness hearing held on November 7, 2024, the court concludes as follows.

## BACKGROUND

Cynthia Ford ("Ford" or "plaintiff"),[1] on behalf of herself and all others similarly situated, filed the operative Second Amended Complaint ("SAC") against Sports Research Corporation ("SR" or "defendant") asserting claims for: (1) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.; (2) violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, et seq.; (3) violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq.; (4) breach of express warranty, Cal. Com. Code § 2313(1); (5) breach of implied warranty, Cal. Com. Code § 2314; and (6) negligent

---

[1] This action was brought by an additional plaintiff, Frank Capaci, whose individual claims have since been dismissed. (See Dkt. 51, Court's Order of July 15, 2020).

misrepresentation.[2] (See Dkt. 44, SAC at 1 & ¶¶ 92-145). Plaintiff alleges that SR "markets 'Sports Research Garcinia Cambogia' ('Garcinia Cambogia' or the 'Product'), a dietary supplement that Defendant falsely claims is an effective aid in 'weight management' and 'appetite control,' despite the fact that the Product's only purportedly active ingredients, Hydroxycitric Acid ('HCA') and extra virgin organic coconut oil, are scientifically proven to be incapable of providing such weight loss benefits." (Id. at ¶ 1).

On April 14, 2022, the court granted in part and denied in part plaintiff's motion for class certification. (See Dkt. 139, Court's Order of April 14, 2022, at 35). On March 26, 2023, the court denied defendant's motion for reconsideration regarding the class certification order, and plaintiff's motion for attorney's fee, costs, and sanctions. (See Dkt. 149, Court's Order of March 26, 2023, at 7). On July 21, 2023, the court approved plaintiff's proposed class notice and notice plan. (See Dkt. 161, Court's Order of July 21, 2023, at 4-5). On August 4, 2023, defendant filed a motion for class decertification, which was stricken for failure to comply with the Court's Order. (See Dkt. 165, Motion for Decertification); (Dkt. 168, Court's Order of August 14, 2023). A deadline to file another motion for decertification was also set. (See Dkt. 168, Court's Order of August 14, 2023).

On August 24, 2023, plaintiff filed a motion to strike documents not disclosed during discovery, (see Dkt. 170, Motion to Strike); (Dkt. 173, Notice of Errata), and a motion for attorney's fees and costs. (See Dkt. 171, Motion for Attorney's Fees). Before the motions were decided, the parties reached a settlement. (See Dkt. 177, Notice of Settlement and Stipulation to Stay Case and Vacate Case Deadlines).

The parties have defined the settlement class as

> [a]ll persons who purchased Sports Research Garcinia Cambogia labeled 'weight management,' 'appetite suppression,' and/or 'appetite control' (the 'Product') in the United States on or after April 26, 2015 and until [the date preliminary approval is granted] for personal or household use and not for resale, and who did not receive a refund or return the Product.

---

[2] In addition, the SAC contains two claims for violations of New Jersey's Consumer Fraud Act and Truth-In-Consumer Contract, Warranty, and Notice Act. (See Dkt. 44, SAC at ¶¶ 146-67).

(Dkt. 183-4, Settlement Agreement at § 6.1); (Dkt. 190, Court's Order of June 10, 2024 ("Preliminary Approval Order" or "PAO") at 3). The settlement class differed from the previously certified classes (a nationwide class and a California sub-class) by collapsing them into single class and by modifying the definition of the Product to include the label statement, "appetite control."[3] (See Dkt. 190, PAO at 2 & 8-9).

Pursuant to the settlement, defendant will pay a non-reversionary gross settlement amount of $1.6 million, (see Dkt. 183-4, Settlement Agreement at § 2.3); (Dkt. 190, PAO at 3), which will be used to pay class members, administration costs, attorney's fees and expenses, and an incentive payment for plaintiff. (Dkt. 183-4, Settlement Agreement at § 10.6); (Dkt. 190, PAO at 3). The Settlement Agreement provides for up to one-third of the settlement consideration[4] in attorney's fees, (Dkt. 183-4, Settlement Agreement at § 11.1); (Dkt. 190, PAO at 3); costs not to exceed $150,000, (Dkt. 183-4, Settlement Agreement at § 11.1); (Dkt. 190, PAO at 3); and an incentive award of $5,000 for plaintiff. (Dkt. 183-4, Settlement Agreement at § 11.3); (Dkt. 190, PAO at 3). The settlement administrator, Classaura Class Action Administration ("Classaura"), (Dkt. 183-4, Settlement Agreement at § 2.30); (Dkt. 190, PAO at 15), will be paid no more than $150,000.[5] (See Dkt. 183-4, Settlement Agreement at § 9.11); (Dkt. 190, PAO at 4).

Class members that submit valid claim forms will receive up to $20.00 in cash irrespective of the size or quantity of the Product purchased. (See Dkt. 183-4, Settlement Agreement at § 10.2.1); (Dkt. 190, PAO at 4). Beyond the completed claim form, no additional proof of purchase will be required. (See Dkt. 183-4, Settlement Agreement at § 10.2.1); (Dkt. 190, PAO at 4). The actual amount paid to class members will depend on the number of valid claims. (See Dkt. 183-4, Settlement Agreement at § 10.2.2); (Dkt. 190, PAO at 4). If the amount of valid claims exceeds

---

[3] The Settlement Agreement also extended to class period to the date of preliminary approval, and sought approval of the class pursuant to Rule 23(b)(2) given the injunctive relief provided as part of the settlement. (See Dkt. 190, PAO at 8-9).

[4] The settlement consideration includes the $1.6 million plus the $50,000 valuation placed on the injunctive relief aspect of the settlement. (See Dkt. 183-4, Settlement Agreement at § 10).

[5] Plaintiff seeks only $94,400 for Classaura. (See Dkt. 195-1, Memorandum of Points and Authorities ("Memo") at 25).

the amount of the settlement fund, each cash payment "will be reduced pro rata until the funds remaining in the [s]ettlement [f]und are exhausted." (Dkt. 183-4, Settlement Agreement at § 10.2.3); (see Dkt. 190, PAO at 4). If the amount of valid claims does not exhaust the settlement fund, the payment to class members will increase pro rata. (See Dkt. 183-4, Settlement Agreement at § 10.2.3); (Dkt. 190, PAO at 4).

In addition to monetary relief, the settlement provides that defendant "will agree to discontinue selling the Product with labels that contain the statements 'weight management support,' 'appetite suppression,' and/or 'appetite control' for a period of five . . . years from the Court's entry of the Final Order and Judgment." (Dkt. 183-4, Settlement Agreement at § 10.3); (Dkt. 190, PAO at 4). Defendant "estimates" that it has spent approximately $50,000 to remove such labeling statements from the Product's labels.[6] (Dkt. 183-4, Settlement Agreement at § 10.3).

On June 10, 2024, the court granted preliminary approval of the settlement, appointed Classaura as the settlement administrator, and directed Classaura to provide notice to the class. (See Dkt. 190, PAO at 15). Classaura implemented the notice program approved by the court. (See Dkt. 195-1, Memo at 3-5); (Dkt. 195-3, Declaration of Gajan Retnasaba in Support of Motion for Final Approval ("Retnasaba Decl.") at ¶¶ 4-12); (id., Exh. A-C, Class Notice Program). As of September 19, 2024,[7] Classaura had not received any requests for exclusion, (see Dkt. 195-3, Retnasaba Decl. at ¶ 22), and no objections have been submitted. (See, generally, Dkt.) (no objections received by the court).

Plaintiff now seeks: (1) final approval of the settlement; (2) attorney's fees and costs; and (3) an incentive payment for plaintiff. (See Dkt. 195, Motion); (Dkt. 191, Fee Motion).

---

[6] Defendant is permitted to seek modification of the injunction should certain events occur, such as the Food & Drug Administration taking the "unambiguous position" that garcinia cambogia can and does provide "weight management," "appetite suppression," or "appetite control" benefits. (See Dkt. 183-4, Settlement Agreement at § 10.3); (Dkt. 190, PAO at 4 n. 4).

[7] The deadline for class members to opt-out or file objections to the settlement was September 19, 2024. (See Dkt. 190, PAO at 15).

**LEGAL STANDARD**

Federal Rule of Civil Procedure 23[8] provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Courts reviewing class action settlements must ensure that unnamed class members are protected from unjust or unfair settlements affecting their rights, while also accounting for the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." Campbell v. Facebook, Inc., 951 F.3d 1106, 1121 (9th Cir. 2020) (internal quotation and alteration marks omitted). A "district court has a fiduciary duty to look after the interests of . . . absent class members[,]" Allen v. Bedolla, 787 F.3d 1218, 1223 (9th Cir. 2015), and must examine the settlement for "overall fairness[.]" In re Hyundai & Kia Fuel Economy Litig., 926 F.3d 539, 569 (9th Cir. 2019) (en banc). The court may not "delete, modify or substitute certain provisions." Id. (internal quotation marks omitted). "The settlement must stand or fall in its entirety." Dennis v. Kellogg Co., 697 F.3d 858, 868 (9th Cir. 2012).

Approval of a class action settlement requires the court to conduct a two-step inquiry.[9] First, the court must determine whether the notice requirements of Rule 23(c)(2)(B) have been satisfied. Second, it must conduct a hearing to determine whether the settlement is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2). In determining whether a settlement is fair, reasonable, and adequate, the court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing

---

[8] All further "Rule" references are to the Federal Rules of Civil Procedure.

[9] If the class action is governed by CAFA, the court must also assess whether CAFA's notice requirements have been met. See 28 U.S.C. § 1715(d). Here, CAFA notice was provided to the appropriate state and federal agencies, (see Dkt. 195-3, Retnasaba Decl. at ¶ 16), and no responses were received. (See id. at ¶ 13).

>>class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Id.; McKinney-Drobnis v. Oreshack, 16 F.4th 594, 607 (9th Cir. 2021) ("In 2018, Congress amended Rule 23(e)(2) to provide specific factors for a district court to consider in determining whether a settlement is 'fair, reasonable, and adequate.'").

Whether the settlement is negotiated prior to or after class certification, the court must apply a "higher level of scrutiny for evidence of collusion or other conflicts of interest[.]" In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011); see McKinney-Drobnis, 16 F.4th at 608 (same); Briseño v. Henderson, 998 F.3d 1014, 1022 (9th Cir. 2021) ("Under the newly revised Rule 23(e)(2), courts should apply the Bluetooth factors even for post-class certification settlements.") (formatting omitted); id. at 1025 (holding that "courts must apply Bluetooth's heightened scrutiny to post-class certification settlements in assessing whether the division of funds between the class members and their counsel is fair and 'adequate'") (citing Fed. R. Civ. P. 23(e)(2)(C)).  Courts should look for signs of collusion, subtle or otherwise, including "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded[;]" "(2) when the parties negotiate a 'clear sailing' arrangement[;]"[10] and "(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]"  Bluetooth, 654 F.3d at 947 (internal quotation marks and citations omitted); Campbell, 951 F.3d at 1125 (same).

/ / /

---

[10] The Ninth Circuit defines a "clear sailing" agreement as one "providing for the payment of attorneys' fees separate and apart from class funds," Bluetooth, 654 F.3d at 947, and also as one where "the defendant agrees not to oppose a petition for a fee award up to a specified maximum value."  Id. at 940 n. 6; Roes, 1-2 v. SFBSC Mgmt., LLC, 944 F.3d 1035, 1049 (9th Cir. 2019) (defining a clear sailing agreement as "an arrangement where defendant will not object to a certain fee request by class counsel") (internal quotation marks omitted).

**DISCUSSION**

I. FINAL APPROVAL OF CLASS SETTLEMENT.

    A. <u>Class Certification</u>.

In its order granting preliminary approval, the court certified the modified class pursuant to Rule 23(b)(3).[11] (<u>See</u> Dkt. 190, PAO at 8-9 & 14). Because circumstances have not changed, the court hereby affirms its order certifying the class for settlement purposes under Rule 23(e). <u>See</u>, <u>e.g.</u>, <u>Gonzalez v. BMC West, LLC</u>, 2018 WL 6318832, *5 (C.D. Cal. 2018) ("In its Preliminary Approval Minute Order, the Court certified the Settlement Class in this matter under Rules 23(a) and 23(b)(3). Accordingly, the Court need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b).") (internal quotation marks and citation omitted).

    B. <u>Rule 23(c) Notice Requirements</u>.

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2), which require the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." <u>See</u> Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

Here, after undertaking the required examination, the court approved the form of the Class Notice and notification procedures. (<u>See</u> Dkt. 190, PAO at 12-14). As discussed above, the notice program was implemented by Classaura. Based on the record and its prior findings, the court finds that the Class Notice, (<u>see</u> Dkt. 183-4, Settlement Agreement, Exh. B, Long Notice); (Dkt. 195-3, Retnasaba Decl. at ¶¶ 3-12), and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, and the class members' right to object to the proposed settlement. <u>See</u> Fed. R. Civ. P. 23(c)(2)(B).

/ / /

/ / /

---

[11] The court also certified the class pursuant to Rule 23(b)(2). (<u>See</u> Dkt. 190, PAO at 9, 14).

  C.  Whether the Class Settlement Is Fair, Adequate and Reasonable.[12]

    1.  **Adequate Representation and Arm's-Length Negotiations**.

Rule 23(e)(2) requires the court to consider whether "the class representatives and class counsel have adequately represented the class[,]" and whether the settlement "was negotiated at arm's length[.]" Fed. R. Civ. P. 23(e)(2)(A)-(B); see McKinney-Drobnis, 16 F.4th at 607. The court previously addressed the adequacy of counsel and the arm's-length negotiation factors in connection with preliminary approval. (See Dkt. 190, PAO at 8-10); (see also Dkt. 139, Court's Order of April 14, 2022, at 15-16). With respect to the latter factor, the court noted "that the parties thoroughly investigated and considered their own and the opposing party's positions[,]" "had a sound basis for measuring the terms of the settlement against the risks of continued litigation," and that there was "no evidence that the settlement is the product of fraud or overreaching by, or collusion between, the negotiating parties." (Dkt. 190, PAO at 9). Based on the record before the court and the court's previous findings, the court finds these factors weigh in favor of granting final approval.

    2.  **The Relief Provided to the Class is Adequate**.

In evaluating whether the relief provided to the class is adequate, the court considers: (i) "the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the

---

[12] Prior to the 2018 amendment to Rule 23(e), courts applied the Churchill factors to assess whether a class settlement was fair, adequate, and reasonable: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004); see McKinney-Drobnis, 16 F.4th at 609 (noting that prior to the 2018 amendment to Rule 23(e), the Ninth Circuit instructed courts to consider the Churchill factors). Because "it is still appropriate for district courts to consider these [Churchill] factors in their holistic assessment of settlement fairness[,]" McKinney-Drobnis, 16 F.4th at 609 n. 4; see also 2018 Adv. Comm. Notes to Amendments to Rule 23 ("The goal of th[e] amendment [wa]s not to displace any factor" courts considered prior to the amendment, "but rather to focus . . . on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."), the court will consider them in evaluating the Rule 23(e)(2) factors.

terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).

          a.    *Costs, Risks, and Delay*.

In granting preliminary approval, the court found that the class recovery was fair and reasonable, given "the risk of further litigation, including the motion for summary judgment that was pending at the time the parties reached a settlement" and "the delays associated with continued litigation[.]" (Dkt. 190, PAO at 10). Under the circumstances, it is significant that class members will receive a monetary or other recovery "by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks omitted); see also Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (internal quotation marks omitted). In short, the court finds these factors support approval of the settlement.

          b.    *Method of Distribution*.

Rule 23(e) directs the court to consider the "effectiveness of any proposed method of distributing relief to the class[.]" Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, class members who submit valid claim forms will receive up to $20 irrespective of the size or quantity of the Product purchased. (See Dkt. 183-4, Settlement Agreement at § 10.2.1); (Dkt. 190, PAO at 4). Beyond the completed claim form, no additional proof of purchase will be required. (See Dkt. 183-4, Settlement Agreement at § 10.2.1); (Dkt. 190, PAO at 4). Under the circumstances, the court is persuaded that the method of distribution is fair and is intended "to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 Newberg and Rubenstein on Class Actions, § 13:53 (6th ed.). Thus, this factor weighs in favor of approval.

/ / /

    c. *Attorney's Fees*.

Rule 23(e) requires the court to consider "the terms of any proposed award of attorney's fees, including timing of payment" in determining whether the settlement is fair, adequate and reasonable. See Fed. R. Civ. P. 23(e)(2)(C)(iii). The Ninth Circuit has interpreted this factor "as imposing an obligation on district courts to examine whether the attorneys' fees arrangement shortchanges the class." McKinney-Drobnis, 16 F.4th at 607 (internal quotation marks omitted). In doing so, the court "must balance the proposed award of attorney's fees vis-à-vis the relief provided for the class[.]" Id. (internal quotation marks omitted). The court must assess the proposed award of attorney's fees by considering the Bluetooth factors. See, e.g., id. at 608 ("If we conclude that the district court did not adequately consider the Bluetooth factors, and therefore did not adequately consider signs that the parties had negotiated an unreasonable amount of attorneys' fees in assessing settlement fairness in the first instance, then we must vacate and remand the Approval Order [in addition to the attorneys' fee award], so that the court may appropriately factor this into its Rule 23(e) analysis.") (internal quotation marks omitted) (brackets in original).

Here, application of the Bluetooth factors to the requested attorney's fees award does not undermine the fairness of the settlement. First, the settlement provides for up to one-third of the settlement consideration in attorney's fees. (See Dkt. 183-4, Settlement Agreement at § 11.1). Given the monetary relief available to class members, counsel would not be receiving a disproportionate share of the settlement. See Bluetooth, 654 F.3d at 947 (noting that signs of collusion include "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded") (internal quotation marks omitted). Second, the Settlement Agreement does not include an explicit clear sailing provision, (see Dkt. 183-4, Settlement Agreement at § 11.1), and any fees not awarded will be added to the net settlement fund, from which payments to class members will be made. (See id.).

/ / /

        d.    *Additional Agreements*.

This factor considers any "agreement required to be identified under Rule 23(e)(3)[.]"[13] Fed. R. Civ. P. 23(e)(2)(C)(iv).  No such agreements are at issue in this case.  (See Dkt. 195-1, Memo at 22).

       3.    **Equitable Treatment of Class Members**.

Rule 23(e)(2) requires the court to consider whether the settlement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  "A distribution of relief that favors some class members at the expense of others may be a red flag that class counsel have sold out some of the class members at the expense of others, or for their own benefit."  4 Newberg and Rubenstein on Class Actions, § 13:48 (6th ed.).

In granting preliminary approval, the court set forth the allocation plan, (see Dkt. 190, PAO at 4 & 10), and did not find any issues of concern.  (See, generally, id.).  Thus, this factor also weighs in favor of final approval.

       4.    **The Reaction of Class Members to the Proposed Settlement**.

The reaction of the class members to the proposed settlement has been very positive.  Significantly, there were no objections or requests for exclusion.  (See Dkt.195-3, Retnasaba Decl. at ¶ 22); (see, generally, Dkt.) (no objections received by the court).  The lack of objections or requests for exclusion further support approval of the settlement.  See, e.g., Franco v. Ruiz Food Prods., Inc., 2012 WL 5941801, *14 (E.D. Cal. 2012) (finding this factor weighed in favor of approval where only two out of 2,055 class members – less than one percent – opted out, and there were no objections to the settlement); Gong-Chun v. Aetna Inc., 2012 WL 2872788, *16 (E.D. Cal. 2012) (settlement approved when less than two percent of the class members opted out and no objections were received); Barcia v. Contain-A-Way, Inc., 2009 WL 587844, *4 (S.D. Cal. 2009) (finding this factor weighed in favor of approval of settlement when there were only 56 opt-outs out of 2,385 class members and there were no objections).

---

[13] Rule 23(e)(3) provides that "[t]he parties seeking approval [of a settlement] must file a statement identifying any agreement made in connection with the proposal."

11

In short, the court finds that the settlement is fair, reasonable, and adequate, and not the product of collusion.

## II.     ATTORNEY'S FEES, COSTS, AND SERVICE AWARD.

### A.     Attorney's Fees.

Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Attorney's fees in class actions are determined "using either the lodestar method or the percentage-of-recovery method." In re Hyundai, 926 F.3d at 570. The court's discretion in choosing between these two methods "must be exercised so as to achieve a reasonable result." Bluetooth, 654 F.3d at 942; id. (Where a "[class action] settlement produces a common fund[,] . . . courts have discretion to employ either the lodestar method or the percentage-of-recovery method."); In re Hyundai, 926 F.3d at 570 (same). The lodestar method is typically utilized when the relief obtained is "not easily monetized," such as when injunctive relief is part of the settlement. See Bluetooth, 654 F.3d at 941. The percentage-of-recovery method is typically used when a common fund is created. See id. at 942. "Whichever method is chosen, courts often employ the other method as a cross-check that the award is reasonable." In re Apple Inc. Device Performance Litig., 50 F.4th 769, 784 (9th Cir. 2022).

Under the lodestar method, the court multiplies the number of reasonable hours expended by a reasonable hourly rate. See In re Hyundai, 926 F.3d at 570. Once the lodestar has been calculated, the court may "adjust the resulting figure upward or downward to account for various factors, including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment[.]" Id. (internal citation omitted). However, "adjustments to the lodestar [calculation] are the exception rather than the rule." Stanger v. China Elec. Motor, Inc., 812 F.3d 734, 738 (9th Cir. 2016).

Under the "percentage-of-the-fund" or "percentage-of-recovery" method, the "court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee, using 25% as a benchmark." In re Hyundai, 926 F.3d at 570 (internal quotation marks omitted). The 25% benchmark "can be adjusted upward or downward, depending on the

circumstances." Id.; Bluetooth, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990) ("The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."). In determining whether to depart from the 25% benchmark, courts consider "all of the circumstances of the case[,]" including: (1) the results achieved for the class; (2) the risk of litigation; (3) the skill required and the quality of the work; (4) the contingent nature of the fee; and (5) awards in similar cases. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002); Viceral v. Mistras Grp., Inc., 2017 WL 661352, *3 (N.D. Cal. 2017) (utilizing similar factors); In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 955 (9th Cir. 2015) (explaining that "there are no doubt many factors that a court could apply in assessing an attorneys' fees award" and that "Vizcaino does not purport to establish an exhaustive list").

Here, the court will utilize the percentage of fund method, as it is the most likely to achieve a reasonable result. See Bluetooth, 654 F.3d at 942 ("Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result."). Under the circumstances of this case, the court finds that a departure from the 25% benchmark is warranted. First, considering that each class member that submits a valid claim form will receive approximately $20, which accounts for 93% of the 90-count Product, which sold for $18.99, the results achieved for the class support the upward departure. (See Dkt. 195-1, Memo at 18-19); (see also Dkt. 190, PAO at 10). Moreover, the risk of litigation was significant and involved considerable and complex motion practice. Finally, counsel has litigated this case on a contingency basis since 2019. (See Dkt. 191-1, Memorandum of Points and Authorities in Support of Plaintiff's Motion for Attorneys' Fees, Costs, and Incentive Award ("Fee Memo") at 11-12). In short, the court is persuaded that an award of one third ($550,000) of the settlement consideration is reasonable.

/ / /

B. <u>Costs</u>.

Class counsel seek $131,810.76 in costs. (<u>See</u> Dkt. 191, Fee Motion at 1); (Dkt. 191-1, Fee Memo at 19). The court finds that the costs incurred by class counsel over the course of this litigation are reasonable, and therefore awards a total of $131,810.76 in costs.

C. <u>Class Representative Service Award</u>.

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 977 (9th Cir. 2003); <u>see</u> <u>also</u> <u>Wren v. RGIS Inventory Specialists</u>, 2011 WL 1230826, *31 (N.D. Cal. 2011) ("It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards."). In its order granting preliminary approval of the settlement, the court undertook an examination of the fairness and adequacy of the service award at issue, applying the careful scrutiny required in this Circuit. (<u>See</u> Dkt. 190, PAO at 12); <u>Radcliffe v. Experian Info. Sols. Inc.</u>, 715 F.3d 1157, 1163 (9th Cir. 2013) (instructing "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives"). Based on its review of the record, the court determined that a service award of $5,000 to plaintiff was reasonable. (<u>See</u> Dkt. 190, PAO at 12). The court sees no reason to depart from its previous determination.

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiff's Motion for Final Approval of Class Action Settlement **(Document No. 195)** is **granted** upon the terms and conditions set forth in this Order.

2. Plaintiff's Motion for Attorneys' Fees, Costs, and Incentive Award **(Document No. 191)** is **granted** upon the terms and conditions set forth in this Order.

3. The court hereby **grants final approval** of the parties' Class Action Settlement Agreement (Dkt. 183-4). The court finds that the Settlement Agreement is fair, adequate and reasonable, appears to be the product of arm's-length and informed negotiations, and treats all members of the class fairly. The parties are ordered to perform their obligations pursuant to the terms of the Settlement Agreement and this Order.

4. The settlement class is certified under Federal Rule of Civil Procedure 23(c) as defined in § 6.1 of the Settlement Agreement and this Order.

5. The form, manner, and content of the Class Notice meet the requirements of Federal Rule of Civil Procedure 23(c)(2).

6. Plaintiff Cynthia Ford shall be paid a service payment of $5,000.00 in accordance with the terms of the Settlement Agreement and this Order.

7. Class counsel shall be paid $550,000.00 in attorney's fees, and $131,810.76 in costs in accordance with the terms of the Settlement Agreement and this Order.

8. The Settlement Administrator, Classaura, shall be paid its fees in accordance with the terms of the Settlement Agreement and this Order.

9. All class members who did not validly and timely request exclusion have released their claims against any of the released parties (as defined in the Settlement Agreement) as set forth in this Order and the Settlement Agreement.

10. Except as to any class members who have validly and timely requested exclusion, this action is dismissed with prejudice, with all parties to bear their own fees and costs except as set forth herein and in the prior orders of the court.

11. Without affecting the finality of this Order, the court hereby retains jurisdiction over the parties, including class members, for the purpose of construing, enforcing, and administering the Order and Judgment, as well as the Settlement Agreement itself.

12. Judgment shall be entered accordingly.

Dated this 25th day of November, 2024.

/s/
Fernando M. Olguin
United States District Judge